**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

KATHERINE PILEGGI, ET AL.,               :
                                          :
                    Plaintiffs,           :        Case No.: 3:22-CV-01315-AWT
                                          :
         vs.                              :
                                          :
KIM MATHIAS, ET AL.,                      :
                                          :
                    Defendants.           :        JUNE 5, 2023

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT**
**OF HER RULE 12(B)(2), 12(B)(5) AND/OR 12(B)(6) MOTION TO DISMISS**
**PLAINTIFFS' AMENDED COMPLAINT**

The undersigned Defendant, LINDSEY LAUGHINGHOUSE, APRN, s/h/a "DR. LINDSEY LAUGHINGHOUSE" (hereinafter "Defendant" and/or "Movant"), hereby moves, pursuant to the Federal Rule of Civil Procedure 12(b)(2), 12(b)(5) and/or 12(b)(6) for the dismissal of the Plaintiffs' Amended Complaint, in its entirety as against her, as set forth herein and in her Motion to Dismiss Plaintiffs' Amended Complaint, as well as set forth in her previously filed Motion to Dismiss Plaintiffs' Complaint (ECF No. 8), Memorandum in Support thereof (ECF No. 8-1), and Reply Memorandum of Law in Support (ECF No. 24).

I.      **BACKGROUND**

The instant litigation matter was commenced by way of a Complaint dated October 19, year unspecified, which was filed with this Court on or about October 19,

9071978

2022.   Plaintiffs' Complaint was never served upon Defendant.[1]   A copy of the Summons and Complaint directed to Karen Early at Danbury Hospital was sent on or about November 28, 2022 via facsimile transmission[2] but this service of process failed to comport with the Federal Rules of Civil Procedure including, specifically, subsection 4(e), governing service of process upon an individual within a judicial district of the United States.   Movant does not, nor did at any relevant time, waive service of process.[3]

Movant thereafter moved to dismiss Plaintiffs' Complaint as against her in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(5) for insufficient service of process, as well as pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to set forth claims upon which relief can be granted. (ECF Nos. 8, 8-1 through 8-3, and 24).

Most recently, and relevant to the present Motion to Dismiss and Memorandum of Law in Support thereof, Plaintiffs filed an Amended Complaint (ECF No. 47) on May 15, 2023.

Therein, Plaintiffs set forth three claims[4] against Defendant: Claim One, purporting to set forth a claim under 42 U.S.C. §1983; Claim Seven, purporting to set

---

[1] See, Affidavit of Lindsey Laughinghouse, ¶ 3, dated December 15, 2022, a true and accurate copy of which was previously annexed at Exhibit A to Defendant's Memorandum of Law in Support of her Motion to Dismiss (ECF No. 8-2).

[2] A true and accurate copy of the Summons and Complaint, inclusive of the cover sheet, sent via facsimile to Karen Early at Danbury Hospital was previously annexed at Exhibit B to Defendant's Memorandum of Law in Support of her Motion to Dismiss (ECF No. 8-3).

[3] See, Ex. A at ¶ 5.

[4] In their original Complaint (ECF No. 1), Plaintiffs set forth two causes of action against Defendant, including their tenth "cause of action" purporting to set forth a claim sounding in civil battery; and their eleventh "cause of action" purporting to set forth a claim sounding in groundless or vexatious suit or defense pursuant to Connecticut General Statutes § 52-568.   Neither of these counts is incorporated and/or realleged in their Amended Complaint as to Nurse Laughinghouse such that both are presumed withdrawn as to this Defendant.

9071978

forth a claim of Negligent Infliction of Emotional Distress; and Claim Eight, purporting to set forth a claim of Intentional Infliction of Emotional Distress. While the specific allegations set forth as against this Defendant shall be addressed further hereinbelow by way of substantive legal argument, none of these causes of action sets forth sufficient factual allegations as against Movant to establish Plaintiffs' prima facie claims against Defendant such that Claim One, Claim Seven, and Claim Eight should be dismissed as to Nurse Laughinghouse pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief can be granted and, thus, the Amended Complaint should be dismissed, in its entirety, as to Nurse Laughinghouse. Further, as a mandated reporter, Nurse Laughinghouse is entitled to immunity from any liability relating to any allegations pertaining to any alleged reports to the Connecticut Department of Children and Families (hereinafter, "DCF").

## II.    LAW AND ARGUMENT

### A.  Standard of Review.

#### i. Standard of review applicable to Defendant's Motion to Dismiss under FRCP 12(b)(2).

Movant incorporates by reference, as if more fully set forth herein, her statement regarding the standard of review applicable to her Motion to Dismiss under FRCP 12(b)(2), as previously set forth in her Memorandum of Law in Support of her Motion to Dismiss (ECF No. 8-1, at pp. 2-3).

9071978

      **ii. Standard of review applicable to Defendant's Motion to Dismiss under FRCP 12(b)(5).**

Movant incorporates by reference, as if more fully set forth herein, her statement regarding the standard of review applicable to her Motion to Dismiss under FRCP 12(b)(5), as previously set forth in her Memorandum of Law in Support of her Motion to Dismiss (ECF No. 8-1, at pp. 3-4).

      **iii. Standard of review applicable to Defendant's Motion to Dismiss under FRCP 12(b)(6).**

Movant incorporates by reference, as if more fully set forth herein, her statement regarding the standard of review applicable to her Motion to Dismiss under FRCP 12(b)(6), as previously set forth in her Memorandum of Law in Support of her Motion to Dismiss (ECF No. 8-1, at pp. 4-5).

      **B. Plaintiffs' Complaint must be dismissed, in its entirety, pursuant to Rule 12(b)(2) and 12(b)(5) as against this Defendant for lack of personal jurisdiction and insufficient service of process pursuant to FRCP 4(e).**

Movant incorporates by reference, as if more fully set forth herein, her legal arguments in support of her Motion to Dismiss under FRCP 12(b)(2) and 12(b)(5), as previously set forth in her Memorandum of Law in Support of her Motion to Dismiss (ECF No. 8-1, at pp. 5-9) and as further set forth in her Reply Memorandum of Law in Support (ECF No. 24, at pp. 2-4).

Movant, to date, has never been served with either the relevant Summons and/or Complaint as prescribed by Federal and/or State law.  Thus, Plaintiffs' Complaint should be dismissed as to Movant herein for lack of personal jurisdiction and insufficient service of process.

9071978

**C. Plaintiffs' Complaint must be dismissed as against Movant in its entirety pursuant to FRCP 12(b)(6) for failure to state claims upon which relief can be granted pursuant to relevant federal law, the Connecticut General Statutes, and relevant caselaw of the State of Connecticut.**

In the context of a Rule 12(b)(6) challenge, Plaintiffs' Complaint "must allege enough facts – as distinct from legal conclusions – to make the claim plausible." Sentementes v. Town of Bethel, et al., No. 3:20-CV-580 (MPS) 2020 WL 5994950 at *2 (D. Conn. Oct. 9, 2020), citing, Ashcroft v. Iqbal 556 U.S. at 678, and Bell Atl. v. Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678.

> i.  **Nurse Laughinghouse is entitled to immunity from liability as to all claims asserted against her in Plaintiffs' Amended Complaint because she is a mandatory reporter whose referral to DCF, if any such referral actually occurred, was required and protected by law.**

Nurse Laughinghouse, at all relevant times, was a mandated reporter under Connecticut law. Conn. Gen. Stat. § 17a–101(b)(3).   As a mandated reporter, Defendant Laughinghouse was required to report suspected child neglect and/or abuse to DCF.  Conn. Gen. Stat. § 17a–101a(a) provides in relevant part:

> (a)(1) Any mandated reporter, as described in section 17a-101, who in the ordinary course of such person's employment or profession has reasonable cause to suspect or believe that any child under the age of eighteen years (A) has been abused or neglected, as described in section 46b-120 . . . shall report or cause a report to be made in accordance with the provisions of sections 17a-101b to 17a-101d, inclusive.

5

9071978

The relevant statutes further afford statutory protections with respect to such mandated reporting:

> Any person, institution or agency which, in good faith, (1) makes a report pursuant to sections 17a-101a to 17a-101d, inclusive, and 17a-103 . . . shall be immune from any liability, civil or criminal, which might otherwise arise from or be related to the actions taken pursuant to this subsection and shall have the same immunity with respect to any judicial proceeding which results from such report or actions, provided such person did not perpetrate or cause such abuse or neglect.

Conn. Gen. Stat. § 17a–101e(b).

In fact, to the extent that penalties exist under the relevant statutes, same pertain to failure to report, which such failure constitutes a class A misdemeanor pursuant to Conn. Gen. Stat. § 17a-101a(b).

These statutes embody the Connecticut legislature's "strong public policy of encouraging medical professionals and other persons to report actual and suspected child abuse to the appropriate authorities and agencies." Zamstein v. Marvasti, 240 Conn. 549, 559, 692 A.2d 781 (1997).

The only allegations in the Amended Complaint (ECF No. 47) relating, even most broadly construed, to any alleged reporting by Nurse Laughinghouse to DCF are as follows:

> 8. DEFENDANT DR. LINDSAY LAUGHINGHOUSE is a Nurse Practitioner Specialist in New Milford, Connecticut. DEFENDANT LAUGHINGHOUSE made false reports regarding EPs care, and also refused to treat EP for Lyme Disease, causing further exacerbation of her condition . . .
> 92. CCMC, Zemmel, Fitzsimmons, Laughinghouse, and Bazos, all filed and contributed to DCF reports containing information they knew to be false. Plaintiff believes that

6

9071978

JOHN and JANE DOES 1-10 listed in the caption and are the "anonymous" DCF complainers, are these same defendants.

These allegations are wholly conclusory in nature and set forth no allegations as to when Nurse Laughinghouse allegedly filed and/or contributed to any such reports, the information provided by Nurse Laughinghouse with respect thereto, and/or the allegedly false information included and/or contained therein.

Plaintiffs' Amended Complaint is devoid of any allegations that might otherwise serve to abrogate the statutory immunity afforded Nurse Laughinghouse as a mandatory reporter and, as such, any and all claims as against Nurse Laughinghouse premised upon any alleged reports to DCF should be dismissed by this Court.

### ii.    Plaintiffs' Claim One, purporting to set forth a claim under 42 U.S.C. §1983, fails to state a claim upon which relief can be granted.

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." (Citation omitted.) Whalen v. County of Fulton, 126 F.3d 400, 405 (2d Cir. 1997).

In their cause of action purporting to set forth a cause of action for a violation of 42 U.S.C. § 1983, Plaintiffs set forth the following substantive allegations:

90. PLAINTIFFS reallege ¶¶ 1-89 herein by reference.
91. All defendants, under color of law and without probable cause and knowing that merely desiring to seek a second medical opinion for their child, did not constitute neglect or child abuse, actively sought to, or did interfere with EP's treatment for Lyme disease.

7

92. CCMC, Zemmel, Fitzsimmons, Laughinghouse, and Bazos, all filed and contributed to DCF reports containing information they knew to be false. Plaintiff believes that JOHN and JANE DOES 1-10 listed in the caption and are the "anonymous" DCF complainers, are these same defendants.

93. Defendants Minerly and Rotovnik were also the DCF agents responsible for this case. Defendants Minerly and Rotovnik were the conduit and genesis for any adverse action taken by DCF against the PLAINTIFFS.

94. This is evidenced by the fact that Minerly and Rotovnik knowingly filed and/or contributed to a false report with the Florida DCF against Ms. Pillegi for leaving the state, after another DCF employee explicitly told her via email that she didn't need permission to do so. This was a malicious act by the defendants and a severe abuse of process.

95. As a result of the actions of Minerly and Rotovnik, Ms. Pillegi was pulled over by Florida PD on the local roadway at gunpoint in the view of passersby like criminals, and her and EP were forcefully separated and taken into police custody without any cause or provocation.

96. Thus, the DCF Defendants, under color of law, succeeded in ripping the PLAINTIFFS' family apart physically and legally, in the sense of coercing the PLAINTIFFS into a marital dissolution action.

97. The DCF Defendants, under color of law, arbitrarily and capriciously - dangerously even in the sense of deceiving armed law enforcement officials in another jurisdiction – caused the forcible kidnapping of the PLAINTIFFS' daughter under color of law, thereby depriving PLAINTIFFS of their constitutional right to the care, custody, and control of their child, to choose her medical care, and to be in the intimate association with their her [sic].

98. Upon information and belief, the DCF Defendants will not cease their willful misconduct whose objective is to abrogate the PLAINTIFFS' Liberty Interests to raise their daughter, provide medical care for their daughter and be in intimate association in the same home with their daughter – all acts constituting official corruption and oppression for the sake of concealing the initial incompetence that set the facts and events alleged herein into motion.

99. As a direct and proximate result of the aforesaid acts of the Defendants and each of them, the PLAINTIFFS suffered great harm, mental anguish, and violation of rights from then

8

9071978

until now and they will continue to so suffer in the future having been greatly humiliated and mentally and physically injured, as a result of the foregoing acts of the Defendants.

100. PLAINTIFFS were forced to incur great expense and special damages to date for defending against the false charges, attorney's fees, investigation expenses, and other expenses in clearing their names against the unfounded and unwarranted allegations by the Defendants which have been a serious burden to PLAINTIFFS.

101. That by reason of the foregoing, the Plaintiff has been damaged to a sum in excess of Five Million ($5,000,000.00) dollars, including the cost of this action, attorneys' fees pursuant 42 U.S.C. §1988, and punitive damages.

Even crediting Plaintiffs' incorporation by reference of paragraphs 1-89 of their Amended Complaint, only the following paragraphs therein even *reference* Nurse Laughinghouse:

8. DEFENDANT DR. LINDSAY LAUGHINGHOUSE is a Nurse Practitioner Specialist in New Milford, Connecticut. DEFENDANT LAUGHINGHOUSE made false reports regarding EPs care, and also refused to treat EP for Lyme Disease, causing further exacerbation of her condition . . .

30. PLAINTIFFS understood this was a disease that would take time to heal. At this point, CCMC and Nurse Lindsay Laughinghouse became the Plaintiff's primary care physician at the order of DCF and against the PLAINTIFFS' will.  As a result, PLAINTIFFS complied under threats from Minerly and Rotovnik to remove EP from the home. Notably, Nurse Laughinghouse never stated any concerns with EPs care, but she absolutely refused to treat her for Lyme Disease.

31. There was no reason for Minerly and Rotovnik to force the PLAINTIFFS to stop using Dr. Lopusny, their preferred physician, other than the fact that Laughinghouse sided with their incorrect diagnosis and was therefore willing to participate in the negligent treatment of EP and the subsequent removal of her from her parents' custody . . .

70. Defendants Minerly and Rotovnik conspired with CCMC, Zemmel, Fitzsimmons, and Laughinghouse, to justify an abuse of process and to violate the PLAINTIFFS' civil rights.

9

9071978

Based upon the foregoing, and even crediting those "allegations" asserted by Plaintiffs that are mere conclusory assertions, Plaintiffs' Amended Complaint fails to set forth any factual allegations that might establish any of the required elements for a legally sufficient cause of action under 42 U.S.C. § 1983.

While Plaintiffs' purport to tie their claim under 42 U.S.C. § 1983 to (1) the alleged filing of false reports with DCF; and/or (2) interference with EP's treatment for Lyme Disease; and/or (3) the alleged filing of a false report with Florida DCF, allegedly resulting in the detainment of Plaintiffs; and/or (4) the alleged interference with the marital relationship of Plaintiffs Katharine and Anthony Pileggi, nowhere in the Amended Complaint do Plaintiffs set forth any non-conclusory factual allegations, as to Nurse Laughinghouse, that she acted at any relevant time under color of state law and/or was involved in any and/or all of the foregoing alleged conduct in a manner that deprived the Plaintiffs of a right, privilege, or immunity secured by the Constitution or laws of the United States.

In fact, the only allegation in the Amended Complaint with respect to Nurse Laughinghouse acting under the color of state law is the bald and completely conclusory allegation at paragraph 91 thereof that states, without any specific reference to Nurse Laughinghouse: "All defendants, under color of law and without probable cause and knowing that merely desiring to seek a second medical opinion for their child, did not constitute neglect or child abuse, actively sought to, or did interfere with EP's treatment for Lyme Disease."   While this conclusory allegation is premised upon alleged interference with EP's treatment for Lyme Disease, the remaining allegations in

10

9071978

Plaintiffs' Amended Complaint, most generously construed, indicate only that Nurse Laughinghouse declined to treat EP for Lyme Disease herself, with no indication that she actively interfered in any such treatment by any other medical provider. See, e.g., Amended Complaint, ECF No. 47, at ¶¶8, 30.

Similarly, the only allegation in the Amended Complaint with respect to Nurse Laughinghouse in the context of a DCF report of any kind is the wholly conclusory assertion set forth at paragraph 92 thereof, which states only: "CCMC, Zemmel, Fitzsimmons, Laughinghouse, and Bazos, all filed and contributed to DCF reports containing information they knew to be false. Plaintiff believes that JOHN and JANE DOES 1-10 listed in the caption and are the "anonymous" DCF complainers, are these same defendants."    No allegations are included therein as to when Nurse Laughinghouse allegedly filed and/or contributed to any such reports, the information provided by Nurse Laughinghouse with respect thereto, and/or the allegedly false information included and/or contained therein.

Further, the allegations related to the alleged Florida DCF incident make no mention of Nurse Laughinghouse and reference only Defendants Minerly and Rotovnik (see, Amended Complaint, ECF No. 47, at ¶¶37-44).

As previously stated herein, in the context of a motion to dismiss for failure to state a claim, the Court follows a "two-pronged approach" in evaluating the sufficiency of the complaint.  Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  First, "[a] court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  Id.  "At the second step, a

11

9071978

court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  Id., quoting, Ashcroft, 556 U.S. at 679.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft, 556 U.S. at 678.

Even assuming, *arguendo*, that Nurse Laughinghouse made any reports to CT DCF, as argued herein above, she is entitled to immunity from civil liability with respect to same.

Construing Plaintiffs' allegations most generously, it is evident that Plaintiffs fail to plead a cause of under 42 U.S.C. § 1983 as to which relief can be granted as against Nurse Laughinghouse as set forth herein.  Wherefore, Plaintiffs' Claim One should be dismissed as to Nurse Laughinghouse in accordance with Federal Rule of Civil Procedure 12(b)(6).

### iii.    Plaintiffs' Claim Seven, purporting to set forth a claim of Negligent Infliction of Emotional Distress, fails to state a claim upon which relief can be granted.

In accordance with Connecticut substantive law, in order to prevail on a claim of Negligent Infliction of Emotional Distress, Plaintiffs must plead, and ultimately prove, that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm . . .  This . . . test essentially requires that the fear or distress experienced by the plaintiffs be reasonable in light of the conduct of the defendants.  If such [distress] were reasonable in light of the defendants' conduct, the defendants

9071978

should have realized that their conduct created an unreasonable risk of causing distress, and they, therefore, properly would be held liable.    Conversely, if the [distress] were unreasonable in light of the defendants' conduct, the defendants would not have recognized that their conduct could cause this distress and, therefore, they would not be liable." (Alterations and omissions in original; citations omitted.) Larobina v. McDonald, 274 Conn. 394, 410, 876 A.2d 522 (2005).

The foreseeability aspect of Plaintiffs' burden of proof, however, differs in kind from that more commonly associated with standard negligence claims.  The Supreme Court of Connecticut, in Scanlon v. Conn. Light & Power Co., stated:

> As we have previously observed, "this condition differs from the standard foreseeability of the risk of harm requirement for negligence liability generally in that it focuses more precisely upon the nature of the harm to be anticipated as a prerequisite to recovery even [when] a breach of duty might otherwise be found . . ."

258 Conn. 436, 447, 782 A.2d 87 (2001), quoting, Maloney v. Conroy, 208 Conn. 392, 398, 545 A.2d 1059 (1988).

In their cause of action purporting to set forth a cause of action for Negligent Infliction of Emotional Distress, Plaintiffs set forth only the following substantive allegations:

> 149. PLAINTIFFS reallege ¶¶ 1-148 herein by reference.
> 150. The Defendants knew and should have known that the acts they engaged in – that being, filing a false report with DCF because they disagreed with the PLAINTIFFS' decision to seek other medical advice and care, filing a false report with Florida DCF, and having the plaintiff and EP detained – and the foregoing actions listed above – would result or likely result in emotional distress.

13

9071978

151. Upon information and belief, the claims against the Defendants are covered by insurance, As [sic] said claims are not medical malpractice claims.

152. Emotional distress did in fact result and did in fact manifest in one or more physical symptoms among all the PLAINTIFFS.

153. That by reason of the foregoing, the PLAINTIFF has suffered severe temporary and permanent psychological, emotional, and physical harm and has been damaged to a sum in excess of Five Million ($5,000,000.00).

Even crediting Plaintiffs' incorporation by reference of paragraphs 1-148 of their Amended Complaint, only the following paragraphs therein even *reference* Nurse Laughinghouse:

8. DEFENDANT DR. LINDSAY LAUGHINGHOUSE is a Nurse Practitioner Specialist in New Milford, Connecticut. DEFENDANT LAUGHINGHOUSE made false reports regarding EPs care, and also refused to treat EP for Lyme Disease, causing further exacerbation of her condition . . .

30. PLAINTIFFS understood this was a disease that would take time to heal. At this point, CCMC and Nurse Lindsay Laughinghouse became the Plaintiff's primary care physician at the order of DCF and against the PLAINTIFFS' will.  As a result, PLAINTIFFS complied under threats from Minerly and Rotovnik to remove EP from the home. Notably, Nurse Laughinghouse never stated any concerns with EPs care, but she absolutely refused to treat her for Lyme Disease.

31. There was no reason for Minerly and Rotovnik to force the PLAINTIFFS to stop using Dr. Lopusny, their preferred physician, other than the fact that Laughinghouse sided with their incorrect diagnosis and was therefore willing to participate in the negligent treatment of EP and the subsequent removal of her from her parents' custody . . .

70. Defendants Minerly and Rotovnik conspired with CCMC, Zemmel, Fitzsimmons, and Laughinghouse, to justify an abuse of process and to violate the PLAINTIFFS' civil rights . . .

92. CCMC, Zemmel, Fitzsimmons, Laughinghouse, and Bazos, all filed and contributed to DCF reports containing information they knew to be false. Plaintiff believes that

9071978

JOHN and JANE DOES 1-10 listed in the caption and are the "anonymous" DCF complainers, are these same defendants.

Based upon the foregoing, and even crediting those "allegations" asserted by Plaintiffs that are mere conclusory assertions, Plaintiffs' Amended Complaint fails to set forth any factual allegations that might establish any of the required elements for a legally sufficient cause of action sounding in Negligent Infliction of Emotional Distress under Connecticut law as against Nurse Laughinghouse.

While Plaintiffs' purport to tie their claim of Negligent Infliction of Emotional Distress to (1) the alleged filing of false reports with DCF and/or (2) the alleged filing of a false report with Florida DCF, allegedly resulting in the detainment of Plaintiffs, nowhere in the Amended Complaint do Plaintiffs set forth any non-conclusory factual allegations, as to Nurse Laughinghouse, that she was involved in any and/or all of the foregoing alleged conduct.

In fact, the only allegation in the Amended Complaint with respect to Nurse Laughinghouse in the context of a DCF report of any kind is the wholly conclusory assertion set forth at paragraph 92 thereof, which states only: "CCMC, Zemmel, Fitzsimmons, Laughinghouse, and Bazos, all filed and contributed to DCF reports containing information they knew to be false. Plaintiff believes that JOHN and JANE DOES 1-10 listed in the caption and are the "anonymous" DCF complainers, are these same defendants."   No allegations are included therein as to when Nurse Laughinghouse allegedly filed and/or contributed to any such reports, the information

15

9071978

provided by Nurse Laughinghouse with respect thereto, and/or the allegedly false information included and/or contained therein.

Even assuming, *arguendo*, that Nurse Laughinghouse made any reports to CT DCF, as argued herein above, she is entitled to immunity from civil liability with respect to same.

Further, the allegations related to the alleged Florida DCF incident make no mention of Nurse Laughinghouse and reference only Defendants Minerly and Rotovnik (see, Amended Complaint, ECF No. 47, at ¶¶37-44).

As previously stated herein, in the context of a motion to dismiss for failure to state a claim, the Court follows a "two-pronged approach" in evaluating the sufficiency of the complaint.  Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  First, "[a] court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  Id.  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  Id., quoting, Ashcroft, 556 U.S. at 679.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft, 556 U.S. at 678.

Even construing Plaintiffs' allegations most generously, it is evident that Plaintiffs fail to plead a cause of action sounding in Negligent Infliction of Emotional Distress as to which relief can be granted as against Nurse Laughinghouse as set forth herein.

16

9071978

Wherefore, Plaintiffs' Claim Seven should be dismissed as to Nurse Laughinghouse in accordance with Federal Rule of Civil Procedure 12(b)(6).

###### iii.  Plaintiffs' Claim Eight, purporting to set forth a claim of Intentional Infliction of Emotional Distress, fails to state a claim upon which relief can be granted.

In accordance with Connecticut substantive law, in order to prevail on a claim of Intentional Infliction of Emotional Distress, Plaintiffs must plead and ultimately prove the four required elements entailed in that claim. "It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . ." (Citations omitted; alteration in original.) Carrol v. Allstate Ins. Co., 262 Conn. 433, 442-443, 815 A.2d 119 (2003).

"Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" (Citations omitted.) Id. at 443. To this end, "[c]onduct on the part of the defendant that

17

9071978

is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." Id.

One of the seminal cases regarding the tort of Intentional Infliction of Emotional Distress in Connecticut, Hiers v. Cohen, relying upon The Restatement of Torts (Second), § 46, and specifically comment (d) thereto, identified the need for limits upon claims:

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam . . .

Hiers v. Cohen, 31 Conn. Supp. 305, 308-309, 329 A.2d 609 (1973) (wherein the Court sustained a demurrer to Plaintiff's claim of intentional infliction of emotional distress premised upon an alleged series of telephone calls from the defendant to plaintiff demanding payment of a brokerage fee with a threat of attaching his home and foreclosure if he failed to so pay).

Liability for Intentional Infliction of Emotional Distress further requires conduct "of a nature which is *especially calculated to cause*, *and does cause*, mental distress of a very serious kind." (Emphasis added, citations omitted.) Bell v. Board of Education, 55 Conn. App. 400, 409, 739 A.2d 321 (1999). "Thus, it is the *intent to cause injury* that is the gravamen of the tort . . ." (Emphasis added; citations omitted.)

18

9071978

Id.    Whether the alleged conduct of the Defendant herein and Plaintiff's alleged resulting distress are sufficient "is a question, in the first instance, for [the] court.  Only where reasonable minds can differ does it become an issue for the jury."(Alterations in original; citations omitted.) Id. at 410.

The role of the Court in this analysis has been described as follows:

> [I]n assessing a claim for intentional infliction of emotional distress, the court performs a gatekeeping function.  In this capacity, the role of the court is to determine whether the allegations of a complaint . . . set forth behaviors that a reasonable fact finder could find to be extreme or outrageous.  In exercising this responsibility, the court is not fact finding, but rather it is making an assessment whether, as a matter of law, the alleged behavior fits the criteria required to establish a claim premised on intentional infliction of emotional distress.

Gagnon v. Housatonic Valley Tourism District Commission, 92 Conn. App. 835, 847, 888 A.2d 104 (2006).

In their cause of action purporting to set forth a cause of action for Intentional Infliction of Emotional Distress, Plaintiffs set forth only the following substantive allegations:

> 154. PLAINTIFFS reallege ¶¶ 1-153 herein by reference.
> 155. The Defendants foreseeably intended to take the actions complained of that would necessarily result in extreme and obviously emotionally distressing events, including but not limited to loss of custody, forcing a family into marital dissolution proceedings, forcing a parent to leave the home, having a child secreted from her parents and having armed law enforcement drawing loaded weapons on the PLAINTIFFS over a thousand miles from their home jurisdiction.
> 156. Upon information and belief, the claims against the Defendants are covered by insurance. Said claims are not medical malpractice claims.

19

9071978

157. To call the motivation behind the consistent false reporting of the defendants "outrageous" and "shocking to the conscience", would be an understatement.

158. The false report and the report itself had far reaching and life altering consequences that foreseeably resulted in emotional distress that did cause the manifestation of physical symptoms.

159. That by reason of the foregoing, the PLAINTIFF has suffered severe temporary and permanent psychological, emotional, and physical harm and has been damaged to a sum in excess of Five Million ($5,000,000.00).

Even crediting Plaintiffs' incorporation by reference of paragraphs 1-153 of their Amended Complaint, only the following paragraphs therein even *reference* Nurse Laughinghouse:

8. DEFENDANT DR. LINDSAY LAUGHINGHOUSE is a Nurse Practitioner Specialist in New Milford, Connecticut. DEFENDANT LAUGHINGHOUSE made false reports regarding EPs care, and also refused to treat EP for Lyme Disease, causing further exacerbation of her condition . . .

30. PLAINTIFFS understood this was a disease that would take time to heal. At this point, CCMC and Nurse Lindsay Laughinghouse became the Plaintiff's primary care physician at the order of DCF and against the PLAINTIFFS' will. As a result, PLAINTIFFS complied under threats from Minerly and Rotovnik to remove EP from the home. Notably, Nurse Laughinghouse never stated any concerns with EPs care, but she absolutely refused to treat her for Lyme Disease.

31. There was no reason for Minerly and Rotovnik to force the PLAINTIFFS to stop using Dr. Lopusny, their preferred physician, other than the fact that Laughinghouse sided with their incorrect diagnosis and was therefore willing to participate in the negligent treatment of EP and the subsequent removal of her from her parents' custody . . .

70. Defendants Minerly and Rotovnik conspired with CCMC, Zemmel, Fitzsimmons, and Laughinghouse, to justify an abuse of process and to violate the PLAINTIFFS' civil rights . . .

20

9071978

92. CCMC, Zemmel, Fitzsimmons, Laughinghouse, and Bazos, all filed and contributed to DCF reports containing information they knew to be false. Plaintiff believes that JOHN and JANE DOES 1-10 listed in the caption and are the "anonymous" DCF complainers, are these same defendants.

Based upon the foregoing, and even crediting those "allegations" asserted by Plaintiffs that are mere conclusory assertions, Plaintiffs' Amended Complaint fails to set forth any factual allegations that might establish any of the required elements for a legally sufficient cause of action sounding in Intentional Infliction of Emotional Distress under Connecticut law.

While Plaintiffs' purport to tie their claim of Intentional Infliction of Emotional Distress to (1) the alleged filing of false reports with DCF and/or (2) the alleged filing of a false report with Florida DCF, allegedly resulting in the detainment of Plaintiffs, nowhere in the Amended Complaint do Plaintiffs set forth any non-conclusory factual allegations, as to Nurse Laughinghouse, that she was involved in any and/or all of the foregoing alleged conduct.

In fact, the only allegation in the Amended Complaint with respect to Nurse Laughinghouse in the context of a DCF report of any kind is the wholly conclusory assertion set forth at paragraph 92 thereof, which states only: "CCMC, Zemmel, Fitzsimmons, Laughinghouse, and Bazos, all filed and contributed to DCF reports containing information they knew to be false. Plaintiff believes that JOHN and JANE DOES 1-10 listed in the caption and are the "anonymous" DCF complainers [sic], are these same defendants."   No allegations are included therein as to when Nurse Laughinghouse allegedly filed and/or contributed to any such reports, the information

21

9071978

provided by Nurse Laughinghouse with respect thereto, and/or the allegedly false information included and/or contained therein.

Even assuming, *arguendo*, that Nurse Laughinghouse made any reports to CT DCF, as argued herein above, she is entitled to immunity from civil liability with respect to same.

Further, the allegations related to the alleged Florida DCF incident make no mention of Nurse Laughinghouse and reference only Defendants Minerly and Rotovnik (see, Amended Complaint, ECF No. 47, at ¶¶37-44).

As previously stated herein, in the context of a motion to dismiss for failure to state a claim, the Court follows a "two-pronged approach" in evaluating the sufficiency of the complaint. Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). First, "[a] court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" Id. "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" Id., quoting, Ashcroft, 556 U.S. at 679. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 556 U.S. at 678.

Even construing Plaintiffs' allegations most generously, it is evident that Plaintiffs fail to plead a cause of action sounding in Intentional Infliction of Emotional Distress as to which relief can be granted as against Nurse Laughinghouse as set forth herein.

22

9071978

Wherefore, Plaintiffs' Claim Eight should be dismissed as to Nurse Laughinghouse in accordance with Federal Rule of Civil Procedure 12(b)(6).

### III.    CONCLUSION

WHEREFORE, based upon the foregoing, and as incorporated herein by reference from Movant's previously filed Motion to Dismiss Plaintiffs' Complaint (ECF No. 8), Memorandum in Support thereof (ECF No. 8-1), and Reply Memorandum of Law in Support (ECF No. 24), Defendant Laughinghouse respectfully moves this Court to dismiss Plaintiffs' Amended Complaint, it its entirety as to her, under Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and/or 12(b)(6) as set forth herein.

DEFENDANT
LINDSEY LAUGHINGHOUSE, APRN s/h/a
"DR. LINDSEY LAUGHINGHOUSE"

By: _____

Megan E. Bryson, Esq.
Federal Bar No. ct27955
Kaufman Borgeest & Ryan LLP
1010 Washington Boulevard, 7th Fl.
Stamford, Connecticut 06901
Tel: 203-557-5700
Fax: 203-557-5777
Email: mbryson@kbrlaw.com
*Attorneys for Defendant*

23

9071978

## CERTIFICATE OF SERVICE

This is to certify that on June 5, 2023, the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


By: _____
        Megan E. Bryson, Esq.

9071978

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

KATHERINE PILEGGI, ET AL.,                    :
                                              :
          Plaintiffs,                   :        Case No.: 3:22-CV-01315-AWT
                                              :
    vs.                                   :
                                              :
KIM MATHIAS, ET AL.,                          :
                                              :
         Defendants.                    :        JUNE 5, 2023

**Table of Authorities**

**For Defendant's Memorandum of Law in Support of Her**
**Motion to Dismiss Plaintiffs' Amended Complaint**

| Case Citation | Cited at (pages) |
|---|---|
| Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). | 5, 12, 16, 22 |
| Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). | 5 |
| | |
| Hayden v. Paterson, 594 F.3d 150 (2d Cir. 2010). | 11-12, 16, 22 |
| Whalen v. County of Fulton, 126 F.3d 400 (2d Cir. 1997). | 7 |
| | |
| Sentementes v. Town of Bethel, et al., No. 3:20-CV-580 (MPS) 2020 WL 5994950 (D. Conn. Oct. 9, 2020). | 5 |
| | |
| Carrol v. Allstate Ins. Co., 262 Conn. 433, 815 A.2d 119 (2003). | 17 |
| Larobina v. McDonald, 274 Conn. 394, 876 A.2d 522 (2005). | 13 |
| Maloney v. Conroy, 208 Conn. 392, 545 A.2d 1059 (1988). | 13 |
| Scanlon v. Conn. Light & Power Co., 258 Conn. 436, 782 A.2d 87 (2001). | 13 |
| Zamstein v. Marvasti, 240 Conn. 549, 692 A.2d 781 (1997). | 6 |
| | |
| Bell v. Board of Education, 55 Conn. App. 400, 739 A.2d 321 (1999). | 18 |
| Gagnon v. Housatonic Valley Tourism District Commission, 92 Conn. App. 835, 888 A.2d 104 (2006). | 19 |
| | |

9071978

| | |
|---|---|
| Hiers v. Cohen, 31 Conn. Supp. 305, 329 A.2d 609 (1973) | 18 |
| | |
| Conn. Gen. Stat. § 17a-101 | 5 |
| Conn. Gen. Stat. § 17a-101a | 5-6 |
| Conn. Gen. Stat. § 17a-101e | 6 |

9071978