**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **KATHARINE PILEGGI, et al.**, | ) | **CIVIL ACTION NO.3:22-CV-01315** |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **KIM MATHIAS, et al.,** | ) | |
| Defendants. | ) | **June 6, 2023** |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT AGAINST FORMER COMMISSIONER JOETTE KATZ, SOCIAL WORKER KAELA MINERLY, SOCIAL WORKER FRANK ROTOVNIK IN THEIR INDIVIDUAL CAPACITIES

**I.    INTRODUCTION:**

The Plaintiffs have brought several causes of action against numerous defendants, including the Connecticut Department of Children and Families [DCF], Assistant Attorney General Kim Mathias (an employee of the Office of the Attorney General who represented DCF in state court child welfare proceedings), Joette Katz (the former commissioner of DCF), and Kaela Minerly and Frank Rotovnik (social workers employed by DCF.  The suit stems from the medical diagnosis and treatment of the minor plaintiff EP and resulting referrals of medical neglect to DCF.  In the first cause of action Plaintiffs claim that Mathias, DCF, the DCF employees, and others violated the Plaintiffs' rights under the First and Fourteenth amendments to raise their child, make medical decisions, and have intimate association with EP.  (Amended Complaint, Claim One, ¶'¶ 91-101).  The second cause of action against Katz, Minerly, Rotovnik and DCF [the DCF Defendants] alleges a violation of Article 1, § 9 of the Constitution for interfering with interstate travel.  (Amended Complaint, Claim Two, ¶¶

103-109). The third cause of action against the DCF Defendants and Mathias alleges a violation of the Plaintiffs' rights to substantive and procedural due process under the Fifth and Fourteenth amendments. (Amended Complaint, Claim Three, *Id.*, ¶¶ 113-126). The fourth and fifth causes of action raise state law claims against the DCF Defendants. (Amended Complaint, Claims Four and Five). The seventh and eighth causes of action raise state law claims against Mathias, the State Defendants, and others. (Amended Complaint, Claims Seven and Eight). The eleventh cause of action is based on 42 U.S.C. § 1983 against "Defendant DCF," alleging "Municipal Liability." (Amended Complaint, Claim Eleven, ¶¶ 171-179).

This Court should dismiss all claims in Plaintiffs' Amended Complaint against Mathias and the DCF Defendants because the allegations do not sufficiently support any plausible claims under federal law or state law and do not overcome their entitlement to qualified immunity for the federal claims or statutory immunity for the state law claims. This Court should also dismiss the claims against former Commissioner Katz on the additional ground that the Plaintiffs concede that she was not personally liable for claims against the DCF or its agents and that dismissal as to claims against her is appropriate.[1] (Doc. 45, p.1).

---

[1] The plaintiffs wrote: "As an initial matter, the plaintiff concedes that the law indicates that Commissioner Joette Katz is not liable for the claims against DCF or their agents, defendants Minerly and Rotovnik; and that she should be dismissed from this action." (Doc. 45, p. 1). In addition, Commissioner Katz had left her position as commissioner before the state juvenile case was filed. (Doc. 26, p. 13 n. 4). For these reasons, as well as those set forth in the defendants' initial motion to dismiss (Doc. 26 pp. 13-14), all claims against former commissioner Katz should be dismissed.

## II.    BACKGROUND:

The Plaintiffs filed this action on October 19, 2022, against Mathias, Katz,Minerly, Rotovnik, and DCF; private defendants the Connecticut Children's Medical Center, Dr. Roman Alder, Dr. Lawrence Zemmel, Dr. Lindsey Laughinghouse, Dr. Andrew Bazos, Dr. Kevin Fitzsimmons; and "John and Jane Does 1-10." While Mathias and the DCF Defendants' separate motions to dismiss were pending, the Plaintiffs filed a motion to amend the complaint on April 27, 2023, which this court granted on May 12, 2023. (Doc. 46). The Plaintiffs thereafter filed the amended complaint on May 15, 2023.[2] (Doc. 47).

Plaintiffs allege that several medical providers who examined and treated the minor Plaintiff "EP" made false reports to DCF. (Amended Complaint, Preliminary Statement, ¶¶ 6 – 10, 184). These medical providers include Defendants Dr. Adler, EP's pediatrician former; Nurse Practitioner Specialist Laughinghouse; Dr. Bazos, an orthopedic surgery specialist; and Fitzsimmons, a pediatric and adolescent fracture management specialist. (*Id*.). Defendant Dr. Zemel, a pediatric rheumatologist at Connecticut Children's Medical Center (CCMC), is alleged to have mistakenly diagnosed EP with Juvenile Idiopathic Rheumatoid Arthritis and falsely reported to DCF that EP's condition "has nothing to do with Lyme Disease or a tick bite." (*Id*., ¶¶ 7, 18, 71 and 73, Ex. E., p. 172). The Plaintiffs declined the recommended treatment,

---

[2] The amended complaint as it pertains to Assistant Attorney General Mathias is addressed in the defendants' Notices of Intent (Doc. 50 and 51) to rely on previously filed motions to dismiss, one filed on behalf of her in her individual capacity (Doc. 27) and the other on behalf of all of the DCF Defendants in their official capacities (Doc. 26).

believing that EP had Lyme Disease rather than arthritis and relied instead on a master herbalist and biochemist from Florida named Morse.  (*Id*., ¶¶ 18, 38).

Based upon the reports of the medical providers, DCF sought and obtained an ex parte order of temporary custody (OTC) of EP on March 28, 2019, and the court ordered that DCF have medical decision-making authority for EP.  (*Id.,* ¶¶ 45-46; Doc. 27-2, pp. 2-3).[3]  The court found that EP was in immediate risk of physical harm from her surroundings with the parents.  *See* Conn. Gen. Stat. § 46b-129 (b). (Doc. 27-2, p. 2).  The Plaintiffs appeared at the hearing on the OTC on May 5, 2019, and agreed to sustain the OTC.  (Doc. 27-2, pp. 4-7, 18-19).  The parents and child had the benefit of legal counsel.  (Amended Complaint, ¶¶ 45-46, Doc. 27-2, pp. 5).

---

[3] The DCF Defendants have included the certified juvenile court records in its 12(b)(6) motion to dismiss as they are the proper subject of judicial notice.  USCS Fed Rules Evid R 201(b)(2).  In addition, the court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  Given the Plaintiffs' references to the juvenile court orders as violative of their right to family integrity and the claimed lack of procedural due process, the documents are integral to the complaint.

The Plaintiffs should not be permitted to overcome a motion to dismiss a claim that they were denied due process by failing to reference the notice and procedures that were provided to them. *Cf. Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44, 47 (2d Cir. 1991) ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim -- and that they apparently most wanted to avoid -- may not serve as a means of forestalling the district court's decision on the motion.") The plaintiffs were present for and well aware of what transpired before the juvenile court and this information is appropriately considered by this Court in assessing the plausibility of their claims.  *Cf .id.* 48 ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.")

On September 19, 2019, the superior court adjudicated all of the plaintiff-children neglected and ordered that EP be committed to DCF.  (Doc. 27-2, pp. 39-46).  These orders were entered by agreement of all parties.  (Doc. 27-2, pp. 21-22, 26-31).  The parents and children had the benefit of legal counsel at the time of the order and agreement as well.  (Doc. 27-2, pp. 20-21, 47-48).  EP's commitment was revoked on October 9, 2019, and she was placed with her father under an order of Protective Supervision scheduled to expire on March 19, 2020, at which time the juvenile court case ended.  (Doc. 27-2, pp. 47-53).

## III.    STANDARD OF REVIEW-MOTION TO DISMISS

Rule 12 (b) (6) of the Federal Rules of Civil Procedure provides for the dismissal of a claim for "failure to state a claim upon which relief can be granted."  Rule 8 of the Federal Rules of Civil Procedure requires that "[a] pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002).  The pleading standard of Rule 8 does not require "detailed factual allegations," but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  Id.  "To survive a motion to dismiss, a complaint must

5

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Mastafa* v. *Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014).

> [W]e apply a 'plausibility standard,' which is guided by '[t]wo working principles,' *Ashcroft v. Iqbal,* 556 U.S. 662, 129 […](2009). First, although 'a court must accept as true all of the allegations contained in a complaint," that "tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' *Id.* 'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' *Id.* at 1950.

*Harris* v. *Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678.  When assessing sufficiency on a motion to dismiss, Courts may consider the facts plead in conjunction with documents attached to the complaint as exhibits, incorporated by reference in the complaint, or deemed integral to the complaint.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *Ray v. New York State Ins. Fund*, No. 16 Civ. 2895 (NRB), 2018 U.S. Dist. LEXIS 120728, *11 (S.D.N.Y. July 18, 2018) ("However, we 'are not bound to accept as true a legal conclusion couched as a factual allegation,'… , and "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint" in assessing sufficiency.") (internal citations omitted).

6

IV.    **ARGUMENT**

A. **PLAINTIFFS HAVE FAILED TO PLEAD ANY PLAUSIBLE CLAIM OF A CONSTITUTIONAL VIOLATION OF THEIR RIGHT TO FAMILY INTEGRITY AGAINST THE DCF DEFENDANTS.[4]**

In the Plaintiffs' first cause of action, they assert that Mathias, the DCF Defendants, and the private defendants "interfere[d] with the Plaintiffs' liberty interest," alleging that under the First and Fourteenth Amendments to the United States Constitution, the Plaintiffs have a right "to raise their children and make medical decisions, and have intimate association."  (Amended Complaint, Claim One, ¶¶ 90-98). The Plaintiffs later allege in their third cause of action that the DCF Defendants violated their substantive and procedural due process rights throughout their encounter with DCF.  (*Id.*, ¶¶ 113-126).  Contrary to the Plaintiffs' contention, the right to family integrity asserted in the Claim One of the complaint under the First and Fourteenth Amendments arises solely out of an individual's substantive and procedural due process rights.  *See Tenenbaum* v. *Williams*, 193 F.3d 581, 600 (2d Cir. 1999).  Insofar as the Plaintiffs allege Mathias and the DCF Defendants violated their right to family integrity, the vehicle for their cause of action is found in the Claim Three concerning the alleged violations of their substantive and procedural due process rights under the Fifth and Fourteenth Amendments.  Regardless, the complaint is bereft of facts that could give rise to any such violations.

---

[4] The Plaintiffs' 42 U.S.C. § 1983 claims refer to either "DCF defendants" or "defendants" without specifying which individuals correspond with each allegation. Regardless, Mathias, Katz, Minerly, and Rotovnik are all entitled to a dismissal.

1. **The Plaintiffs do not set forth a claim that their substantive due process right to remain together as a family was violated**.

Substantively, there is no "clear right to unfettered parental decision-making with regard to a child's care and custody." *Defore v. Premore*, 863 F. Supp. 91, 95 (N.D.N.Y. 1994); *see Brenna v. Wood*, 3:03-cv-01101 (WWE), 2006 U.S. Dist. LEXIS 99496, at *9 (D. Conn. Aug. 8, 2006) ("[the] right to family integrity is not absolute and the constitutional right to due process may be suspended."); *see also Prince v. Massachusett*s, 321 U.S. 158, 167 (1944) ("[T]he state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare . . .").

Claims that state agents exercising those powers violated substantive due process rights require underlying conduct "characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento* v. *Lewis*, 523 U.S. 833, 847(1998) (citing *Collins*, 112 S. Ct. at 1068) (internal quotation marks omitted). "Only the most egregious official conduct can be said to be arbitrary in the constitutional sense'" and therefore unconstitutional. *Id.* (citation omitted)." *Tenenbaum*, 193 F.3d 600. "[T]he cases in which courts have recognized a viable substantive due process claim are limited to those presenting extraordinary circumstances." *Radolf* v. *Univ. of Conn.*, 364 F. Supp. 2d 204, 227 (D. Conn. 2005). "[T]o raise successfully a substantive due process claim, the defendant's conduct must be unusually extreme and shocking." *McDonald* v. *Sweetman*, No. 3:02cv1040 (MRK), 2004 U.S. Dist. LEXIS 5558 *20 (D. Conn. March 24, 2004). Such conduct must be "brutal' and 'offensive to human dignity' as to shock the conscience." *Smith* v. *Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168,

173 (2d. Cir. 2002); *see, e.g., Rochin* v. *California*, 342 U.S. 165 (1952) (forced pumping of suspect's stomach offends Due Process).

With this standard in mind, the conclusory characterizations of the alleged facts by the Plaintiffs cannot support a claimed deprivation of the right to family integrity without identifying specific conduct by the DCF Defendants that could be considered "arbitrary," egregious," "conscience shocking," "brutal," or "offensive to human dignity."

The Plaintiffs here make numerous allegations against "DCF" in their complaint, rather than the individually named DCF Defendants, reflecting their disagreement with the reports of neglect made to DCF, DCF's investigation of those reports, and DCF's actions to protect the Plaintiff children. For example, they allege: Connecticut "DCF filed a false report to Florida's DCF" that Mrs. Pileggi had fled the jurisdiction "to visit her lover" (Amended Complaint, ¶ 42); "DCF was simply using their authority and power to harass and intimidate Plaintiffs and to make up reasons to justify not returning EP to her parents and family" (*Id*., ¶ 65); and "DCF also vaccinated the Plaintiffs' other children against their wishes." (*Id.*, ¶ 118). These general references to the state agency, which has thousands of employees and numerous employees involved in each case, do not suffice to state a claim of egregious conduct against the two individually named social workers.

The Plaintiffs' amended complaint remains long on polemics, but short on specific allegations of conscience-shocking conduct by Minerly and Rotovnik. The Plaintiffs allege that Minerly and Rotovnik "used [their] position and power to among other things, bully and intimidate Plaintiffs, constantly threatening to and did unjustifiably remove EP from Plaintiff's home." (*Id*, ¶¶ 3-4). The Plaintiffs allege that "Ms. Minerly

9

was unprofessional and verbally abusive" and committed a "verbal and emotional assault" by telling Mrs. Pileggi to stop taking EP to Dr. Lopusny, M.D., F.A.A.P. or DCF would take her child; and that Frank Rotovnik "even required Plaintiffs to provide a lease as proof of their separation…" (*Id*., ¶¶ 27-28, 56-57).  These allegations characterize the Plaintiffs' feelings during a DCF investigation in the face of the potential emotional consequences if the Department were required to assume custody of EP, but cannot be fairly characterized as acts so egregious, arbitrary or brutal that they shock the conscience.  *See Iqbal,* 556 U.S. at 678 (2009); *Bell Atl. Corp*., 550 U.S. 544.

In the Amended Complaint the Plaintiffs seek to overcome the implausibility of the original allegations by accusing Minerly and Rotovnik of forcing them to switch medical providers for EP (Amended Complaint, ¶ 31); seeking the assistance of the police in Florida (*Id*., ¶ 44); making false allegations against the Plaintiffs in the underlying state juvenile court proceeding (*Id*. ¶ 67); and conspiring with employees of CCMC to violate the Plaintiffs' rights.  (*Id*., ¶ 70).  These new allegations, however, are unsupported by specific factual allegations of egregious behavior and merely reflect the Plaintiffs' disagreement with the medical providers' reports and the DCF Defendants' reliance upon them.  Even if the complaint could be interpreted as alleging a negligent investigation, acts of mere negligence do not violate an individual's rights under the due process clause of the United States Constitution.  *Davidson v. Cannon*, 474 U.S. 344, 346-47 (1986); *Daniels v. Williams,* 474 U.S. 327,  330-33 (1986).  The due process clause "is not a guarantee against incorrect or ill-advised [government] decisions." *Bishop* v. *Wood*, 426 U.S. 341, 350 (1976).  The Supreme Court "has always been reluctant to expand the concept of substantive due process because guideposts for

responsible decision making in this unchartered area are scarce and open-ended."
*Collins* v. *City of Harker Heights*, 503 U.S. 115, 125 (1992).

The complaint is insufficient to support a finding of any conduct sufficiently egregious to support a viable claim of substantive due process violations.

**2. The Plaintiffs fail to allege any facts that indicate they were deprived of a liberty or property interest without due process.**

The Plaintiffs' claims must be analyzed under the rubric of a procedural due process violation. *Tenenbaum*, 193 F.3d at 600. A two-step analysis is used when considering a claim that procedural due process rights were violated. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532 (1985); *McMenemy v. City of Rochester,* 241 F.3d 279, 285-86 (2d Cir. 2001). First, a court must determine whether the plaintiff has a right or interest that is entitled to due process protection. Second, if the plaintiff was deprived of such a right or interest, the court must determine what process is due. *Id.*

In relation to the first step, the care, custody, and management of a natural parent's children is a protected liberty interest that requires due process before, or in an emergency, soon after any infringement. *Stanley v. Illinois*, 405 U.S. 645 (1972); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Tenenbaum*, 193 F.3d at 600; *Defore* v. *Premore*, 863 F. Supp. 91, 95 (N.D.N.Y. 1994); *see also Brenna*, 2006 U.S. Dist. LEXIS 99496, at *9. While the first step is clearly satisfied by the facts alleged, courts have recognized on multiple occasions that certain circumstances involving investigations of child neglect and abuse necessitate abrogation of the right to family integrity. *See Pace v. Montalvo*, 186 F. Supp. 2d. 90, 98 (D. Conn. 2001); *Defore*, 863 F. Supp. at 95.

In child protection proceedings, by statute, the Department has the obligation to seek and the court has broad discretion to issue orders to advance the welfare of

children, including orders to parents mandating therapeutic services, psychological testing, drug testing, safe custody arrangements, and monitored visitation.  Conn. Gen. Stat. §§ 46b-121(b); 46b-129(a), (b) (6) and (j)(3); *see In re Allison G.*, 276 Conn. 146, 161 (2005); *cf. In re Jayce O.*, 323 Conn. 690, 708 (2016).  In an appropriate case a parent may be required to separate himself from a spouse or significant other whose behaviors are inconsistent with the welfare and safety of children.  *See In re Alison M.*, 127 Conn. App. 197, 202 (2011).

To apply the second-step, courts have employed a three-part test to determine what process is constitutionally due:  "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335, (1976); *see Fuentes* v. *Shevin*, 407 U.S. 67, 80 (1972) ("For more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard").

The Plaintiffs set forth their disagreement with the outcome of the underlying DCF investigation and the rulings of the juvenile court, but they do not plead any facts that would establish that they did not have a timely opportunity to be heard or that the procedures they were provided were insufficient or unfair.  Their conclusory allegations with respect to DCF's decision to seek an ex parte Order of Temporary Custody and Judge Turner's order granting the OTC are insufficient to establish a lack of procedural

due process.  Under Connecticut law, such orders are permitted by statute.  *See* Conn. Gen. Stat. § 46b-129; Conn. Practice Bk. §§ 33a-6 and 33a-7 (requiring notice, a right to a hearing within 10-days of the ex parte order, and a right to an evidentiary hearing to contest the order).

Where, as here, "DCF and the Superior Court followed all of the aforementioned procedures and the Superior Court made a finding of abuse or neglect by Plaintiff as to which this Court does not function as an appeals court … Plaintiff's conclusory claim of illegality is thus unavailing," the Court must dismiss the due process claim.  *See Sweeney v. Dunbar*, Case No. 3:05CV00580(PCD), 2007 U.S. Dist. LEXIS 18953, *10-11 (D. Conn., March 19, 2007). The Plaintiffs were present at the ten-day hearing and had every opportunity to be heard by the court at that time and to demand a contested hearing.  (Amended Complaint, Ex. E., pp. 166, 173; Doc. 27-2, pp. 4-19).  Absent valid allegations or detailed facts to establish that the right to be heard was infringed by the DCF Defendants, the Plaintiffs have not pled a legally sufficient procedural or substantive due process violation.  *Tenenbaum,* 193 F.3d at 600*; see also Velez v. Levy*, 274 F. Supp. 2d 444, 454, (S.D.N.Y. 2003), *affirmed in part and vacated in part by*, 2005 U.S. App. LEXIS 4135 (2d Cir., Mar. 11, 2005) ("because the plaintiff's Fourteenth Amendment due process claims are being dismissed, the claim alleging a violation of substantive due process is also dismissed").

The complaint, thus, falls short of stating a plausible claim for Constitutional violations against any of the state defendants and in particular Defendants Minerly and Rotovnik.  Claims One and Three against them in their individual capacities must be dismissed.

### B.    THE PLAINTIFFS HAVE NOT PROPERLY ALLEGED ANY VIOLATION OF THEIR RIGHT TO TRAVEL IN CLAIM TWO.

"The federal guarantee of interstate travel . . . protects interstate travelers against two sets of burdens: the erection of actual barriers to interstate movement and being treated differently from intrastate travelers." *Bray* v. *Alexandria Women's Health Clinic*, 506 U.S. 263, 276-77, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993) (citing *Zobel* v. *Williams*, 457 U.S. 55, 60 n. 6, 102 S. Ct. 2309, 72 L. Ed. 2d 672 (1982)) (internal quotation marks omitted).  An individual's right to travel is violated: "(1) when a law or action deters such travel; (2) when impeding travel is its primary objective; and (3) when a law uses any classification which serves to penalize the exercise of that right." *Torraco* v. *Port Auth.*, 615 F.3d 129, 140 (2d Cir. 2010).

The Plaintiffs' conclusory allegations in their second cause of action fail to establish any violations of their right to travel.  (Amended Complaint, Claim Two, ¶¶ 102-108).  The Plaintiffs' claim focuses on their trip to Florida and DCF's decision to seek and enforce the order of temporary custody on behalf of EP.  The Plaintiffs allege that Florida police officers confronted them at gunpoint, but there are no facts alleging that any of the named defendants were involved in that confrontation or the manner in which the Florida police carried it out.  (Amended Complaint ¶ 109).  There are also no factual allegations to support a claim that the primary purpose of the order of temporary custody was to impede the Plaintiffs' right to travel.  Nor does the complaint identify any classification by which the Plaintiffs' right to travel was penalized or by which they were treated differently from other intrastate travelers.  Thus, categories two and three, necessary to establish a violation of the right to travel, are clearly inapplicable here and Claim Two must be dismissed. *Torraco v. Port Auth.,* 615 F.3d at 140*.*

14

C.   **DCF DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AS IT WAS OBJECTIVELY REASONABLE FOR DEFENDANTS TO BELIEVE THAT THEIR ACTIONS IN INVESTIGATING THE PLAINTIFFS DID NOT VIOLATE CLEARLY ESTABLISHED LAW**

Alternatively, because the DCF Defendants are entitled to qualified immunity with respect to the Plaintiffs' claims against them under 42 U.S.C. § 1983, they should not be subject to suit or the burdens of further litigation and this court should dismiss the action in its entirety.  Qualified immunity is properly raised at the motion to dismiss stage so that the litigation can cease at the earliest stage possible.  *See Mitchell* v. *Forsyth*, 472 U.S. 511, 526  (1985) ( "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery").

Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: "'(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.'"  *Russo* v. *City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007).  "[T]he Supreme Court instructs courts that '[t]he dispositive question is whether the violative nature of particular conduct is clearly established,' and that '[t]his inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.'"  *Vega* v. *Semple*, 963 F.3d 259, 275 (2d Cir. 2020) (citing *City of Escondido* v. *Emmons*, 139 S. Ct. 500, 503, 202 L. Ed. 2d 455 (2019)).

"In determining whether a particular right was clearly established at the time defendants acted, this Court has considered three factors: (1) whether the right in question was defined with "reasonable specificity;" (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in

15

question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Jermosen* v. *Smith*, 945 F.2d 547, 550 (2d. Cir. 1991), *cert. denied*, 503 U.S. 962 (1992).

While the first two prongs for the test are met in that a right to family integrity and to custody of one's child is recognized under the Fifth and Fourteenth Amendments, as explained above, the right is not absolute. *Defore*, 863 F. Supp. at 95; *Brenna*, 2006 U.S. Dist. LEXIS 99496, at *9. Under the third prong, "It is well settled that child protective services workers are entitled to qualified immunity for their conduct during the course of abuse investigations." *Wilkinson ex rel.* v. *Russell*, 182 F.3d 89, 99 (2d. Cir. 1999). "An investigation passes constitutional muster provided simply that case workers have a 'reasonable basis' for their findings of abuse. . . In applying a reasonableness standard in the abuse context, courts must be especially sensitive to the pressurized circumstances routinely confronting case workers, circumstances in which decisions between 'difficult alternatives' often need to be made on the basis of limited or conflicting information." *Wilkinson*, 182 F.3d at 104-105; *Van Emrik v. Chemung County Dep't of Social Services*, 911 F.2d 863, 866 (2d. Cir. 1990). "This Circuit has adopted a standard governing case workers which reflects the recognized need for unusual deference in the abuse investigation context." *Brenna*, 2006 U.S. Dist. LEXIS 99496 at *13. " If "an objectively reasonable basis for believing that parental custody constitutes a threat to the child's *health* or safety" exists, "government officials may remove a child from his or her parents' custody "without parental consent or a *prior* court order." *Pace*, 186 F. Supp. at 98 (citation omitted; emphasis added; emphasis in original); *see also Doe* v. *Conn. Dept. of Children & Youth Services*, 712 F. Supp. 277

16

(D. Conn. 1989), *aff'd*, 911 F 2d 868 (1990).  Even in a seriously flawed child abuse investigation social workers are entitled to qualified immunity.  *Wilkinson*, 182 F.3d at 104-105; *see also Langton* v. *Maloney*, 527 F. Supp. 538, 546-47 (D. Conn. 1981) ("The discretionary decisions of the social worker in the field should not be impeded by liability in damages for decisions which might later be challenged").

The Plaintiffs' own allegations that on multiple occasions, medical professionals contacted DCF with concerns regarding medical neglect of EP and resulting physical injuries sustained by EP, support a finding that the DCF Defendants' conduct was "objectively reasonable" and they are entitled to qualified immunity. (Amended Complaint, ¶¶ 23, 32-34); see *Ward* v. *Murphy*, 330 F. Supp. 2d 83, (D. Conn. 2004); *Pace*, 186 F. Supp. 2d. at 98) (it was objectively reasonable for DCF to rely on the opinions of a medical doctor); *Harasz* v. *Katz*, 327 F. Supp. 3d 418, 451 (D. Conn. 2018) (DCF social worker was objectively reasonable in relying  on opinions of and information from treating psychologist); *see also In re Cassandra C.*, 316 Conn. 476 (2015) (upholding order of temporary custody of child so that child could receive necessary medical treatment).

The Plaintiffs attached the Department's Investigation Protocol as Exhibit E to its Amended Complaint and rely upon it for many of their allegations regarding the allegedly false reports received from medical providers.  (Complaint ¶¶ 23, 32-34, 73, 85, Ex. E, pp.  57).  Dr. Pamela Santapaola, who the Plaintiffs' brought EP to for treatment and did not sue, was documented in Plaintiffs' Exhibit E as having reported as follows:

> [S]he did an intake on [EP] and noted that she could not walk and that it was the worst case of juvenile arthritis that she has ever seen. She stated that she did a

17

physical exam of [EP] and observed her to have an enlarged liver and a mass in her stomach around her bladder which Dr. Santapaola related possibly to her diet as she is on a strict fruit and mild vegetable diet. She reported that she is taking way too many supplements and that she has not heard of a lot of them. Dr. Santapaola reported that parents told her that she was working with Dr. Morse from Florida and she reported that she did her own research on Dr. Morse and reported that she could not find any credentials on Dr. Morse…

(Amended Complaint, Ex. E, p. 45).[5]

In light of the allegations in the complaint and the information in its attachments, the steps taken by the DCF Defendants to protect EP from further harm were reasonable.  The allegations establish that the DCF Defendants were acting as employees of the agency responsible for protecting abused and neglected children and would have every reason to believe that they were acting lawfully. The state of the law within the Second Circuit recognizes a state's right to act to protect abused and neglected children.  Those precedents could not have reasonably put the DCF Defendants on notice that they were violating the Plaintiffs' constitutional rights. *See V.S.* v. *Muhammad*, 595 F.3d 426, 431 (2nd Cir. 2010) (reliance by social worker upon medical doctor's opinion was objectively reasonable even when supposedly the doctor had a reputation for over- diagnosing child abuse).  As a result, the DCF Defendants are entitled to qualified immunity with respect to the Plaintiffs' due process claims. Accordingly, the federal causes of action found in Claims One, Two and Three brought under § 1983 must be dismissed.  *See Pace*, 186 F. Supp. at 98.

---

[5] A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42,  47 (2d. Cir. 1991).

**D.    STATE LAW CLAIMS SHOULD BE DISMISSED.**

If this Court dismisses the federal claims, then it should also dismiss the state law claims because (1) the DCF Defendants are immune from liability, (2) the allegations do not sufficiently support any of the claims under state law, and (3) the state law claims allege the same implausible facts alleged under § 1983 rendering further litigation in the state court unfair to the individual defendants and wasteful.

"In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. *Gianetti v. Blue Cross & Blue Shield of Conn., Inc.*, 2008 U.S. Dist. LEXIS 36749, *23 (D. Conn., 2008) "Because a basis for original jurisdiction existed in this case, the district court ha[s] the discretion to retain jurisdiction over the plaintiff's supplemental state law claims once it dismissed the underlying federal claim. … In reviewing such a decision to retain jurisdiction we consider factors such as judicial economy, convenience, fairness, and comity." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1191 (1996). "[W]hen a state-law claim is clearly without merit, it makes sense to retain supplemental jurisdiction in order to dismiss it, since doing so offends no state interest and spares overburdened state courts additional work." *Pleva v. Norquist*, 36 F. Supp. 2d 839, 851 (E.D. Wis. 1999). As there are no novel issues of state law involved here, considerations of judicial economy and fairness to the state defendants, who are entitled to immunities that protect them from suit and the burdens of litigation as argued above, weigh in favor of dismissal of the state claims with prejudice.

19

**1.    Conn. Gen. Stat. Section 4-165 shields the DCF Defendants from liability for the negligence claims alleged in Claim Seven.**

The Plaintiffs' Amended Complaint sets forth two new causes of action: Claim Seven, negligent infliction of emotional distress (Amended Complaint, ¶¶ 149-153), and Claim Eight, intentional infliction of emotional distress (*Id.*, ¶¶ 154-158).  The Plaintiffs' negligent infliction of emotional distress claim by its very terms is subject to dismissal under Fed. R. Civ. P. 12(b)(1) because the state defendants are entitled to statutory immunity.  Conn. Gen. Stat. § 4-165 (a); *see Sousa* v. *Roque*, CIVIL ACTION NO. 3-05CV822 (JCH), 2005 U.S. Dist. LEXIS 35885, * 9 (D. Conn., December 16, 2005) (statutory immunity bars negligent infliction of emotional distress claim).  "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment."  Conn. Gen. Stat. § 4-165 (a).  "In other words, state employees may not be held personally liable for their negligent actions performed within the scope of their employment. . . . "  *Gilman* v. *Shames*, 189 Conn. App. 736, 743-744 (2019); See, *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (Defendants were entitled to assert immunity from liability granted by state statute and the "district court bound to apply state law when ruling on a pendent state law claim").

Dismissal is thus required under Fed. R. Civ. P. 12(b)(1) as the plaintiff cannot establish any entitlement to relief as a matter of law. See *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991).

### 2.    Plaintiff have failed to allege facts sufficient to support any claims under state law

The Court should dismiss the pendent state law claims for failure to state claims upon which relief can be granted.  "[C]onclusory statements of law without any factual allegations to support such conclusions" are legally insufficient.  *Keller* v. *Beckenstein*, 117 Conn. App. 550, 565*, cert. denied*, 294 Conn. 913 (2009).  The Plaintiffs plead the following claims against the DCF Defendants:  Claim Four (abuse of process), Claim Five (malicious prosecution),  Claim Seven (negligent infliction of emotional distress), and Claim Eight (intentional infliction of emotional distress).

The abuse of process claim (Claim Four) fails to state a claim upon which relief can be granted.  "An action for abuse of process lies against any person using 'a legal process against another in an improper manner or to accomplish a purpose for which it was not designed.'"  *Alexandru* v. *Dowd*, 79 Conn. App. 434, 441, *cert. denied*, 266 Conn. 925 (2003).  Here, Plaintiffs allege only that the DCF Defendants were responsible for filing a neglect petition.  They make no particularized allegations that any of the individually named DCF Defendants used such filing in an improper manner to accomplish a purpose for which it was not designed.  Without such factual allegations, Claim Four is legally insufficient and should be dismissed.

The malicious prosecution claim (Claim Five) is also deficient as a matter of law.  An action for malicious prosecution may not be predicated upon the initiation of a <u>civil</u> proceeding, like the one alleged here.  *Pace* v. *Montalvo*, 186 F. Supp. 2d 90, 99 (D. Conn. 2001); *McHale* v. *W.B.S. Corp*., 187 Conn. 444, 447 (1982).  A juvenile matter such as the one involving the Plaintiffs is a civil proceeding.  *In re Nicholas R*., 92 Conn. App. 316, 321 (2005).  Plaintiffs have not pled that anyone from DCF (and specifically

21

Katz, Minerly or Rotovnik) initiated a criminal – or any legal proceeding -- against them, other than the civil proceeding alleged.  Claim Five must be dismissed.

The Plaintiffs' new claim for intentional infliction of emotional distress in Claim Eight of their Amended Complaint fails to plead sufficient facts to establish the elements of that claim.  Although state employees do not have statutory immunity for wanton, reckless or malicious actions, or for actions not performed within the scope of their employment, to prevail on an intentional infliction of emotional distress claim, the plaintiff must prove that the conduct in question was "extreme or outrageous" such that it is "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Gillians* v. *Vivanco-Small*, 128 Conn. App. 207, 211-212 (2011).  None of the non-conclusory facts pled come close to the level of egregious conduct necessary to establish the tort of intentional infliction of emotional distress. *Id.*  In addition, the complaint does not contain any well pleaded allegations that the named state defendants engaged in wanton, reckless or malicious conduct to overcome statutory immunity under Conn. Gen. Stat. § 4-165.  *See Martin* v. *Brady*, 261 Conn. 372, 380 (2002).  As a result, that claim is fatally deficient and should be dismissed.

> ### E.    ALTERNATIVELY, THE COURT SHOULD DECLINE TO EXERCISE ITS SUPPLEMENT JURISDICTION OVER THE STATE LAW CLAIMS

If the Court disagrees that the state law claims should be dismissed with prejudice as barred by statutory immunity and insufficient to establish a cause of action, then it should decline to exercise its supplemental jurisdiction over them.  When the federal claims have been eliminated from a lawsuit, especially in its early stages, factors such as judicial economy, convenience, fairness, and comity weigh against deciding the

state law claims and "the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.  *Id.* at 726-727."  *Carnegie-Mellon,* 484 U.S. at 350; *see also Bey v. City of New York,* 999 F.3d 157, 171 n. 11 (2d Cir. 2021) ("Because there are no federal claims remaining," upholding dismissal of state law claims is proper); *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 158 n. 6 (2d Cir. 2017) ("Of course, a district court may decline to exercise supplemental jurisdiction over state and local law claims if it has dismissed all claims over which it has original jurisdiction.")

The DCF Defendants have established here that the Court lacks subject matter jurisdiction over all of the federal claims against them in their official capacity;[6] and that Plaintiffs have failed to state any cause of action against them in their individual capacities.  Moreover, at this early stage in the proceedings, there has been no "substantial expenditure in time, effort, and money in preparing the dependent [state] claims" on the part of the Plaintiffs and no identifiable federal interest in retaining supplemental jurisdiction over state law claims.  *Yany's Garden Llc v. City of New York,* 20-3419, 2022 U.S. App. LEXIS 2842, *7, 20-3419, (2d Cir., Feb. 1, 2022); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006).  Thus, if the Court dismisses the Plaintiffs' federal claims, but finds the state law claims should not be decided on their merits at this juncture, the DCF Defendants respectfully request that the Court decline jurisdiction over the Plaintiffs' pendent state law claims as they are

---

[6] See Motion to Dismiss and Memorandum in Support also filed on behalf of all the State Defendants in their official capacities under the Eleventh Amendment (Entry 26).

23

best left to the courts of the State of Connecticut.  *See Steinbergin v. City of New York*, No. 21-536, 2022 U.S. App. LEXIS 11369, *10, (2d Cir., April 27, 2022).

## V.    CONCLUSION

Based upon the foregoing, DCF Defendants request that the court dismiss all claims against them.

DEFENDANTS

JOETTE KATZ, FORMER COMMISSIONER OF THE DEPARTMENT OF CHILDREN AND FAMILIES

KAELA MINERLY, SOCIAL WORKER, DEPARTMENT OF CHILDREN AND FAMILIES

FRANK ROTOVNIK, SOCIAL WORKER, DEPARTMENT OF CHILDREN AND FAMILIES

WILLIAM TONG
ATTORNEY GENERAL

BY:    /s/*Carolyn Signorelli*
Carolyn Signorelli
Assistant Attorney General
Federal Bar No. ct 17534
165 Capitol Avenue
Hartford, CT  06106
Tel: (860) 808-5160
Fax: (860) 808-5084
Email: Carolyn.Signorelli@ct.gov

## CERTIFICATION

I hereby certify that on  June 6, 2023, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

BY:     */s/Carolyn Signorelli*
        Carolyn Signorelli
        Assistant Attorney General
        Federal Bar No. ct 17534
        165 Capitol Avenue
        Hartford, CT  06106
        Tel: (860) 808-5160
        Fax: (860) 808-5084
        Email: Carolyn.Signorelli@ct.gov