**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| PILEGGI ET AL., | ) | Civil Action No. 3:22-CV-01315 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KIM MATHIAS, ET AL. | ) | |
| | ) | |
| Defendants | ) | July 11, 2023 |

**REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
ACTION AGAINST FORMER COMMISSIONER JOETTE KATZ,
SOCIAL WORKER KAELA MINERLY AND SOCIAL WORKER FRANK ROTOVNIK**

The Plaintiffs in their response to the DCF Defendants' motion to dismiss attempt to overcome the legal arguments on plausibility, qualified immunity and statutory immunity by reasserting their conclusory allegations and insisting they are sufficient. Nonetheless, the Plaintiffs fail to address the legal standards required to state plausible claims of constitutional violations and intentional conduct set forth in the DCF Defendants' memorandum in support of their motion to dismiss. The Plaintiffs ignore the facts contained in the pleadings that establish due process was provided, the reasonableness of the DCF Defendants' reliance on medical experts to assess EP's need for protection and the resulting entitlement to qualified immunity and statutory immunity.

1. **The Plaintiffs' claims under Section 1983 are barred because their right to procedural due process was not violated and the state court orders cannot be challenged under the Rooker-Feldman doctrine.**

A.      <u>The Court should abstain from considering the plaintiffs' Section 1983 claims under the Rooker-Feldman doctrine.</u>

The Plaintiffs insist in their response that they have stated a plausible claim under Section 1983 because "they were never notified of any proceeding effecting E.P.'s medical care or custody and thus had no opportunity to defend themselves." (Amended Complaint, hereinafter, "Doc. 47," ¶ 44)" (Plaintiff's Response, hereinafter "Doc. 57", p. 7). However, the juvenile court record establishes that the Plaintiffs were provided  with both notice and an opportunity to be heard, but the Plaintiffs agreed to the juvenile court adjudicating the neglect petition on the pleadings filed by DCF. (Defendants' Exhibit in Support of Motion to Dismiss by Kim Mathias, hereinafter "Doc. 27-2," pp. 30-31).  *Dayton v. City of Middletown*, 786 F. Supp. 2d 809, 812 (S.D.N.Y. 2011) (Plaintiffs had each appeared with counsel and "voluntarily, intelligently and knowingly consented to the entry of an order of fact-finding," and issuing the findings of neglect and orders of supervision and protection.")  This Court, thus, lacks subject matter jurisdiction over this Section 1983 action under the Rooker-Feldman abstention doctrine precluding review of the state trial court orders.  F. R. Civ. Pro. 12(b)(1); *see District of Columbia Court of Appeals* v. *Feldman*, 460 U.S. 462 (1983); *Rooker* v. *Fidelity Trust Co.*, 263 U.S. 413 (1923).

"The doctrine applies if four requirements are met: 1) the plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by the state court judgment; (3) the plaintiff must ask the district court to review and reject that judgment; and (4) the state court judgment must have been rendered before the district court

2

proceedings commenced." *Watley* v. *Department of Children and Families*, Case No. 3:13-cv-1858 (RNC), 2019 U.S. Dist. LEXIS 219851, *19 (D. Conn. December 23, 2019), *Aff'd*, 991 F. 3d 418 (2nd Cir. 2021) (citing *Green* v. *Mattingly*, 585 F.3d 97, 101 (2nd Cir. 2009) and *Hoblock* v. *Albany Cty. Bd. Of Elections*, 422 F.3d 77, 85  (2nd Cir. 2005)).  "*Rooker-Feldman* applies broadly to any suit that, in effect, seeks review of or damages based on a state court judgment….[I]t precludes an award of damages stemming from an injury sustained as a result of a state court determination." *Watley,* 2019 U.S. Dist. LEXIS 219851 at *19; *see Mr. S.* v. *Webb*, 602 F. Supp. 2d 374, 383 (D. Conn. 2009) (Thompson J.) (Rooker-Feldman doctrine barred attack on state court judgment in child protection case where plaintiff failed to appeal state court judgment). Plaintiffs also cannot escape the Rooker-Feldman doctrine through "clever pleading" by alleging that individual defendants who assumed custody of a child pursuant to a court order are responsible "rather than by the judgment authorizing them to take the child." *Hoblock* at 88.  Also, claims alleging that defendants obtained the order of temporary custody under false pretenses are barred by the Rooker-Feldman doctrine. (Doc. 57,  p. 17). *Inkel v. Conn. Dep't of Children & Families*, 421 F. Supp. 2d 513, 522 (D. Conn. 2006)

Here, the four requirements of the Rooker-Feldman doctrine are met.  First, Plaintiffs "lost" at the state court level. *Dayton v. City of Middletown*, 786 F. Supp. 2d at 813, 816 (Where plaintiffs consented to findings of neglect and protective orders, they "lost in state court … when the Family Court entered its finding of neglect, and … the finalized order of protection … ."); *Inkel v. Conn. Dep't of Children & Families*, 421 F. Supp. 2d at 522-523 ("[P]laintiffs cannot show that any of the juvenile court proceedings

terminated in their favor … [the children] were returned to their parents in May 2005, this decision was made on the basis of changed circumstances in the family home, and it did not imply reversal of the initial determination that temporary D.C.F. custody was warranted.").

Second, the Plaintiffs' complaints of constitutional violations are inextricably intertwined with the state court judgment. *Id.* at 522. The state here sought and obtained a court order before removing the children from the parents' care. (Doc. 47, ¶'s 37, 46; Doc. 27-2, p. 2). As a result, the violations complained of - family separation, parental loss of physical custody and guardianship over E.P., and limitations on parental decision-making with regards to the children's placement and care, all stem from the court's orders. *Dayton*, 786 F. Supp. 2d at 830 ("Defendants' motions to dismiss claims arising from the Family Court finding of neglect and order of protection under Rooker-Feldman are granted").

Third, in order for the Court to find a Constitutional violation it would need to find that the state court orders were erroneous. The "[p]laintiffs' remedy for an incorrect or unfair juvenile court decision is to appeal that decision to higher state courts, not to seek federal court intervention by way of a civil rights action." *Inkel*, 421 F. Supp. 2d at 522. Plaintiffs here not only failed to appeal the orders they now disagree with, including the OTC, which was immediately appealable,[1] they agreed to those very orders. (Doc. 27-2, pp. 2-7) The Plaintiffs cannot now ask this court to find those orders and their

---

[1] *In re Shamika F.*, 256 Conn. 383, 405 (2001) ("[I]n order to protect the parent's interest in retaining custody of the child, an order of temporary custody is a final judgment for purposes of appeal").

consequences violated the Constitution and award money damages for claimed harms which they had an opportunity to challenge in state court.

Finally, because the judgments were entered in 2019 and this suit was not brought until 2022, the plaintiffs are precluded from attacking the state court's orders in this lawsuit.  This Court should abstain from considering Plaintiffs' Section 1983 substantive and procedural due process complaints.

> B.   <u>The Plaintiffs' right to procedural due process was not violated because they were provided with notice and an opportunity to be heard when they appeared at the preliminary order of temporary custody hearing and at a pre-trial on the neglect petition and chose on both occasions not to exercise their right to a contested trial.</u>

The Plaintiffs in their response insist that the state court orders violate their rights because they did not have notice or an opportunity to be heard. (Doc. 57, p. 7). However, the court is not required to accept this conclusory allegation as true in the face of undisputed documentation to the contrary. (Doc. 47, ¶'s 45-46; Doc. 27-2, pp. 2 – 7); *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) ("[A] court may consider documents attached to the complaint as exhibits, or incorporated by reference, as well as any documents that are integral to, or explicitly referenced in, the pleading …  If a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss);" *see also Peterson v. Wells Fargo Bank, N.A.* (In re Peterson), 585 B.R. 1, 9 (Bankr. D. Conn. 2018) (quoting *Harris* v. *Mills*, 572 F.3d 66 at 71-27 (2d Cir. 2009) ("While the court must accept the facts asserted in the complaint as true, the court's review of the complaint is not conducted in a vacuum; this is a "context-specific task that require[s] [the] court to draw on its judicial experience and common sense" in evaluating whether the allegations are plausible").

The complaint and the certified records of the juvenile court proceedings demonstrate that DCF requested and the Superior Court for Juvenile Mattes, Turner, J., granted an emergency ex parte court order for E.P.'s custody on March 28, 2019, as permitted under Conn. Gen. Stat. § 46b-129.  (Doc. 27-2, p. 2).  The court ordered the parents to appear at a hearing to be held April 5, 2019.[2]  (Id.).[3]  The parents and their attorneys were present at that hearing, at which time the court found service and sustained the OTC after a thorough canvass of the parties.  (Id., pp. 2 – 7).

On September 19, 2019, the Plaintiffs had another opportunity to exercise their right to a trial and contest the neglect petition, but instead agreed to an adjudication of neglect based upon the pleadings, to an order of commitment of E.P., and to protective supervision over the other children with their father.[4]  (Id., pp. 20-32, 39-46).  On October 9, 2019, the court revoked the commitment of E.P. and placed her with the father under protective supervision by agreement of all parties.  (Id., pp.  47-49). Both parents retained joint legal custody. (Id.)  The orders were permitted to expire on March 19, 2020, ending the juvenile court case.[5]  (Id., pp. 50-53).

---

[2] The Memorandum in Support of the Motion to Dismiss contains a typographical error referring to a hearing date of May 5, 2019.  (Doc. 55, p. 4).  The date, per the certified court record, was April 5, 2019.  (Doc. 27-2, pp. 4, 18).

[3] Defendants request that this Court judicially notice the juvenile court orders and transcripts for the purposes of the due process and Rooker-Feldman analysis.  (Doc. 27-2).  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Samuels* v. *Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993) (in a motion to dismiss the court may "consider matters of which judicial notice may be taken").

[4] *See* Conn. Gen. Stat. § 17a-93 (9) (defining protective supervision).

[5] On p. 10 of their response, the Plaintiffs characterize an administrative decision regarding emotional neglect issued on March 25, 2020 as a favorable determination of the allegations, stating, "These allegations were false and terminated in the PLAINTIFFS' favor on or March 25, 2020" is misleading.  In fact, the administrative decision did not have any impact on the juvenile court orders precipitated by the

The Plaintiffs in their response do not contest the authenticity of the state court documents or dispute what occurred in juvenile court – where they waived their opportunity to exercise their right to challenge the state's allegations and the court's orders to vindicate their right to family integrity and parental decision-making.

> The Supreme Court has consistently held that constitutional rights may be waived under certain circumstances.")(collecting cases). Moreover, "[i]n the context of a seizure of a child by the State during an abuse investigation . . . , a court order is the equivalent of a warrant." *Tenenbaum,* 193 F.3d at 602. Further, to the extent a child is removed from his or her parents' custody pursuant to a family court order, there is no claim for interference with rights to familial association. See *Southerland v. City of N.Y.*, 680 F.3d 127, 153 (2d Cir. 2012) (holding there is no § 1983 liability where family court approves removal of children).

*Estate of Keenan v. Hoffman-Rosenfeld*, Case No. 16-cv-0149 (SFJ)(AYS) 2019 U.S. Dist. LEXIS 126330, *26-27, (E.D.N.Y July 29, 2019) *aff'd,* 833 Fed. Appx. 489 (2d Cir. 2020).

As a result the court should dismiss Plaintiffs' Section 1983 claims against all Defendants as their procedural due process rights were not infringed.

**2.    The Allegations in the Complaint, Absent Plaintiffs' Hyperbole and Characterizations, do not Support a Plausible Claim of a Substantive Due Process Violation.**

Although Plaintiffs claim that the allegations in the complaint establish a denial of substantive due process rights because the facts here are more egregious than the facts of *Tenenbaum* (Doc. 57 pp. 7), they ignore that DCF obtained a court order before taking custody of E.P., in keeping with the rule of *Tenenbaum v. Williams*, 193 F.3d 581, 596 (2d Cir. 1999). ("[W]e now hold that it is unconstitutional for state officials to effect a child's removal on an "emergency" basis where there is reasonable time safely to obtain

medical neglect of E.P., whereby the Plaintiffs agreed to the continued OTC, commitment of E.P. and protective supervision of her siblings with the father.

7

judicial authorization.") Doc. 47, ¶'s 45-46; Doc. 27-2, pp. 2 - 7).  Once there is "'court confirmation of the basis for removal' … any liability for the continuation of the allegedly wrongful separation of parent and child can no longer be attributed to the officer who removed the child."  *Southerland v. City of New York*, 680 F.3d 127, 153 (2d Cir. 2011), citing *E.D. ex rel. V.D. v. Tuffarelli*, 692 F. Supp. 2d 347, 354, 368 (S.D.N.Y. 2010) (applying brief-removal doctrine, and granting summary judgment in favor of defendants, where family court confirmed the basis for ACS's temporary removal of children three days after removal occurred), *aff'd*, 408 F. App'x 448 (2d Cir. 2011).

The Plaintiffs seek to ascribe alleged behavior of medical experts, Florida police, and unknown DCF employees to the individual DCF Defendants to overcome the lack of facts to support Section 1983's required element of personal involvement, as well as the level of egregious conduct necessary to claim a substantive due process violation. (Doc. 57, pp. 10 and 14).  The Plaintiffs argue that the "specific allegations against Rotovnik and Minerly in paragraphs 56, 57, 67, 68, 70-72" render their complaint plausible (Doc. 57, p. 10), but do not explain how their allegations establish the level of egregiousness required to establish a substantive due process violation or overcome qualified and statutory immunity.  They also do not explain how defendant Rotovnik requiring plaintiffs "to provide a lease as proof of their separation" is a clear violation of their rights when they agreed to the juvenile court order that the children be placed with father only; or why decisions were "baseless" and allegations of neglect "false," given the admitted reports made by numerous medical professionals and the Plaintiffs' agreement to the finding of neglect in juvenile court.  They also fail to point to evidence

to support their assertion of a conspiracy to satisfy the elements of that charge[6]; or that court orders were violated by any of the named defendants.

The Plaintiffs also engage in an unavailing analysis of the meaning of negligence, gross negligence and recklessness under New York law, and allege that DCF,[7] Minerly and Rotovnik committed multiple acts of negligence (Doc. 57, pp. 8, 10-12); although allegations of negligence are insufficient to support their Constitutional claims (Defendants' Memorandum in Support of Motion to Dismiss, hereinafter "Doc. 55-1," p. 10).

Plaintiffs posit that their allegations against "DCF" generally and employees identified as "Doe," as well as their allegation that ""Defendants Minerly and Rotovnik were the DCF agents responsible for the case" somehow obviate the requirement under Section 1983 that plaintiffs must allege facts against named defendants to support their personal involvement and egregious behavior. (Doc. 57, p. 8). That position is mistaken. "Although it is proper for a section 1983 plaintiff to use a 'Doe' pleading until such time as her identity can be learned through discovery . . . a plaintiff still must establish each Doe defendant's personal involvement in the alleged constitutional deprivation." *Torres v. Conn., Inc.*, No. 3:22CV00883(SALM), 2023 U.S. Dist. LEXIS

---

[6] On a claim of conspiracy under Section 1983, a plaintiff must allege "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Traylor v. Parker*, Civil No. 3:13cv01828 (AWT), 2015 U.S. Dist. LEXIS 34203, *12 (D. Conn. March 19, 2015). The complaint is devoid of any factual allegations to support the existence of an agreement between the DCF Defendants and/or the medical providers intended to inflict constitutional injury.

[7] Although the complaint is not the model of clarity as required by Rule 8(a)(2), to the extent the Plaintiffs' attempt to bring this action against "DCF" and any employees in their official capacity, that is addressed in the Defendants' memorandum in support of their motion to dismiss the official capacity claims. Docs. 26-1 and 50.

41462, at *7 (D. Conn. Mar. 13, 2023) (citations omitted; internal quotation marks omitted); *see generally Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed. 2d. 868 (2009) ("Because vicarious liability is inapplicable in . . . 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

It is impermissible to attribute the actions of those unknown defendants to the named individual defendants by referencing DCF or Jane and John Doe. *Tracey v. City of Geneva*, No. 6:17-cv-06567-MAT, 2018 U.S. Dist. LEXIS 49977, at *9-10 (W.D.N.Y. Mar. 26, 2018) ("[Lumping] . . . individuals together" and "[asserting] . . . claims against them as a group, is "precisely the type of . . . pleading that the Second Circuit . . . [has] held fails to comport with the requirements of Rule 8;" ); *Inkel,* 421 F. Supp. 2d at 517-18 ("[C]laims involving law enforcement officers who participated in searches of the Inkels' home will be dismissed. The allegations against individual D.C.F. workers, state court employees, marshalls (sic), judges, and attorneys who are not named as defendants also must be dismissed"); *Berry v. Montilla*, Civil No. 3:16-cv-530 (AWT), 2018 U.S. Dist. LEXIS 238380, *12 (D. Conn. March 28, 2018) ("Complaint does not allege facts establishing that either of these two individuals were connected to the other named defendants in such a way that it would be proper to impute the alleged conduct of Jane Doe and John Doe to any of the other defendants.").

Here, Plaintiff's allegations do not support a deprivation of substantive due process, as DCF obtained a court order pre-removal and had a reasonable basis for seeking that order.  (Doc. 27-2, p. 2; Doc. 47, ¶'s 46, Ex. E).  Moreover, the conduct of the named DCF Defendants described via the few non-conclusory factual allegations

10

uncovered in the complaint does not rise to the level of egregiousness necessary to establish a substantive due process deprivation.  As a result, the Court should dismiss the claim of a substantive due process violation for failure to establish a plausible claim.

**4.    The Complaint does not Plausibly State any Cause of Action against Former Commissioner Katz because there are Insufficient Allegations to Establish her Personal Involvement in any Claimed Constitutional Infringement.**

The Plaintiffs also use the "group" or unidentified actor pleading technique in an attempt to revive a cause of action against former Commissioner Joette Katz, despite the concession in their response to the initial motion to dismiss filed on Joette Katz's behalf "that the law indicates that Commissioner Joette Katz is not liable for the claims against DCF or their agents, defendants Minerly and Rotovnik; and that she should be dismissed from this action."  (Doc. 45, p. 1) In addition, although, as noted in the defendants' motion to dismiss, Commissioner Katz had left her position as commissioner before the state juvenile case was filed, Plaintiffs now state that "Commissioner Katz failed at appropriately implementing the policies ordered by the court in the consent  decree."  (Doc. 57, p. 15).They maintain that defendants' argument that the counts against her should be dismissed because she is no longer the Commissioner is "not persuasive nor is it based in law." (Id.)   But the Plaintiffs do not dispute that Joette Katz was no longer Commissioner at the time the OTC was sought, nor do they cite to any "law" that holds Joette Katz personally liable under Section 1983 for constitutional violations that occurred after her tenure.

The Plaintiffs also insist that the DCF Defendants' motion to dismiss did not address "the allegations that Katz and DCF unlawfully vaccinated all of the Pileggi's children (not just E.P.) without their consent" and ignored the consent decree as it

11

related to placement of E.P. with proposed relatives.  (Doc. 57, pp. 13, 16).  This is simply incorrect.  In relation to the allegation, that "DCF also vaccinated the PLAINTIFFS' other children against their wishes" (Doc. 47, ¶ 118), the DCF Defendants' correctly pointed out, consistent with the requirement of personal involvement, that "[t]hese general references to the state agency, which has thousands of employees and numerous employees involved in each case, do not suffice to state a claim of egregious conduct against the two individually named social workers."  (Doc. 55-1, p. 9).

Plaintiffs' reliance on the *Doe v. New York City Dept. of Social Services*, 709 F.2d 782, 791 (2d Cir. 1983), for the proposition that DCF and Joette Katz can be held liable for deliberate indifference under Section 1983 for the children allegedly being vaccinated by "DCF" and for a decision by "DCF" to not to place E.P. in a placement proposed by the parents is misplaced.  (Doc. 57, p. 13).  *Doe* was against a city agency and, therefore, did not involve the bar of the Eleventh Amendment and sovereign immunity which applies to the state, DCF and Joette Katz in her official capacity.  (See DCF Defendants' Memorandum in Support of Motion to Dismiss Official Capacity Claims at Docs. 26-1 and 50).  *Doe's* reasoning also does not eliminate the requirement that Joette Katz as an individual be personally involved in any alleged deprivation.  As the Second Circuit has made clear, "[b]ecause Section 1983 imposes liability only upon those who actually cause a deprivation of rights, 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §

12

1983." *Williams v. Ragaglia*, 3:01 CV 1398 (JGM), 2008 U.S. Dist. LEXIS 133696, *23 (D. Conn. February 20, 2008).[8]

The amended complaint persists in its absence of factual allegations that Joette Katz was personally involved in the alleged vaccination of E.P. and her siblings. A claim that "DCF" vaccinated the children is insufficient to establish liability of Joette Katz. *Tracey v. City of Geneva*, 2018 U.S. Dist. LEXIS 49977, at *9-10. The allegation that, "Plaintiff suggested multiple appropriate placements for E.P. with family members and friends who volunteered to care for her. DCF rejected them all, and E.P. was placed with strangers" (Doc. 47, ¶ 54), is also insufficient because it does not support a finding that Joette Katz was personally involved in the placement decision involving E.P. *Id.*

To the extent, the Court can discern a claim of supervisory liability against former Commissioner Katz under Section 1983, the complaint is still insufficient. "The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the

---

[8]The Preliminary Statement of the Amended Complaint references the Equal Protection Clause; however, the only allegation seemingly in support of such a claim is based upon the placement issue and the Consent Decree: "The fact is, if DCF thought that EP was not safe at home, their policy according to the decree is 'when children cannot safely remain in their homes they should live with relatives or someone they know.' (*Id*.). They failed to abide by their own policies and treated the PLAINTIFFS differently because they could." (Doc. 47, ¶ 68). Plaintiffs allege no facts in the complaint that even identify the alleged discriminatory basis for the claim of different treatment, let alone conduct establishing intentional discrimination. As such, any discernible equal protection claim must be dismissed as implausible. *Zandhri v. Dortenzio*, 228 F. Supp. 2d 167, 180 (D. Conn. 2002) ("It is well established that a claimant under the Fourteenth Amendment's Equal Protection Clause … must establish intentional discrimination.").

defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [foster children and their parents] by failing to act on information indicating that unconstitutional acts were occurring." *Berry v. Montilla,* 2018 U.S. Dist. LEXIS 238380, *31-32.[9]

The tortured reliance on the *Juan F.* Consent Decree[10] in the complaint and response to establish supervisory liability is futile, as the court ordered in that case:

> In many respects, this Consent Decree embodies a compromise of the issues involved in this case and, while its provisions are binding on the parties herein, its provisions are not to be construed to be statements, rulings, or precedents with respect to the constitutional and other legal rights of persons who are parties or nonparties to this litigation in this or any other action.  Moreover, the provisions of this Consent Decree are not to be construed as statements, rulings, or precedents with respect to the constitutional or other legal rights of any person or persons involved in any action pertaining to the Department of Children and Youth Services.

Exhibit A, attached hereto, Excerpt *Juan F.* Consent Decree, p.6.  Additionally, Plaintiffs' citation to the Joint Motion to Terminate Jurisdiction and Close Case filed in *Juan F.* to support the claims against Joette Katz is insufficient because the joint motion does not establish supervisory failures on her part. (Doc. 47, pp. 70-114).  In fact, the court found that "DCF complied fully with  both the terms and intent of the court-ordered obligations set forth in a 2017 Revised Exit Plan (Doc. No. 778) and related orders; and …

---

[10]The Juan F. Consent Decree was an agreed upon resolution and order entered in the class action suit *Juan F. by and through his next friends Brian Lynch, M.S.W, and Isabel Romero, on behalf of themselves and all others similarly situated, et al. v. William O'Neill, et al*., Civil Action No. H-89-859 (AHN) an excerpt of which is attached hereto as Exhibit A.

conclude[d] that this Court's continued oversight of DCF is no longer necessary." Exhibit B, attached hereto, Order dated March 24, 2022.

The complaint not only lacks sufficient allegations of personal involvement on the part of Joette Katz in the alleged vaccination of the Plaintiffs' children, the citation to *In re Elianah T.-T*. for the proposition that vaccinating the children was illegal or unconstitutional is also unavailing. The Connecticut Supreme Court expressly avoided finding a constitutional violation in that case. *In re Elianah T.-T,* 326 Conn. 614, 617 (2017) ("Because we resolve this appeal on statutory grounds, we do not address [the Constitutional] claims").  Given precedent regarding the constitutionality of vaccine mandates, Plaintiff has failed to make sufficient allegations to set forth a violation of a clearly established constitutional right.  *See Phillips v. City of New York*, 775 F.3d 538, 542 (2d Cir. 2015) (citing *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 38 (1905) ("The Court rejected the claim that the individual liberty guaranteed by the Constitution overcame the State's judgment that mandatory vaccination was in the interest of the population as a whole.").

The allegation regarding DCF declining to place E.P. where the Plaintiffs' suggested, also do not support the deprivation of a clearly established constitutional right.  Once a child is placed in foster care, DCF is required to assess potential relative placements, but must ultimately place children in licensed or licensable homes. *See* Conn. Gen. Stat. §§ 17a-129(b), 17a-114(b).  A constitutional right in parents to choose their child's placement once the state is granted custody and/or guardianship by the court has not been recognized.  Absent recognition of such a right by the United States Supreme Court or the Second Circuit, the "right is not clearly established and the

15

defendants are shielded from liability for civil damages by the doctrine of qualified immunity." *Berry v. Montilla* 2018 U.S. Dist. LEXIS 238380, *39-40.

Because there are no allegations in the complaint that support a plausible claim of liability for any constitutional violations by Joette Katz, all claims against her should be dismissed.

**5.    The DCF Defendants are Entitled to Dismissal on the Ground of Qualified Immunity because No Reasonable Jury could Find that the DCF Defendants did not Reasonably Rely on the Numerous Reports of Medical Providers when they Sought an OTC and filed Neglect Petitions on behalf of the Plaintiffs' Children.**

The Plaintiffs assert that the DCF defendants cannot prevail on the ground of qualified immunity.  Citing  *Kendrick v. Town of Winchester,* 11 F. Supp. 2d 212, 216 (D. Conn. 1998), they argue, "[t]he defendant must show that the facts alleged in the complaint are such that "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right."  (Doc. 57, p. 19).  However, the DCF Defendants did make this showing in the memorandum in support of their motion to dismiss. (Doc. 55-1, pp. 3-4, 7-10, 15-18). The Plaintiffs' response does not address the case law regarding the limitations on their right to family integrity in the child protection context or the reasonableness of the DCF Defendants' reliance on those medical providers' opinions that E.P.'s condition required intervention.

Although Plaintiffs characterize the reports of medical neglect by E.P.'s medical providers as false and incorrect, they admit the existence of those reports and their contents are set forth by the documentation filed by the Plaintiffs with the complaint. (Doc. 47, ¶'s 23, 32-34, Ex. E: pp.121-22, 125, 132, 138, 148, 151, 154, 157,  159-160,

172).  Thus, even viewing the complaint most favorable to the Plaintiffs and only considering all the reports to DCF for the fact they were made, the allegations in the pleadings, documents attached and matters judicially noticed disclose that the DCF Defendants' conduct was reasonable in light of the information they received.  *Traylor v. Parker*, 2015 U.S. Dist. LEXIS 34203, *8-9 (2015) (citing *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993)).  Thus, dismissal on the basis of qualified immunity should be granted. *See Mitchell* v. *Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").

**CONCLUSION**

Based upon the foregoing grounds and those asserted in the DCF Defendants Memorandum in Support of the Motion to Dismiss (Doc. 55-1), the Court should dismiss all counts in the Complaint against DCF, Joette Katz, Frank Rotovnik, Kaela Minerly and Kim Mathias, as there are insufficient allegations to support plausible claims of constitutional violations and the defendants are all entitled to qualified immunity on the federal claims and statutory immunity on the state law claims.

DEFENDANTS

JOETTE KATZ
KAELA MINERLY
FRANK ROTOVNIK

17

WILLIAM TONG
ATTORNEY GENERAL

BY:    /s/*Carolyn Signorelli*

_____

Carolyn Signorelli
Assistant Attorney General
Federal Bar No. ct 17534
165 Capitol Avenue
Hartford, CT  06106
Tel: (860) 808-5160
Fax: (860) 808-5084
Email: Carolyn.Signorelli@ct.gov

## CERTIFICATION

I hereby certify that on July 11, 2023, a copy of the foregoing *Reply to Plaintiff's Response to Defendants' Motion to Dismiss* was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

DEFENDANTS

JOETTE KATZ
KAELA MINERLY
FRANK ROTOVNIK

WILLIAM TONG
ATTORNEY GENERAL

BY:    */s/Carolyn Signorelli*
Carolyn Signorelli
Assistant Attorney General
Federal Bar No. ct 17534
165 Capitol Avenue
Hartford, CT  06106
Tel: (860) 808-5160
Fax: (860) 808-5084
Email: Carolyn.Signorelli@ct.gov

# Ex. A

# CONSENT DECREE

Connecticut Department of Children and Youth Services

United States District Court
District of Connecticut
January 7, 1991

# Section    II.    General Provisions

## II.   GENERAL PROVISIONS

(1)   The provisions of this Consent Decree resolve the existing disputes and issues in the case of JUAN F., by and through his next friends Brian Lynch, M.S.W., and Isabel Romero, on behalf of themselves and all others similarly situated, et al. v. William O'Neill, et al., Civil Action No. H-89-859 (AHN).

(2)   This Consent Decree satisfies and resolves the claims of the plaintiffs and plaintiffs' class in the above-entitled case as of the date of this Consent Decree.

(3)   The provisions of this Consent Decree are the result of lengthy discussions and negotiations among the members of the DCYS Mediation Panel.  They have been agreed upon solely as a means to put a reasonable end to this complex case and to avoid the costs, time, and risks that would be involved for the parties to litigate the case in full.  In many respects, this Consent Decree embodies a compromise of the issues involved in this case and, while its provisions are binding on the parties herein, its provisions are not to be construed to be statements, rulings, or precedents with respect to the constitutional and other legal rights of persons who are parties or nonparties to this litigation in this or any other action.  Moreover, the provisions of this Consent Decree are not to be construed as statements, rulings, or precedents with respect to the constitutional or

6

other legal rights of any person or persons involved in any action pertaining to the Department of Children and Youth Services.

(4)    All provisions of this Consent Decree shall be deemed final and binding upon the parties except that the implementation of and compliance with those provisions, and all time specifications contained therein, shall be determined from time to time by the unanimous decision of the members of the DCYS Monitoring Panel.    Detail, definition, implementation, and compliance mandates shall be set forth in writing and distributed by way of Manuals or similar memoranda.

(5)    The DCYS Monitoring Panel's Manuals, memoranda, and any other document issued under its direction, shall be deemed final and binding upon the parties, and not subject to appeal.

(6)    The DCYS Monitoring Panel by unanimous decision may amend, alter, or change the contents of its Manuals, memoranda, or other documents issued under its direction.    The amendments, alterations, or changes shall be deemed final and binding upon the parties and not subject to appeal.

(7)    All disputes and issues concerning any aspect of the provisions of this Consent Decree or the DCYS Monitoring Panel's Manuals, memoranda, or other documents issued under its direction, shall be resolved by the unanimous decision of the DCYS Monitoring Panel.    The DCYS Monitoring Panel's determinations shall be deemed final and binding upon the parties, and not subject to appeal.

7

(8)   If any issue, matter, or dispute is not resolved by the unanimous decision of the DCYS Monitoring Panel, any one of the members of the DCYS Monitoring Panel, or any party or counsel, may refer that issue, matter, or dispute to the Trial Judge for resolution pursuant to proceedings the Trial Judge deems appropriate.  At any such proceeding, any one of the DCYS Monitoring Panel may be called as a witness by a party, counsel, or the Trial Judge.

(9)   The provisions of this Consent Decree satisfy and resolve the disputes and claims of the parties and the plaintiff class members in the above-entitled action, and shall apply to and be binding upon their employees, heirs, successors-in-interest and assigns.  It does not resolve any claims or disputes said persons might have for monetary relief in pending or future litigation.

(10)   This Consent Decree satisfies and resolves the claims of plaintiffs and plaintiff class members under the various federal statutes and constitutional provisions pleaded in the Complaint, but resolves no claims which plaintiffs and plaintiff class members might have under other federal statutes and constitutional provisions, including (but not limited to) claims under the Education for Handicapped Children Act and claims relating to conditions of confinement within any of the Department's operated institutions and facilities.

(11)   Nothing contained in this Consent Decree shall be interpreted so as to reduce the requirements and obligations imposed on the Department by the terms of prior judicial rulings, decrees, and consent judgments in other actions.

8

(13)   This case shall be certified as a class action and the class certified shall be defined as:

(a)   All children who are now, or will be, in the care, custody, or supervision of the Commissioner of the Department of Children and Youth Services as a result of being abused, neglected or abandoned or being found at risk of such maltreatment; and

(b)   All children about whom the Department knows, or should know by virtue of a report to the Department, who are now, or will be, abused, neglected or abandoned, or who are now, or will be, at serious risk of such maltreatment.

(13)   Notice to plaintiff class members of this Consent Decree shall issue pursuant to the December 13, 1990 Order Directing Notice of Proposed Settlement.

(14)   Plaintiffs shall file their motion for costs and attorneys' fees within thirty days of judicial approval of this Consent Decree.  Any disputes regarding this motion shall be submitted in the first instance to the Settlement Judge for resolution.  If informal resolution is not possible, the matter shall thereafter be referred to the Trial Judge for an appropriate hearing.  Defendants shall pay plaintiffs their costs and attorneys' fees within sixty days of the entry of a judicial Order directing payment.

(15)   This Court has subject matter and personal jurisdiction over this action and therefore the authority to enter this Consent Decree.

(16)   This Court shall have continuing jurisdiction of this action to ensure compliance with this Consent Decree.

8a

# Ex. B

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

JUAN F., et al.,

    Plaintiffs,

v.

           Case No. 89-CV-859-SRU

LAMONT, et al.,

    Defendants.

## <u>ORDER</u>

**WHEREAS**, the parties have jointly moved to terminate the Court's jurisdiction and close this case;

**WHEREAS**, the Court finds that over the last 32 years, the Connecticut Department of Children and Families ("DCF") has made organizational and operational changes that have dramatically improved the way the agency provides services to children and families in Connecticut, changes which positively impact children and families involved with DCF;

**WHEREAS**, the changes have been designed to ensure that these improvements will be sustained;

**WHEREAS**, DCF has complied fully with the both the terms and intent of the court-ordered obligations set forth in a 2017 Revised Exit Plan (Doc. No. 778) and related orders; and

**WHEREAS**, I conclude that this Court's continued oversight of DCF is no longer necessary;

1

**IT IS THEREFORE ORDERED** that the Motion to Terminate Jurisdiction and Close Case (doc. no. 822) is granted. The Clerk is directed to close this case. The Court will retain jurisdiction over this case solely to: (a) oversee the closure of the Court Monitor's Office including approving such services and payments as may be appropriate and (b) address any outstanding fee requests submitted by counsel for the plaintiffs for time incurred prior to entry of this order.

**SO ORDERED** this 24th day of March 2022.

Stefan R. Underhill
United States District Judge

2