In Re: Emma Pileggi

Date: March 27, 2019

# Exhibit E

## AFFIDAVIT

I, Kevin Fitzsimmons, orthopedic physician assistant at Connecticut Children's Medical Center in Hartford, Connecticut, am over the age of eighteen and understand and believe in the obligations of an oath. Being duly sworn, I do hereby depose and say that the following is the truth to the best of my knowledge and belief:

Child who is subject of this affidavit:

Emma Pileggi (name)

09/02/2015 (DOB)

11 Pinewood Shores (address)

Sherman, CT 06784

Katherine Pileggi (parent's name)

11 Pinewood Shores (parent's address)

Sherman, CT 06784

[The next statements should indicate in numbered paragraph form the affiant's personal knowledge about the case. Be as specific as possible, use dates where appropriate, and include all relevant information.]

1. Brief paragraph describing expertise of the affiant.
   I have been a pediatric orthopedic physician assistant at Connecticut Children's Medical Center for 7 years. I treat patients in our outpatient clinics, take orthopedic trauma call, manage inpatient orthopedic patients, and assist with the orthopedic surgeons in the operating room

2. When, where, and how the child came to be treated by the affiant.

On Saturday, 3/9/19, I met Emma and her family while I was on call. On 3/1/19 Emma sustained a left distal femur fracture after being dropped by a family member. Emma was diagnosed with juvenile idiopathic arthritis (JIA), and is non-ambulatory secondary to her chronic knee effusions and JIA., Emma was seen at New Milford Hospital, was splinted and instructed to follow-up with Yale Pediatric orthopedics. She followed up with Yale pediatric orthopedics on 3/8/19. As reported by the family, they were instructed to be seen in Yale's Emergency Department for spica cast application. It was reported that the family did not follow the recommendation to take Emma to Yale's Emergency Department. It was reported that Yale contacted DCF, and were instructed to be seen at another facility. On 3/9/2019, Emma was seen in the Emergency Department at Connecticut Children's with a long leg splint in place. X-ray imaging obtained, and a new long leg splint was placed. The patient and family were instructed to follow up in 1 week with orthopedics.

3. Relevant medical history of the child. Emma initially presented to CT Children's Medical Center in June 2018, when they sought care for her bilateral knee effusions and inability to ambulate with Dr. Lawrence Zemel, in the Department of Rheumatology. She was diagnosed with juvenile idiopathic arthritis (JIA) and it was documented that Emma did not follow-up or initiate the care-plan prescribed by Dr. Zemel. On 3/9/19, during Emma's evaluation at Connecticut Children's Emergency Department, Emma's mother informed this writer, that they were continuing care for Emma's juvenile arthritis diagnosis with a local naturopathic physician. She reported an improvement in Emma's symptoms, however, stated she had been non-ambulatory since the symptoms and knee swelling began around age 8 months.

4. Current medical condition and diagnosis. Be specific, but also describe the condition in lay terms so others can understand the situation. Due to Emma being non-ambulatory for nearly 2 years, not walking under her own power, the lower extremity bones become osteopenic, or lose the ability to form new bone and become more fragile. The type of injury she sustained due to the decreased bone density from not walking from untreated juvenile idiopathic arthritis is called an

insufficiency fracture. This type of insufficiency fracture is seen more commonly in patient that are non-ambulatory, and/or wheelchair bound. Emma sustained a mildly angulated left distal femoral insufficiency buckle fracture. The treatment for this is splinting for 3-4 weeks, then once adequate healing has occurred the splint may be removed around that time. Many times casting is not necessary as the patients do not walk or put the fracture at risk of further displacement. I saw Emma on 3/19/19 for follow-up of the distal femur fracture which did show early bony callus formation, she had no pain and was reportedly sleeping well and without issue at that time. I instructed that they continue splinting for comfort for 1-2 more weeks, and that the splint could be removed and reapplied for bathing or changing clothes. They have a follow-up appointment to see me for the femur fracture on 4/16/19 which is acceptable follow-up based on this type of injury.

5. If child abuse is suspected, include a statement that the injury is most likely non-accidental and not self-inflicted. Also, if the reason for suspecting abuse is that the parents' statements are at a variance with the nature of the injury, state this. I do not suspect child abuse at this time, but medical neglect.

6. Factors impacting parent's ability to provide care (religious objections, incompetence, incapacitation). I do not know of any religious objections to medical treatment. There does not appear to be any cognitive barriers to understanding the necessity for the medical interventions prescribed.

THE AFFIANT:

_____ (signature)
Kevin Fitzsimmons _____ (name)

SUBSCRIBED AND SWORN TO before me on this 28th day of March, 2019.

_____ (signature of Notary Public)
TRACIE L. KAVANAGH
NOTARY PUBLIC
State of Connecticut
My Commission Expires
April 30, 2022
_____ (my commission expires)