**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **KATHARINE PILEGGI, et al**., | ) | **CIVIL ACTION NO.3:22-CV-01315** |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **KIM MATHIAS, et al.,** | | |
| Defendants. | ) | **JANUARY 27, 2026** |

<u>**LOCAL RULE 56(A) 1 STATEMENT OF UNDISPUTED MATERIAL FACTS**</u>

1. The Department of Children and Families (DCF) is the executive branch agency responsible for child welfare in the State of Connecticut and authorized to bring petitions alleging child neglect and abuse before the Superior Court for Juvenile Matters in furtherance of its child protection duties.  Conn. Gen. Stat. §§ 4-38c, 17a-2, 17a-3; 46b-121(a).

2. Social Worker Kaela Minerly is a social worker employed by DCF.  She has a master's degree in social work and received training in child welfare social work.  She was assigned the investigation into the Pileggi family on December 27, 2018. (Ex. A, Minerly Aff., ¶¶ 3-4)   After taking initial steps to investigate, such as visiting the family and requesting medical records,  she was replaced by Frank Rotovnik, another DCF employee, as the investigator. (*Id*., ¶¶4,5)  Minerly was not assigned as a social worker to the Pileggi case after February 6, 2019. (*Id*., ¶5)

3. Social Worker Frank Rotovnik is a social worker employed by DCF. (Ex. B, Rotovnk  Aff., ¶ 2)  He holds a master's degree in social work and a Licensed Master of Social Work (LMSW) designation, and has received training in child welfare social work.

(Id., ¶3).  In 2019, Rotovnik was an investigative social worker. He was assigned the Pileggi case on February 6, 2019. (*Id*., ¶4) Subsequent to his involvement as an investigator Rotovnik was promoted to supervisor, and was involved in the Pileggi case as a supervisor until its conclusion in March 2020.  (*Id*., ¶4)

4. A minor child referred to herein as "EP" initially presented to the Connecticut Children's Medical Center (CCMC) in June of 2018. The parents sought care for EP's bilateral knee effusions and inability to ambulate with Dr. Lawrence Zemel, a Rheumatologist in the Pediatric Rheumatology Department at CCMC.  Dr. Zemel diagnosed the plaintiff child, EP, with Idiopathic Rheumatoid Arthritis.  (Amended Complaint,¶¶  7,18; Ex. B-4, ¶¶3-4)

5. The parents of EP, Anthony and Katharine, refused recommended treatment for Idiopathic Rheumatoid Arthritis. (Amended Complaint, ¶ 33; Ex. B-1; Ex. B-4, ¶3)

6. Except for the time period immediately prior to his retirement Dr. Zemel was head of the Pediatric Rheumatology Department at CCMC.  He is a medical doctor with advanced training in pediatric rheumatology and extensive experience treating both arthritis and lyme disease.  (Ex. H, Zemel Depo, Vol I, pp.6-17, 34).  He practiced pediatric rheumatology for over forty years from 1978 until his retirement in 2021.  (*Id.*, pp. 8, 10).  At all times referenced in the complaint he was board certified in pediatrics and pediatric rheumatology.  (*Id.*, p. 13).

7. Beginning on February 6, 2019 Frank Rotovnik investigated reported child neglect related to the Pileggi family.  He reported information to the juvenile session of superior court in an affidavit submitted to the court. (Ex. B-1, Rotovnik Aff. 3/28/2019) The information reported included statements from the parents or information provided

by the parents related to EP, the social worker's observations of the family, and information from medical providers. (*Id.*)

8. EP sustained a left distal femur fracture after being dropped by a family member in March, 2019. (Ex. B-4, ¶2)  Because EP was non-ambulatory for a significant period of time prior to this injury her lower extremity had become fragile. "The type of injury she sustained due to the decreased bone density from not walking from untreated idiopathic arthritis is called an insufficiency fracture.  This type of insufficiency fracture  is seen more commonly in patient[s] [who] are non-ambulatory, and/or wheelchair bound."  (Ex. B-4, ¶4)

9. On March 20, 2019, Dr. Zemel opined that EP was "completely disabled" and was "deteriorating and is showing muscle wasting in her legs as a result of lack of proper treatment for her arthritis." (Ex. B-1, ¶38)  Dr.  Zemel opined that EP "needs medical intervention in order to prevent further damage and have a chance of recovery." (Ex. B-1, ¶38)  (*See* Zemel Depo Vol II, pp.253-257; Vol I, pp. 49, 71).

10. Dr. Zemel was of the view that EP's prognosis without standard of care treatment was "grim" and he had "grave concerns" -- including "that she was looking at permanent disability and the inability to walk."  (Ex. H, Zemel Depo Vol II, pp.253-257; *see* Vol I, pp. 49, 71).  He communicated his concerns to a DCF nurse.  (*Id.*, 256).

11. DCF medical director, Dr. Nicole Taylor, opined that she had "grave concern" for EP's medical safety and her family's ability to meet the child's needs in light of her current presentation and medical status. (Ex. B-1, ¶41)

12. Pamela Santapaola, N.D., is a naturopathic physician who the plaintiff parents consulted.  Dr. Santapaola opined:  "Based upon my medical opinion this child

may suffer from irreversible damage or injury if left untreated by conventional means."
(Ex. B-3, Santapaola Aff)

13. On March 28, 2019, the Department of Children and Families filed neglect petitions in the juvenile session of superior court regarding the plaintiff-parents' children: SP (born 2009), NP (born 2012), EP (born 2015) and MP (born 2017). (Court orders and transcript attached as Ex. E.) The Department also filed a motion for *ex parte* order of temporary custody ("OTC") with regard to EP.  On March 28, 2019, the trial court (*Turner,  J.*) granted the motion for order of temporary custody of EP, finding that the child was in immediate physical danger from her surroundings in the parental home. The trial court (*Turner, J.*)  further ordered that DCF was authorized to consent to necessary medical treatment for EP as recommended by her treating physician or medical specialist. (Ex. E)

14. On April 5, 2019, a preliminary hearing was held in state court.  All parties agreed to sustain the OTC of EP.  The trial court (*Grogins, J.*) canvassed the parents and found that their agreement was voluntarily and knowingly made with the effective assistance of counsel and that there was a factual basis for the OTC. (Ex. E)

15. If any party had wished to contest the OTC, that party would have been entitled to an expeditious evidentiary hearing within ten days. See Conn. Gen. Stat. § 46b-129 (b); Conn. Practice Bk. §§ 33a-6, 33a-7 (d).

16. On September 19, 2019, by agreement of all parties, the trial court (*Cremins, J.*) adjudicated all of the Pileggi children neglected, including EP. (Ex. E)  By agreement of all parties the trial court committed EP to the Department of Children and Families. The trial court ordered a period of protective supervision of the other children from

September 19, 2019 to March 19, 2020. (Ex. E)  By agreement of all parties the trial court vested custody of the other children in the father, Anthony Pileggi.  The trial court canvassed the parents and found that the agreement was knowingly and voluntarily made with the effective assistance of counsel and that there was a factual basis for the parents' plea. (Ex. E)

18. If any party had wished to contest the Department's petition the court would have held an evidentiary hearing.  Conn. Gen. Stat. § 46b-129 (j) (2)); *See* Conn. Practice Bk. §§ 35a-7, 35a-8, 35a-9, 35a-10, 35a-11.

18. On October 9, 2019, pursuant to DCF's motion and with the agreement of all parties, the trial court (*Turner, J.*) revoked EP's commitment and placed her under protective supervision vested with her father to run concurrently with the other children. (Ex. E)

19. After EP was removed from the parents' custody and care, she received treatment for Idiopathic Rheumatoid Arthritis at Connecticut Children's Medical Center (CCMC).  (Ex. B, ¶8)  EP's treatment included medication, physical therapy, aquatics therapy, occupational therapy and nutritional and orthopedic consults. (*Id*.)  After a period of in-patient hospitalization EP continued treatment on an outpatient basis while she was placed in a DCF licensed foster home that was supported by a visiting nurse service. (*Id*.) Also registered nurses employed by DCF were involved in monitoring her care.  CCMC staff informed the Department that EP's treatment was successful.  (*Id*.) Before she received treatment she was unable to walk. (Id.)  After treatment Rotovnik observed that she was able to walk without difficulty and she appeared to have regained good health.  (*Id.*)

20. On February 18, 2020, the trial court (*Turner, J.*) held an in- court review of the case.  All parties and the court agreed to allow protective supervision to expire as scheduled on March 19, 2020. (Ex. E)  On March 19, 2020, the juvenile case ended. (*Id*.)

21. The involvement of Kaela Minerly ended before the petitions were filed in the juvenile session of superior court.  She had no role in vaccinating the plaintiff children. She did not contact the police or child welfare authority in Florida nor did she submit any filings in the juvenile session of superior court. (Ex. A, Minerly Aff., ¶¶ 7, 8)

22. Frank Rotovnik did not play any role in vaccinating the Pillegi children or contacting the police or child welfare authority in Florida except to the extent that he spoke with a Florida social worker named Nicole in order to arrange to pick up EP in the airport. (Ex. B, Rotovnik Aff. ¶12) He was not responsible for providing notice for the court hearing on the order of temporary custody. (*Id*.) The clerk's office provides such notice. In fact, the parents were in attendance at the OTC preliminary hearing. (Ex. B, Rotovnik Aff. ¶13).;  Ex. E--Transcript April 5, 2019)

23. At the request of the plaintiff parents DCF held an administrative hearing during which the parents were represented by legal counsel.  In a decision dated January 28, 2021, the hearing officer upheld substantiations of medical and physical neglect of EP. (Ex. C) The plaintiff parents did not appeal the hearing officer's decision as they had a right to do under the Uniform Administrative Procedure Act (UAPA), Conn. Gen. Stat. § 4-166, *et seq*.

DEFENDANTS


KAELA MINERLY, SOCIAL WORKER,
DEPARTMENT OF CHILDREN AND
FAMILIES

FRANK ROTOVNIK, SOCIAL
WORKER, DEPARTMENT OF
CHILDREN AND FAMILIES


WILLIAM TONG
ATTORNEY GENERAL


BY:     /S/ *John E. Tucker*
        John E. Tucker
        Assistant Attorney General
        Federal Bar No. ct 04576
        Samuel Shapiro
        Assistant Attorney General
        Federal Bar No. ct 31373
        165 Capitol Avenue
        Hartford, CT  06106
        Tel: (860) 808-5020
        Fax: (860) 808-5084
        Email: John.Tucker@ct.gov

## **CERTIFICATION**

I hereby certify that on January 27, 2026, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

_/S/ John E. Tucker_
John E. Tucker
Assistant Attorney General
Federal Bar No. ct 04576