**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**
-----------------------------------------------x
KATHARINE PILEGGI, et al.,

             Plaintiffs,                       Case No.: 3:22-cv-01315-AWT

v.

KIM MATHIAS, et al.,

             Defendants.
-----------------------------------------------x

## PLAINTIFFS' REPLY IN SUPPORT OF RULE 56(d) MOTION FOR LEAVE TO SERVE REBUTTAL EXPERT DISCLOSURES

Plaintiffs respectfully submit this Reply in further support of their Rule 56(d) Motion for Leave to Serve Rebuttal Expert Disclosures and in response to the opposition filed by Defendants Connecticut Children's Medical Center, Lawrence Zemel, M.D., and Kevin Fitzsimmons, P.A.

## I. PRELIMINARY STATEMENT

The Medical Defendants' opposition reframes Plaintiffs' request as a belated attempt to rescue an unsupported case, but Rule 56(d) exists precisely to prevent summary judgment from being decided before the nonmovant has a fair opportunity to obtain and present facts essential to opposition. Fed. R. Civ. P. 56(d).

Plaintiffs seek limited, targeted relief: leave to serve Dr. Harry F. Hull's expert disclosure, a short period for expert depositions, and a corresponding adjustment to summary-judgment briefing. The opposition does not identify any trial date that would be jeopardized, nor does it demonstrate prejudice that cannot be cured through limited expert discovery and supplemental briefing. Nor have Defendants demonstrated that the requested limited discovery would meaningfully disrupt the schedule of the case. Instead, Defendants ask the Court to decide

1

summary judgment on a record they know is incomplete while simultaneously opposing the very disclosure that would permit the Rule 56 record to be tested on the merits.  The Court should reject that approach.

Critically, Defendants' position ignores their own failure to comply with the Court's Scheduling Order. The Court established an expert disclosure deadline of October 31, 2025. Defendants nevertheless served expert disclosures on December 31, 2025, and January 9, 2026, without leave of Court and months after the deadline had expired, on the very same day that expert depositions were supposed to have been completed.

Under Rule 37(c)(1), a party that fails to disclose information required by Rule 26(a) "is not allowed to use that information or witness" unless the failure was substantially justified or harmless. The Second Circuit has repeatedly recognized that Rule 37(c)(1) imposes a self-executing sanction intended to prevent parties from gaining a tactical advantage through untimely disclosures. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006); *Patterson v. Balsamico*, 440 F.3d 104 (2d Cir. 2006).

Defendants make no meaningful showing that their delay was substantially justified or harmless. Instead, they seek to benefit from their own untimely disclosures while opposing Plaintiffs' efforts to respond accordingly. The Federal Rules do not permit such gamesmanship. At minimum, fairness requires that Plaintiffs be afforded a reciprocal opportunity to respond through limited expert discovery.

Rule 56(d) authorizes the Court to defer consideration of summary judgment, allow time for discovery, or issue another appropriate order where the nonmovant cannot yet present essential facts. Federal Rules of Civil Procedure, Rule 56(d).

## II. ARGUMENT

**A. Rule 56(d) Relief Is Proper and Necessary**

Rule 56(d) authorizes the Court to defer consideration of summary judgment, permit discovery, or issue another appropriate order where the nonmovant cannot yet present facts essential to justify opposition. That is precisely the circumstance here.

Defendants filed their *Motion for Summary Judgment* shortly after serving untimely expert disclosures and now seek adjudication before Plaintiffs can present expert testimony directly responsive to the issues Defendants themselves injected into the summary-judgment record.

Courts in this District recognize that summary judgment should not proceed where a party lacks a fair opportunity to obtain evidence necessary to oppose the motion. *See Burt v. Rumsfeld*, 354 F. Supp. 2d 156 (D. Conn. 2005). Rule 56(d) provides that where a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the Court may defer consideration of the motion, allow time to obtain affidavits or declarations or to take discovery, or issue another appropriate order. Federal Rules of Civil Procedure, Rule 56(d).

That is the precise relief Plaintiffs request here. The rule is not limited to traditional fact discovery; it authorizes relief where the nonmovant cannot yet present facts essential to oppose summary judgment. *Id.* Here, Plaintiffs are not seeking open-ended discovery. Plaintiffs have identified the expert, produced his curriculum vitae, identified the subject matter of his testimony, and proposed a limited schedule for disclosure and deposition. This is not a speculative request or a fishing expedition. It is a narrowly tailored request designed to ensure that summary judgment is decided on a complete evidentiary record.

**B. Defendants Misapply Rule 26's 30-Day Rebuttal Provision**

Defendants argue that Plaintiffs failed to comply with Rule 26(a)(2)(D)(ii)'s 30-day rebuttal period. That argument fails because the 30-day rebuttal period presumes timely initial disclosures. Here, Defendants' disclosures were themselves untimely and made without leave of Court.

Courts do not rigidly enforce Rule 26's rebuttal deadlines, particularly where the initial disclosures themselves violated the Scheduling Order and strict enforcement would reward noncompliance and create unfair prejudice. Defendants cannot disclose experts months after the *Scheduling Order* deadline without leave of the Court, immediately file summary judgment, and then invoke Rule 26's timing provisions to prevent Plaintiffs from responding. Allowing Defendants to use Rule 26 in this manner would invert the purpose of the Federal Rules and reward the very conduct Rule 37(c)(1) was designed to deter.

The chronology matters. Plaintiffs' motion states that fact discovery extended beyond the original deadlines, including depositions of Plaintiffs Katharine and Anthony Pileggi in April and May 2025 and the completion of Defendant Dr. Lawrence Zemel's deposition on December 12, 2025. Plaintiffs' motion further states that Defendants served expert disclosures on December 31, 2025, approximately two (2) months after the October 31, 2025, expert-disclosure deadline and on the same day expert depositions were scheduled to be completed. Defendants filed their Motion for Summary Judgment on January 30, 2026. Plaintiffs' motion states that counsel began searching for a rebuttal expert in the summer of 2025 and contacted at least thirty (30) board-certified pediatric specialists. These facts are inconsistent with Defendants' suggestion that Plaintiffs simply ignored the case schedule and then sought relief only after being caught unprepared.

Defendants also argue that Plaintiffs should have disclosed an expert earlier because the medical records were available and the case has been pending since October 2022. That argument overlooks the context set out in Plaintiffs' motion: the factual record continued to develop through late 2025, the defense expert disclosures were not served until December 31, 2025, and Plaintiffs' search for an appropriate expert encountered repeated refusals based on conflicts or concerns associated with Lyme-disease testimony. Defendants may dispute the significance of those circumstances, but they do not eliminate Plaintiffs' diligence or justify the harsh result of preclusion at the summary-judgment stage.

Defendants' reliance on cases denying Rule 56 relief where a party offers only speculation is misplaced. In *Burt v. Rumsfeld*, 354 F. Supp. 2d 156 (D. Conn. 2005), the court recognized that summary judgment before discovery should not be undertaken lightly, while also explaining that a court may deny Rule 56(f) relief where the requesting party fails to produce specific facts and relies on mere hopes that evidence may develop. In the case at bar, Plaintiffs are not asking for a fishing expedition. They have identified the witness, identified the subject matter of the opinions, provided the expert's curriculum vitae, and proposed a defined schedule for disclosure and deposition. That is the opposite of a speculative request.

## C. The *Softel* Factors Favor Plaintiffs

Courts in this Circuit evaluate expert preclusion under the factors articulated in *Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.*: (1) the explanation for the delay; (2) the importance of the testimony; (3) prejudice; and (4) the possibility of continuance. Each factor weighs heavily in favor of Plaintiffs. *See Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (listing the four factors for preclusion of expert testimony).

**1. Explanation for Delay**

Once again, the chronology matters.

Discovery continued into late 2025, including key depositions, due to conflicting schedules of all counsel and witnesses. Defendants then served untimely expert disclosures on December 31, 2025, and January 9, 2026, months after the Court's established expert disclosure deadline of October 31, 2025, and on the exact day of the deadline for expert depositions. Defendants subsequently filed for Summary Judgment on January 30, 2026. No leave of court was sought by Defendants. All the while, Plaintiffs continued in their efforts to secure an appropriate responsive expert. Once they were able to, the present Rule 56(d) motion was filed.

Hence, contrary to the Defendants' assertions, Plaintiffs did not ignore the scheduling order. Plaintiffs' counsel began searching for an expert early 2025 and contacted numerous physicians during the search, prior to securing Dr. Hull. The delay was substantially influenced by Defendants' untimely disclosures, the evolving discovery record, and the need to identify an expert capable of addressing the issues raised by Defendants.

**2. Importance of the Testimony**

Defendants effectively concede that Dr. Hull's testimony is critical because their *Motion for Summary Judgment* relies substantially on Plaintiffs' alleged lack of expert support. Hence, the importance of the testimony weighs against preclusion, not in favor of it. The Second Circuit has repeatedly cautioned that exclusion of critical evidence is a harsh remedy. *See Patterson v. Balsamico,* 440 F.3d 104 (2d Cir. 2006).

Defendants rely heavily on the assertion that Dr. Hull is not a rebuttal expert because his opinions will address standard of care and causation. That argument proves too much. In a medical-malpractice case, expert testimony on standard of care and causation is often central to whether

6

summary judgment can be opposed at all.  Here, Defendants' own opposition acknowledges that without Dr. Hull's testimony, Plaintiffs may be exposed to summary judgment, and Defendants' pending summary-judgment motion expressly relies in part on Plaintiffs' alleged failure to disclose supporting expert testimony. Therefore, the importance of the testimony is not a reason to bar it; it is a reason to permit the limited Rule 56(d) relief necessary to allow the Court to decide summary judgment on a merits-based record.

Moreover, the label "rebuttal" does not defeat Plaintiffs' request.  Plaintiffs seek to respond to Defendants' expert-driven attack on the sufficiency of the malpractice claim, including the issues of standard of care and causation. Defendants served expert disclosures on December 31, 2025, and Plaintiffs seek leave to serve Dr. Hull's report so that his opinions may be considered in connection with the pending summary-judgment motion. Whether the Court ultimately treats Dr. Hull as a rebuttal expert, a responsive expert, or an expert whose disclosure requires modification of the scheduling order, the practical question remains the same: whether Defendants have shown incurable prejudice sufficiently to justify deciding summary judgment without the expert evidence Plaintiffs have now identified. They have not.

### 3. Prejudice

Defendants' claim of prejudice is based on the assertion that they may need to depose Dr. Hull, confer with their experts, prepare cross-examination, supplement their expert reports, and possibly submit further briefing or a motion to preclude. However, these are ordinary incidents of expert discovery, not undue prejudice. Furthermore, Plaintiffs likewise have not had a fair opportunity to depose Defendants' untimely disclosed expert witnesses. Therefore, limited reciprocal expert discovery would cure any prejudice to either side and permit summary judgment to proceed on a complete evidentiary record. Plaintiffs' proposed relief expressly permits

Defendants to depose Dr. Hull within thirty (30) days after receiving his report and contemplates a revised summary-judgment briefing schedule.

Plaintiffs seek reciprocal and limited expert discovery designed solely to place both parties on equal procedural footing following Defendants' untimely disclosures. Under these circumstances, limited expert discovery is a far more appropriate and proportional remedy than the harsh sanction of preclusion. By contrast, denying Plaintiffs relief would effectively deprive Plaintiffs of the ability to oppose summary judgment on expert-dependent medical malpractice issues.

**4. Possibility of Cure**

No trial date has been set; therefore, a curative schedule remains available and adequate. Any prejudice to Defendants can easily be cured through limited expert discovery, reciprocal expert depositions, and adjusted briefing deadlines. The requested relief is narrow, manageable, and fully curative.

**D. Defendants Improperly Narrow the Relevant Medical Specialty**

Defendants' assertion that Dr. Hull may not qualify under Connecticut's medical-malpractice expert requirements is premature and improperly narrows the relevant medical issues in this case.

The alleged negligence concerns the recognition, evaluation, differential diagnosis, and treatment implications of Lyme disease and tick-borne illness in a pediatric patient following documented tick exposure and subsequent symptom development. Defendants failed to evaluate and diagnose Lyme disease after a fully engorged tick removal in a highly endemic area and instead wrongfully attributed the child's symptoms to juvenile idiopathic arthritis.

Dr. Hull's qualifications in pediatrics, infectious disease epidemiology, public health, and tick-borne disease directly relate to those issues.

Defendants improperly conflate specialty certification with subject-matter expertise. Connecticut law does not rigidly require identical specialties in every circumstance. Rather, courts examine whether the expert possesses sufficient knowledge, training, and experience concerning the condition, diagnosis, or treatment at issue. *See Wilkins v. Connecticut Childbirth & Women's Center*, 314 Conn. 709, 723 n.4, 104 A.3d 671 (2014).

Where overlap exists between specialties and the expert possesses relevant expertise concerning the medical issues presented, testimony may be permitted notwithstanding differences in formal specialty designation. Here, the central issues are Lyme disease recognition, differential diagnosis, standard of care, infectious disease evaluation, and interpretation of symptoms following tick exposure in a pediatric patient all squarely within Dr. Hull's demonstrated expertise.

Moreover, Defendants' qualification challenge is speculative and premature. No report has yet been served, no deposition has occurred, and no evidentiary record exists concerning the precise scope of Dr. Hull's anticipated testimony. Any qualification challenge should therefore be addressed, if necessary, on a developed factual record not as a basis to preclude Plaintiffs from serving the disclosure altogether.  The present motion concerns whether Plaintiffs should be permitted to serve the disclosure, not whether the Court should prematurely adjudicate admissibility before a factual record exists.

### E. Defendants Seek to Benefit from Their Own Untimely Conduct

Defendants' position would permit them to violate the Court's expert disclosure deadline, serve late experts, file for summary judgment, and then block Plaintiffs from responding. This

approach improperly attempts to leverage Defendants' own untimely disclosures to prevent Plaintiffs from responding.

Rule 56(d) exists precisely to prevent summary judgment from being decided on an incomplete record where essential evidence remains unavailable through no meaningful fault of the nonmovant. Precluding disclosure now would effectively decide the merits through scheduling technicalities rather than through an evidentiary evaluation of the claims.

### III. REQUESTED RELIEF

For the foregoing reasons, Plaintiffs respectfully request that the Court:

1.  Grant Plaintiffs leave to serve the expert disclosure and report of Harry F. Hull, M.D.;

2.  Defer consideration of Defendants' Motion for Summary Judgment pending completion of limited expert discovery;

3.  Permit limited expert discovery, including Defendants' deposition of Dr. Hull and Plaintiffs' depositions of Defendants' untimely disclosed experts;

4.  Establish a revised schedule for completion of limited expert discovery and supplemental summary-judgment briefing; and

5.  Grant such other and further relief as the Court deems just and proper.

Dated: May 11, 2026
      Mount Vernon, NY

Respectfully submitted,

*Tricia Lindsay*

Tricia S. Lindsay, Esq.
Law Office of Tricia S. Lindsay
531 E. Lincoln Ave, Suite 5B
Mount Vernon, NY 10552
Tel: (347) 386-4604; (347) 349-5433
Fax: (914) 840-1196
Email: tricialindsaylaw@gmail.com

10