IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KATHARINE PILEGGI ET AL., | ) | |
| | ) | |
| **Plaintiff** | ) | **CIVIL NO. 3:22-cv-01315-AWT** |
| | ) | |
| v. | ) | |
| | ) | |
| MATHIAS ET AL., | ) | |
| | ) | |
| **Defendants.** | ) | **MAY 22, 2026** |

REPLY TO THE PLAINTIFFS' OBJECTION TO THE CT CHILDREN'S
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), the undersigned defendants,

**Connecticut Children's Medical Center ("CT Children's"), Lawrence Zemel, M.D., and**

**Kevin Fitzsimmons**, P.A. (collectively, "the CT Children's defendants")**, respectfully reply to

the plaintiffs' Objection to their Motion for Summary Judgment. ECF No. 114. The plaintiffs

have not set forth any genuine issue of material fact that would warrant denying the CT

Children's defendants' Motion for Summary Judgment. ECF No. 98. As set forth in more detail

below, each of the plaintiffs' arguments is without merit, and, therefore, the Court should grant

summary judgment in favor of the CT Children's defendants as to the claims remaining against

them.

I.    THE PLAINTIFFS' MEDICAL MALPRACTICE CLAIMS ARE
      UNTIMELY.

A.    The Plaintiffs' Claims Are Untimely Under the Two-Year Limitations
      Period in Conn. Gen. Stat. § 52–584.

The plaintiffs' argument that the discovery period within General Statutes § 52–584 did

not begin running until "as late as 2026, when antibiotic treatment produced dramatic

improvements confirming the misdiagnosis" reveals the inherent absurdity of their position. ECF

No. 114 at 16. As the CT Children's defendants set forth in their Memorandum of Law; ECF No.

1968128_1

DANAHERLAGNESE, PC • 21 OAK STREET, HARTFORD, CT 06106 • (860) 247-3666

98-1 at 16–17; Connecticut courts have held consistently that "[a]ctionable harm occurs when the plaintiff discovers, or in the exercise of reasonable care, should have discovered the essential elements of a cause of action." *Jackson v. Tohan*, 113 Conn. App. 782, 787, 967 A.2d 634 (2009) (internal quotation marks omitted). The discovery of additional evidence that allegedly supports the plaintiffs' view that EP had Lyme Disease does not reset the statute of limitations. Rather, "[o]nce the plaintiff has discovered her injury, the statute begins to run." *Rosato v. Mascardo*, 82 Conn. App. 396, 405, 844 A.2d 893 (2004). A fair review of the evidence in the case demonstrates that the plaintiffs had actual knowledge of Dr. Zemel's alleged misdiagnosis in June, 2018, but certainly no later than September, 2020.

The undisputed evidence in the case is that the plaintiffs were as convinced in June, 2018 as they are today that Dr. Zemel had misdiagnosed EP with juvenile idiopathic arthritis. And, although "it does not follow that a plaintiff cannot reasonably discover an injury absent verification by a qualified expert"; *Mountaindale Condominium Ass'n, Inc. v. Zappone*, 59 Conn. App. 311, 323, 757 A.2d 608 (2000) (citations omitted; internal quotation marks omitted); they had such a second opinion as of September 21, 2020, when Dr. Lopusny diagnosed EP with Lyme Disease. Defs.' Local R. 56(a)1 Statement, ECF No. 98-2 at 12 ¶ 62. There can be no question that the plaintiffs themselves, and certainly a reasonable person in their position, had all the essential information necessary to assert a cause of action for medical negligence as of June, 2018, or, at the absolute latest, by September 21, 2020. Their claims were filed more than two years after either date. As such, they are untimely under the limitations period within General Statutes § 52–584, and the CT Children's defendants are entitled to summary judgment.

1968128_1
DANAHERLAGNESE, PC • 21 OAK STREET, HARTFORD, CT 06106 • (860) 247-3666

### B.    The Plaintiffs' Claims Are Untimely Under the Three-Year Repose Period in Conn. Gen. Stat. § 52–584.

The plaintiffs' reliance on the continuing course of conduct doctrine to save their claims, despite being filed more than three years after June, 2018, is misplaced. ECF No. 114 at 12–13. After Dr. Zemel's June, 2018 evaluation of EP, the plaintiffs terminated their relationship with him and Connecticut Children's based on their belief that Dr. Zemel was misdiagnosing EP with juvenile idiopathic arthritis. *E.g.*, Am. Compl., ECF No. 47 at 8 ¶ 20 (EP displaying "obvious Lyme Disease symptoms" in June, 2018). It is undisputed that the plaintiffs sought out treatment for EP from providers other than the CT Children's defendants for the express reason that they had knowledge of Dr. Zemel's diagnosis of juvenile idiopathic arthritis and believed, at the time, that it was incorrect. The continuing course of conduct doctrine does not apply in such a circumstance. Rather, it applies only when a defendant learns that his or her diagnosis was not correct, giving rise to a duty to inform the patient. *Grey v. Stamford Health Sys.*, 282 Conn. 745, 757, 924 A.2d 831 (2007).

The plaintiffs' arguments that they "lacked sufficient notice at that time that EP had been misdiagnosed" until October, 2022 due to conflicting medical advice from Dr. Zemel and Dr. Lopusny lacks merit. ECF No. 114 at 17. Despite the plaintiffs' arguments to the contrary, the fact that Dr. Zemel disagreed with Dr. Lopusny's diagnosis of Lyme Disease in September, 2020 is not relevant to the statute of repose analysis. The plaintiffs may not push forward the accrual of their cause of action "as long as it is claimed that the negligent conduct continued" as such a rule "would eviscerate the policies underlying the statute of limitations. The plaintiff would be allowed to acquiesce in the defendant's conduct as long as it was convenient to the plaintiff." *Rosato v. Mascardo*, 82 Conn. App. 396, 405, 844 A.2d 893 (2004). Rather, the relevant inquiry is when the allegedly negligent conduct occurred. *Neuhaus v. DeCholnoky*, 280 Conn. 190, 201,

3

905 A.2d 1135 (2006). That "single moment in time" occurred in June, 2018, when the plaintiffs claim Dr. Zemel misdiagnosed their daughter. For these reasons, the plaintiffs' claims are untimely under the repose period set forth in General Statutes § 52–584, and the CT Children's defendants are entitled to summary judgment.

**II.    THE PLAINTIFFS HAVE FAILED TO DISCLOSE EXPERT OPINION TESTIMONY SUFFICIENT TO SUPPORT A *PRIMA FACIE* CASE OF MEDICAL MALPRACTICE.**

This case is not, as the plaintiffs argue, "about whether a group of medical providers, disagreeing with parents about a complex and contested diagnosis, wrongfully and pretextually used the immense power of a state agency to override the Pileggis' parental rights." ECF No. 114 at 8–9. The Court has dismissed those claims. *See* Mem. of Decision, ECF No. 82. The only claims that have survived against the CT Children's defendants are the medical malpractice claims in Count Twelve of the Amended Complaint. *Id.* at 29–30. Thus, aside from timeliness, the *only* relevant question for the Court on summary judgment is whether the plaintiffs have produced adequate medical evidence to establish the standard of care that applied to the CT Children's defendants; a breach of that standard of care; causation; and damages. *Gold v. Greenwich Hospital Ass'n*, 262 Conn. 248, 254–55, 811 A.2d 1266 (2002).

The plaintiffs have plainly failed to carry their burden. They have not disclosed a single expert in the case. Even now, as of the filing of this Reply nearly four months after the filing of the Motion for Summary Judgment, the plaintiffs have not served a single Rule 26(a)(2) disclosure or report, including a disclosure or report of Harry Hull, M.D., their purported epidemiology expert. ECF No. 114 at 23. In any event, the defendants have objected to the disclosure of Dr. Hull at this late stage of the case, and they specifically have reserved the right

to move to preclude him after having had the opportunity to review his disclosure and report. ECF No. 117.

Moreover, although the plaintiffs have disclosed a new letter authored by Dr. Lopusny, dated April 13, 2026; ECF No. 115-2; Dr. Lopusny still has not been disclosed as an expert in the case.

Further, Dr. Lopusny's letter conspicuously omits any opinion as to what the standard of care required of CT Children's defendants, any breach by the CT Children's defendants, or any causal connection between the CT Children's defendants' conduct and EP's alleged damages. For the most part, her new letter is a factual recounting of her own treatment history of EP. *See id.* at 2–5. To the extent that it expresses any opinions at all, they amount to nothing more than an apparent disagreement with Dr. Zemel's assessment that EP did not have Lyme Disease. *See id.* at 5 ¶ 29.

It is one thing to express disagreement with another healthcare provider's diagnosis of a patient, and another to opine, to a reasonable degree of medical probability, that that other healthcare provider's treatment deviated from the applicable standard of care. As the Connecticut Supreme Court has observed, "the duty to correct a diagnosis that he had reason to question in the first instance . . . is necessarily a matter of expert testimony, which the plaintiff will have the opportunity to present at trial." *Witt v. St. Vincent's Medical Center*, 252 Conn. 363, 375, 746 A.2d 753 (2000). In the absence of qualified, properly disclosed medical expert opinion testimony that making a certain diagnosis rather than another was a deviation from the standard of care, the plaintiffs have not carried their burden to demonstrate what the standard of care was or that the CT Children's defendants violated it.

1968128_1
DANAHERLAGNESE, PC • 21 OAK STREET, HARTFORD, CT 06106 • (860) 247-3666

To the extent that the plaintiffs argue that the CT Children's defendants bear the burden of proof on summary judgment as to what the standard of care was and that the defendants met the standard of care; ECF No. 114 at 30; this argument has absolutely no merit. Connecticut law governing medical malpractice actions is clear that "the claimant shall have the burden of proving by the preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider." Conn. Gen. Stat. § 52–184c(a). Because the plaintiffs have failed to disclose witnesses who can competently testify as to fundamental elements of their case, the plaintiffs cannot meet their burden, and the defendants are entitled to summary judgment. The plaintiffs' failure to adduce any expert testimony in support of their claims for medical malpractice is fatal. *E.g.*, *Grenier v. Stamford Hospital Stamford Health Sys.*, No. 3:14-cv-0970 (VLB), 2017 U.S. Dist. LEXIS 207143, at \*7 (D. Conn. June 26, 2017). For this reason, the CT Children's defendants are entitled to summary judgment.

III.    **THE LETTERS AUTHORED BY DR. LOPUSNY AND DR. TRANGUCH ARE NOT SUFFICIENT TO CARRY THE PLAINTIFFS' BURDEN OF PROVING A *PRIMA FACIE* CASE OF MEDICAL MALPRACTICE.**

A.    **Neither Dr. Lopusny nor Dr. Tranguch Are Qualified to Opine as to the Standard of Care That Applied to the CT Children's Defendants.**

The plaintiffs are simply incorrect when they argue that "the question [of] whether the expert is a 'similar health care provider' . . . focuses on the specific medical issue at hand" and not the specialty of the target healthcare provider. ECF No. 114 at 14. Connecticut law provides:

> If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a "similar health care provider" is one who: (1) *is trained and experienced in the same specialty*; and (2) *is certified by the appropriate American board in the same specialty*; provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within

6

his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a "similar health care provider."

Conn. Gen. Stat. § 52–184c(c) (emphases added).

The plain language of the statute states that it is the specialty of the defendant healthcare provider that governs whether an expert disclosed against him is a "similar healthcare provider" for purposes of Connecticut law. The relevant consideration is whether the proferred expert has knowledge regarding the standard of care that applied to the particular specialist at issue. "The test for admissibility of the opinion of an expert witness is whether the expert knows the applicable standard of care and can evaluate the defendant's conduct, given that standard." *Farrell v. Bass*, 90 Conn. App. 804, 811, 879 A.2d 516 (2005).

Dr. Lopusny is neither trained nor experienced as a pediatric rheumatologist, and she is not certified in the same specialty as Dr. Zemel. Thus, by the plain terms of § 52–184c(c), she is not qualified to offer standard of care testimony against Dr. Zemel.[1] Her knowledge of Lyme Disease generally, acquired during her practice as a general pediatrician, does not give her a basis to opine as to the specialized standard of care that applied to a provider with greater specialization in the field of pediatric rheumatology. *E.g.*, *Bennett v. New Milford Hospital, Inc.*, 300 Conn. 1, 23–24, 12 A.3d 865 (2011) (precluding board-certified general surgeon with subcertifications in critical care and trauma surgery from testifying to standard of care applicable to emergency medicine physician).

This argument applies in equal measure to the plaintiffs' claims against PA Fitzsimmons. Neither Dr. Lopusny nor Dr. Tranguch have any training or experience as an orthopaedics and

---

[1]The plaintiffs do not cite Dr. Tranguch's letter at all in their Opposition and appear to have waived any reliance on it.

1968128_1

sports medicine physician assistant, and they are not board-certified in the same or a related field. As such, they lack the qualifications to criticize his care and treatment of EP.[2]

Absent testimony of a qualified expert, the plaintiffs' medical malpractice claims fail as a matter of law, and the CT Children's defendants are entitled to summary judgment.

### B. Neither Dr. Lopusny nor Dr. Tranguch Have Criticized PA Fitzsimmons's Care of the Minor Child.

The plaintiffs do not dispute that they have failed to disclose any expert testimony critical of PA Fitzsimmons' care. Rather, they argue in conclusory fashion that "[a] plaintiff is not required to have a separate expert for every single provider in a chain of negligent care." ECF No. 114 at 19.

This assertion, which the plaintiffs do not support with any citation to the record or case law, misstates the law. "In a medical malpractice action, expert testimony is required to establish the standard of professional care to which the defendant is held and that the defendant failed to conform to that standard of care." *Butcher v. Saint Francis Hospital*, No. CV-92-0514585 S, 1995 Conn. Super. LEXIS 3215, at *2 (Conn. Super. Ct. Nov. 15, 1995) (quoting *Mather v. Griffin Hospital*, 207 Conn. 125, 130–31, 540 A.2d 666 (1988)). No expert has criticized PA Fitzsimmons' care of EP, much less alleged that he was part of a "chain of negligent care." In the absence of any expert testimony supporting a medical malpractice claim against PA Fitzsimmons specifically, he is entitled to summary judgment.

---

[2]Moreover, neither one actually has offered standard of care criticism of PA Fitzsimmons. *See* discussion *infra*, Part III.B.

8

###### C.    Neither Dr. Lopusny nor Dr. Tranguch Have Offered Any Opinions as to Causation.

The plaintiffs' argument that Dr. Lopusny's April 13, 2026 letter provides adequate expert support for "why the subsequent positive response to antibiotics provides strong corroborative evidence of causation" misses the mark. ECF No. 114 at 22. Even accepting Dr. Lopusny's new letter as an appropriate disclosure of expert opinion testimony in the case, which it is not, it does not provide an opinion to a reasonable degree of medical certainty that anything the CT Children's defendants did or failed to do was a substantial contributing factor to EP's alleged harms. *Wu v. Fairfield*, 204 Conn. 435, 438, 528 A.2d 364 (1987).

As with her initial letter, Dr. Lopusny has not opined that different treatment in 2018 or 2019 would have prevented the harms that EP is alleged to have suffered. Rather, she essentially offers her surmise that EP's allegedly positive response to antibiotics in 2026 is suggestive of the fact that she had Lyme Disease in early 2026. ECF No. 115-2 at 6 ¶¶ 29. EP, however, has been under her care since late 2020, and Dr. Lopusny diagnosed her with Lyme Disease on September 21, 2020. Defs.' Local R. 56(a)1 Statement, ECF No. 98-2 at 12 ¶ 62. It is not at all clear how EP's supposed response to antibiotics several months ago (more five years since Dr. Lopusny's diagnosis), has any tendency to demonstrate causation relating to conduct that occurred between 2018 and 2021.

In short, Dr. Lopusny's observation that EP improved on antibiotics in 2026 falls far short of evidence sufficient to demonstrate, more likely than not, that the CT Children's defendants' conduct in any way caused EP's alleged harms. Instead, this observation amounts to nothing more than inadmissible guesswork and speculation. *Shelnitz v. Greenberg*, 200 Conn. 58, 66, 509 A.2d 1023 (1986) ("[t]he expert opinion that seeks to establish the causal connection between the injury and the alleged negligence must rest upon more than surmise or conjecture").

9

For these reasons, the plaintiffs have failed to carry their burden, and the CT Children's defendants are entitled to summary judgment.

### D. PA Fitzsimmons Did Not Provide Care for the Minor Child's Juvenile Idiopathic Arthritis, and All Other Claims Against Him Have Been Dismissed.

The plaintiffs offer absolutely no support for their argument that PA Fitzsimmons "was an agent of the institution that was perpetuating the misdiagnosis." ECF No. 114 at 19. Beyond that single, conclusory statement, the plaintiffs do not make any effort to explain why PA Fitzsimmons is an appropriate party in this case.

The record clearly demonstrates that he is not. As the CT Children's defendants set forth in their Memorandum of Law, the undisputed evidence in the case is that PA Fitzsimmons did not diagnose EP with Lyme Disease and did not provide treatment for EP's juvenile idiopathic arthritis. *See* ECF No. 98-1 at 37–39. All other claims against PA Fitzsimmons have been dismissed. *See* Mem. of Decision, ECF No. 82 at 12–22. In the absence of any evidence that PA Fitzsimmons was at all involved in the diagnosis or management of EP's juvenile idiopathic arthritis, he is entitled to summary judgment.

### IV. CONCLUSION

For all the above reasons, the defendants, Connecticut Children's Medical Center, Lawrence Zemel, M.D., and Kevin Fitzsimmons, respectfully move the Court to grant summary judgment as to the plaintiffs' remaining claims against them.

10

**THE DEFENDANTS,
CONNECTICUT CHILDREN'S MEDICAL
CENTER, LAWRENCE ZEMEL, M.D., AND
KEVIN FITZSIMMONS**


BY:   _/s/ Thomas J. Plumridge, Esq._
　　　　Joyce A. Lagnese, Esq.
　　　　Fed. Bar No. ct05527
　　　　Stuart C. Johnson, Esq.
　　　　Fed. Bar No. ct20277
　　　　Thomas J. Plumridge, Esq.
　　　　Fed. Bar No. ct29394
　　　　DANAHERLAGNESE, P.C.
　　　　21 Oak Street, Suite 700
　　　　Hartford, Connecticut 06106
　　　　Telephone: 860.247.3666
　　　　Facsimile: 860.547.1321
　　　　Email: jlagnese@danaherlagnese.com
　　　　　　　　sjohnson@danaherlagnese.com
　　　　　　　　tplumridge@danaherlagnese.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


_/s/ Thomas J. Plumridge, Esq._
Thomas J. Plumridge, Esq.

12

1968128_1

DANAHERLAGNESE, PC • 21 OAK STREET, HARTFORD, CT 06106 • (860) 247-3666