**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **KATHARINE PILEGGI ET AL.,** | ) | |
| | ) | |
| **Plaintiff** | ) | **CIVIL NO. 3:22-cv-01315-AWT** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MATHIAS ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | **MAY 22, 2026** |

**CT CHILDREN'S DEFENDANTS' RESPONSE TO THE PLAINTIFFS'
STATEMENT OF ADDITIONAL MATERIAL FACTS**

The undersigned defendants, **Connecticut Children's Medical Center ("CT Children's"), Lawrence Zemel, M.D., and Kevin Fitzsimmons**, P.A. (collectively, "the CT Children's defendants")**, respectfully submit this response to the plaintiffs' Statement of Additional Material Facts submitted in connection with their Local Rule 56(a)2 Statement. ECF No. 114-1, 23–31.[1]

1.      EP Pileggi was a previously healthy child with no significant medical history prior to a documented tick bite after woodland exposure in CT. A well-child examination was performed by her pediatrician, Dr. Alder, on February 22, 2018, which documented a normal evaluation (**Exhibit 1,** Note of Dr. Alder's well-child visit, dated February 22, 2018).

**RESPONSE:** Admitted for purposes of this Motion only.

2.      EP's photographs taken near the time of the tick bite on May 25-26, 2018, showing a happy, healthy, and active child, who is running, walking, squatting, playing miniature golf, and hiking in the woods with her parents (**Exhibit 2**).

---

[1]The vast majority of the facts stated by the plaintiffs in their "Statement of Additional Material Facts" are not "material" or relevant at all to the issues to be decided on the defendants' Motion for Summary Judgment. Nevertheless, the defendants respond to the stated facts to avoid any claim by the plaintiffs that they have been admitted, for purposes of this Motion or otherwise.

1968129_1

DANAHERLAGNESE, PC • 21 OAK STREET, HARTFORD, CT 06106 • (860) 247-3666

**RESPONSE:** Denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. The photographs referenced do not establish EP's level of health, activity, ability to ambulate, and so on.

3.　　Tick exposure occurred on or about May 25-26, 2018. An engorged deer tick was removed from EP's right leg on or about May 28, 2018. Following this exposure, she developed acute symptoms, including fever, fatigue, myalgias, arthralgia, drowsiness, localized erythematous rash at the site of the tick bite, lymphadenopathy, and musculoskeletal pain. On May 28, 2018, she sustained a fall due to drowsiness, resulting in a left knee injury with swelling (**Exhibit 3**).

**RESPONSE:** Admitted for purposes of this Motion only.

### Initial Pediatric Evaluation After Tick Bite by Dr. Alder

4.　　EP was evaluated by her pediatrician at that time, Dr. Alder, on May 29, 2018, after tick removal on May 28, 2018. According to the history provided by the parents, they brought her to Dr. Alder, expressing concerns for acute tick-borne symptoms following a black-legged (Ixodes scapularis) tick bite after exposure to woodland in Connecticut on May 25-26, 2018. They presented the removed engorged tick to Dr. Alder during the visit and showed the red rash on her right leg at the site of the tick bite. They also pointed out the abrasion and swelling on her left knee, which occurred on May 28, 2018, after she fell due to drowsiness following the tick bite (**Exhibit 3**).

**RESPONSE:** Admitted for purposes of this Motion only.

5.　　Dr. Alder ordered an X-ray of the left knee. The X-ray report dated May 29, 2018, noted possible joint effusion and prominent soft tissues, which may be due to soft tissue swelling (**Exhibit 4**).

1968129_1

**RESPONSE:** Admitted.

6.      While Dr. Alder's records indicate that the reason for the visit was "two swollen knees" for "1-2 weeks", the parents maintain that only the left knee was swollen after a fall occurred the day before the visit and there was no prior knee swelling. An X-ray was ordered for the left knee only, which had sustained an injury approximately 24 hours prior (**Exhibit 5**).

**RESPONSE:** Admitted for purposes of this Motion only.

7.      Dr. Alder's medical record, dated May 29, 2018, does not document: the tick bite; the fact that the tick had been removed and was brought to the visit; the erythematous rash at the site of the tick bite; or the acute onset of infectious symptoms presented as the chief complaint for the visit, although Dr. Alder did order Lyme serology **(Exhibit 5)**.

**RESPONSE:** Admitted.

8.      The Lyme serologic test performed one day after tick removal was negative. This result is medically consistent with the known limited sensitivity of early Lyme testing, as antibodies did not yet reach detectable levels during the initial stage of infection. (A copy of the Lyme ELISA report, dated May 29, 2018, is annexed hereto as **Exhibit 6**).

**RESPONSE:** It is admitted for purposes of this motion only that Lyme serologic testing performed one day after tick removal was negative. It is denied that "this result is medically consistent with the known limited sensitivity of early Lyme testing, as antibodies did not yet reach detectable levels during the initial stage of infection." The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion.

3

9.    The prophylactic antibiotic therapy was not prescribed despite the parents' request. Dr. Alder referred EP to pediatric rheumatologist, Dr. Zemel, at CCMC (**Exhibit 3**).

**RESPONSE:**  It is admitted that antibiotic therapy was not prescribed. It is admitted for purposes of this motion only that the parents requested that Dr. Alder prescribe antibiotics. The second sentence is admitted.

### Standard of Care — Prophylaxis

10.    The standard of care for Lyme disease, as defined by the Infectious Diseases Society of America, American Academy of Neurology, and American College of Rheumatology, supports prophylactic antibiotic treatment when specific criteria are met: 1) Ixodes tick identification; 2) Attachment $\geq$36 hours; 3) Initiation within 72 hours; 4) Endemic exposure.

**RESPONSE:**  Denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion.

11.    These criteria were met, but prophylactic antibiotics were not prescribed.

**RESPONSE:**  Denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion.

### Standard of Care — Early Diagnosis, Testing and Treatment

12.    The presence of tick exposure, expanding rash, and systemic symptoms met criteria for immediate antibiotic treatment, which was not initiated. Early Lyme serology is usually negative. The CDC states: "Antibody tests may appear falsely negative during the first

4

few weeks of infection." Standard of care requires repeat testing within 2–6 weeks, which was not performed.

**RESPONSE:** Denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion.

**Evaluation by Dr. Zemel**

13.     EP was evaluated by pediatric rheumatologist Dr. Zemel on June 1, 2018, following referral by Dr. Alder on May 29, 2018. Dr. Zemel's record does not document clinically significant elements of the history reported by the parents, including: 1) The recent tick exposure; 2) Removal of the engorged tick that was brought to the visit; 3) The acute onset of symptoms following the tick bite; 4) The presence of an expanding erythematous rash; and 5) The fall with resulting traumatic left knee injury. (**Exhibit 7**)

**RESPONSE:** It is admitted that EP was evaluated by pediatric rheumatologist Dr. Zemel on June 1, 2018, following referral by Dr. Alder on May 29, 2018. It is further admitted that his note of this initial June 1, 2018 visit does not document a recent tick exposure, a tick being brought to the visit, acute onset of symptoms following a tick bite, the presence of an expanding erythematous rash, or a left knee injury after a fall. It is denied that these items were or would have been clinically significant. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion.

5

14.    Instead of documenting EP's chief complaint, Dr. Zemel's June 1, 2018 note states: "EP is a 2 y.o. previously healthy … for evaluation of bilateral knee pain and swelling. She's been having episodic knee swelling bilaterally for the last several months, not brought to medical attention." (**Exhibit 7**).

**RESPONSE:**  It is admitted that Dr. Zemel's June 1, 2018 note states: "EP is a 2 y.o. previously healthy … for evaluation of bilateral knee pain and swelling. She's been having episodic knee swelling bilaterally for the last several months, not brought to medical attention." It is denied that Dr. Zemel failed to document the relevant chief complaint. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion.

15.    Based upon the history described by the parents to Dr. Zemel and later to Dr. Lopusny, this characterization is inconsistent with the reported timeline, namely that EP had been healthy prior to the tick exposure, was brought promptly for evaluation after acute tick-borne symptom onset, and that the left knee swelling followed trauma sustained approximately 24 hours earlier. (**Exhibit 3 and Exhibit 7**)

**RESPONSE:**  Denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion.

16.    Dr. Zemel further documented: "Musculoskeletal: Normal range of motion… She has 2–3+ swelling of both knees, with 10° flexion contractures. . . ." (**Exhibit 7**) The simultaneous description of "normal range of motion" together with bilateral flexion contractures

6

is internally inconsistent. The record further states that Lyme disease was "effectively ruled out" based upon a negative Lyme serologic test performed on May 29, 2018, one day after tick removal May 28, 2018. (**Exhibits 7**)

**RESPONSE:** It is admitted that Dr. Zemel's June 1, 2018 note states: "Musculoskeletal: Normal range of motion… She has 2–3+ swelling of both knees, with 10° flexion contractures. . . ." and that Lyme disease was "effectively ruled out." The remainder of this Paragraph is denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion.

17.　Dr. Zemel's conclusion is inconsistent with accepted medical standards. Early Lyme serology is recognized to have limited sensitivity, and CDC recognizes that antibody tests may be falsely negative during the early phase of infection.

**RESPONSE:** Denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion.

18.　Dr. Zemel diagnosed juvenile idiopathic arthritis (JIA) based upon joint swelling and laboratory findings, including: 1) Elevated erythrocyte sedimentation rate (ESR); 2) Elevated Creactive protein (CRP); and 3) Positive antinuclear antibody (ANA). However, these laboratory findings are non-specific markers of inflammation and are not diagnostic of JIA. Such abnormalities may also be seen in infectious conditions, including Lyme disease and other tick-borne illnesses. (**Exhibit 13**)

1968129_1

DANAHERLAGNESE, PC • 21 OAK STREET, HARTFORD, CT 06106 • (860) 247-3666

**RESPONSE:** It is admitted that Dr. Zemel diagnosed EP with juvenile idiopathic arthritis based on a number of factors, including an elevated ESR, elevated CRP, and positive ANA. It is denied that his diagnosis was based only on this information. *See* Plaintiffs' Exhibit 7. The remainder of this Paragraph is denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion.

19.    The available laboratory data also included negative rheumatoid factor (RF) and cyclic citrullinated peptide (CCP) antibodies, which did not provide confirmatory support for JIA diagnosis. (**Exhibit 13**)

**RESPONSE:** It is admitted that there were negative RF and CCP values at the time of the June 1, 2018 evaluation. The remainder of this Paragraph is denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion.

20.    The clinical and laboratory data available at that time to Dr Zemel was insufficient to definitively exclude Lyme infection in favor of JIA. In this suspected case of Lyme disease, the non-specific inflammatory markers had to be interpreted within the full clinical context, including: 1) exposure history (tick bite in an endemic region); 2) acute systemic symptoms including fever, fatigue, and myalgias after tick bite; 3) an expanding primary erythematous rash at the site of a tick bite; and 4) secondary erythema migrans. (**Exhibit 13**)

**RESPONSE:** Denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion

8

testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion.

21. In this case of suspected Lyme disease, clinical findings should take precedence over laboratory testing, particularly when serology may not yet be reliable. Dr. Zemel's reliance upon ESR, CRP, and ANA in isolation, without adequate consideration of the clinical presentation of tick-borne infection symptoms, represents a departure from accepted standards of medical practice. These non-specific inflammatory markers do not exclude Lyme disease and are not specific to autoimmune disease such as JIA. (**Exhibit 13**)

**RESPONSE:** Denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion.

22. The combination of: 1) reliance on non-specific inflammatory markers; 2) failure to properly weigh clinical findings; 3) premature exclusion of Lyme disease; and 4) failure to repeat serologic testing within 2-6 weeks, all materially contributed to a lack of treatment for Lyme disease. (**Exhibit 13**)

**RESPONSE:** Denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion.

23. Even assuming juvenile idiopathic arthritis remained within the differential diagnosis, the recent tick exposure with acute tick-borne symptoms required that infection be

9

adequately monitored, ruled out, or appropriately treated with antimicrobial therapy before initiation of immunosuppressive treatment.

**RESPONSE:** Denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion.

**Immunosuppressive Therapy in the Presence of Acute Infectious Symptoms**

24.     EP was treated with multiple immunosuppressive and anti-inflammatory medications, including nonsteroidal anti-inflammatory drugs (NSAIDs), Prednisone, Etanercept (Enbrel), Adalimumab (Humira), Methotrexate. During the immunosuppressive therapy, EP experienced progressive symptoms consistent with disseminated Lyme disease, including migratory musculoskeletal pain, fatigue, recurrent joint swelling, neurologic symptoms (including paresthesia and irritability), and cardiac manifestations (including palpitations and chest discomfort). (**Exhibit 13**)

**RESPONSE:** It is admitted that, while treating with Dr. Zemel, EP received various treatments, which included, but were not limited to, NSAIDs, prednisone, Enbrel, Humira, and methotrexate. The remainder of this Paragraph is denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion.

25.     It is a fundamental medical principle that active infection must be excluded and treated prior to initiation of immunosuppressive therapy. Initiating such therapy without

1968129_1
DANAHERLAGNESE, PC • 21 OAK STREET, HARTFORD, CT 06106 • (860) 247-3666

excluding Lyme disease or treating with antimicrobial therapy represents a deviation from accepted standards of care. (**Exhibit 13**)

**RESPONSE:**  Denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion.

26.      On September 21, 2020, EP was evaluated by a pediatrician, Dr. Lopusny. She presumptively diagnosed EP with Lyme disease based on history, presentation, and progression of symptoms (**Exhibit 13**).

**RESPONSE:**  Admitted for purposes of this Motion only.

27.      Despite the presumptive clinical diagnosis of Lyme disease, antibiotic therapy was not initiated after Dr. Zemel reported EP's parents to the Department of Children and Families (DCF), because they disagreed with the treatment for JIA. The DCF directed EP's parents to submit her to immunosuppressive treatment administered by Dr. Zemel for juvenile idiopathic arthritis (**Exhibit 3**).

**RESPONSE:**  It is denied that EP had a "presumptive diagnosis of Lyme Disease." The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion. The remainder of this Paragraph is admitted for purposes of this Motion only.

28.      As a result of DCF involvement, EP was not able to continue care within Dr. Lopusny and was not able to receive antibiotic treatment. (**Exhibit 3 and Exhibit 13**)

**RESPONSE:**  Admitted for purposes of this Motion only.

1968129_1
DANAHERLAGNESE, PC • 21 OAK STREET, HARTFORD, CT 06106 • (860) 247-3666

**Communication with Rheumatologist and Denial of Antimicrobial Treatment**

29.     Dr. Lopusny communicated with Dr. Zemel in April 2021 to express her concern that EP had Lyme disease and required antibiotic therapy. Their communication is reflected in Dr. Zemel's record of April 7, 2021. (**Exhibit 11**)

**RESPONSE:** Admitted.

30.     Dr. Lopusny expressed her opinion to Dr. Zemel that antibiotic treatment would have required either temporary suspension of immunosuppressive therapy, or careful coordination of antibiotic and immunosuppressive regimens with close monitoring. (**Exhibit 13**)

**RESPONSE:** Admitted.

31.     Dr. Zemel did not agree to initiate antibiotic therapy and maintained the position that EP did not have Lyme disease, as reflected in his records of April 7, 2021. (**Exhibit 11**)

**RESPONSE:** Admitted.

32.     Dr. Zemel's failure to coordinate antimicrobial therapy in the presence of presumptive clinically diagnosed Lyme infection represents a departure from accepted standards of care, as treatment of infection should be prioritized. (**Exhibit 13**)

**RESPONSE:** Denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion.

1968129_1
DANAHERLAGNESE, PC • 21 OAK STREET, HARTFORD, CT 06106 • (860) 247-3666

33.     Screening testing performed on May 13, 2020, demonstrated positive Lyme IgG ImmunoBlot. (**Exhibit 8**)

**RESPONSE:** Denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion. The reliability of the IGeneX and Galaxy Diagnostic laboratory panels in particular would be the subject of competing expert testimony, and there has been no evidence establishing their reliability as a matter of undisputed fact for purposes of this Motion.

34.     At that time, EP remained symptomatic, consistent with late disseminated Lyme disease. (**Exhibit 13**)

**RESPONSE:** Denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion.

## Continued Symptoms Prior to Antibiotic Therapy

35.     Prior to antimicrobial treatment, EP continued to experience recurrent symptoms consistent with late disseminated Lyme disease, including migratory joint and muscle pain, recurrent knee swelling, fatigue and irritability, distal paresthesia, spinal pain with burning characteristics, palpitations and chest pressure, intermittent dizziness. (**Exhibit 13**)

**RESPONSE:** Denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion.

1968129_1

DANAHERLAGNESE, PC • 21 OAK STREET, HARTFORD, CT 06106 • (860) 247-3666

**Response to Antibiotic Therapy**

36.     Lyme IgG ImmunoBlot testing performed by IGeneX laboratory was repeated on March 4, 2026 remained positive. (**Exhibit 12**)

**RESPONSE:** Denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion. The reliability of the IGeneX a laboratory panels in particular would be the subject of competing expert testimony, and there has been no evidence establishing their reliability as a matter of undisputed fact for purposes of this Motion.

37.     The IGeneX laboratory is a CLIA-certified high-complexity laboratory. Clinical Laboratory Improvement Amendments (CLIA) is the federal regulatory agency governing U.S. laboratories that perform testing on human specimens for purposes of diagnosis, prevention, treatment, or health assessment. The program is jointly administered by three federal agencies: the Centers for Medicare & Medicaid Services (CMS), the Food and Drug Administration (FDA), and the Centers for Disease Control and Prevention (CDC). (**Exhibit 14**)

**RESPONSE:** Denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion. The reliability of the IGeneX laboratory panels in particular would be the subject of competing expert testimony, and there has been no evidence establishing their reliability as a matter of undisputed fact for purposes of this Motion.

14

38.     The IGeneX test kits, such as Lyme IgG and IgM ImmunoBlot kits are FDA-cleared diagnostic medical devices and are approved in August 12, 2024 and June 12, 2025 for use by high-complexity laboratories. (**Exhibit 15**)

**RESPONSE:**  Denied. The plaintiff has not supported this statement with evidence in the record, as required by Local Rule 56(a)3. Further, this would be the subject of expert opinion testimony in the case, but the plaintiffs have not produced sufficient expert testimony to support this medical conclusion. The reliability of the IGeneX panels in particular would be the subject of competing expert testimony, and there has been no evidence establishing their reliability as a matter of undisputed fact for purposes of this Motion.

39.     EP completed a 28-day course of Amoxicillin beginning March 9, 2026, prescribed by Dr. Lopusny. (**Exhibit 13**)

**RESPONSE:**  Admitted for purposes of this Motion only.

40.     Following antibiotic therapy, there was a clear, objective, and clinically significant improvement, including marked reduction in joint pain and swelling, near-complete resolution of back and spinal pain, improved energy level and mood, decreased numbness and tingling, complete resolution of dizziness, resolution of palpitations. (**Exhibit 13**)

**RESPONSE:**  It is admitted that Dr. Lopusny set forth these statements  in her April 13, 2026 letter.

## Causation and Medical Opinion of Dr. Lopusny

41.     Dr. Lopusny opined that documented substantial response to appropriate antibiotic therapy is medically significant. Such improvement is consistent with a bacterial etiology of Borrelia burgdorferi, the causative agent of Lyme disease, and provides strong

15

corroborative evidence supporting the diagnosis of Lyme disease, and its role in her prior symptomatology. (**Exhibit 13**)

**RESPONSE:** It is admitted that Dr. Lopusny set forth these statements in her April 13, 2026 letter.

42.     Based on the documented history of tick exposure in highly endemic area, the presence of erythema migrans lesions, progression of symptoms consistent with early disseminated Lyme disease, progression to late disseminated Lyme disease, confirmatory serologic findings, and a clear and measurable response to antibiotic therapy, Dr. Lopusny further opined that: 1) EP developed Lyme disease as a direct result of the tick exposure around May 25, 2018; 2) The disease progressed to disseminated Lyme disease due to the absence of timely antibiotic treatment; 3) The symptoms experienced between 2018 and 2026 are consistent with Lyme disease; 4) The significant clinical improvement following antibiotic therapy further confirms both the diagnosis and the causal relationship between Lyme infection and her symptoms. (**Exhibit 13**)

**RESPONSE:** It is admitted that Dr. Lopusny set forth these statements in her April 13, 2026 letter.

16

**THE DEFENDANTS,**
**CONNECTICUT CHILDREN'S MEDICAL CENTER, LAWRENCE ZEMEL, M.D., AND KEVIN FITZSIMMONS**

BY:     */s/ Thomas J. Plumridge, Esq.*
Joyce A. Lagnese, Esq.
Fed. Bar No. ct05527
Stuart C. Johnson, Esq.
Fed. Bar No. ct20277
Thomas J. Plumridge, Esq.
Fed. Bar No. ct29394
DANAHERLAGNESE, P.C.
21 Oak Street, Suite 700
Hartford, Connecticut 06106
Telephone: 860.247.3666
Facsimile: 860.547.1321
Email: jlagnese@danaherlagnese.com
        sjohnson@danaherlagnese.com
        tplumridge@danaherlagnese.com

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 22, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Thomas J. Plumridge, Esq.*
Thomas J. Plumridge, Esq.

1968129_1
DANAHERLAGNESE, PC • 21 OAK STREET, HARTFORD, CT 06106 • (860) 247-3666