**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **KATHARINE PILEGGI, et al.**, | ) | **CIVIL ACTION NO.3:22-CV-01315** |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **KIM MATHIAS, et al.,** | | |
| Defendants. | ) | MAY 29, 2026 |

## REPLY BRIEF FILED ON BEHALF OF KAELA MINERLY AND FRANK ROTOVNIK

As established in the defendants' motion for summary judgment, Dr. Lawrence Zemel, a highly credentialled and qualified specialist physician, diagnosed the minor child, EP, with Ideopathic Rheumatoid Arthritis and warned that the failure to treat this condition would result in the child's permanent disability. (SUMF, 9, 10) On the basis of that diagnosis and other information, the Department of Children and Families (DCF) sought the intervention of the state Superior Court so that the child would receive medically necessary treatment. In this action, the plaintiffs claim that the physician was incorrect in his diagnosis, and that DCF's reliance on the diagnosis was improper.

Defendants Kaela Minerly and Frank Rotovnik, social workers employed by DCF, filed a motion for summary judgment. (Entry No. 96). This reply brief responds to the plaintiffs' objection. (Entry No. 109). Previously, the court dismissed all but two counts against Minerly and Rotovnik (Entry No. 81); leaving only count 3 (42 U.S.C. § 1983-Due Process) and count 8 (Intentional Infliction of Emotional Distress). The court noted that "it is most appropriate to resolve the issues raised" related to these counts "in the context of a motion for summary judgment." (Entry No. 81). For the reasons that follow,

summary judgment should be granted in favor of Minerly and Rotovnik on the remaining counts.

**KAELA MINERLY:**

As the plaintiffs concede, Kaela Minerly was minimally involved with the Pileggi family. (SUMF, 2). She took some preliminary steps to investigate reported medical child neglect from December 27, 2018, to February 6, 2019. (SUMF, 2). As the plaintiffs state in their brief:  "Ms. Minerly's involvement was brief; she visited the family home, obtained medical records, and consulted a DCF-employed nurse before Defendant Frank Rotovnik took over the investigation on February 6, 2019." (Pls' Memo, p. 4). Minerly's involvement with the family ended before DCF filed the petitions in the Juvenile Session of Superior Court. She had no role in vaccinating the Pileggi children, she did not contact the police or child welfare authority in Florida, and she did not submit any filings in the Juvenile Session of Superior Court. (Ex. A, ¶¶ 7, 8; SUMF, 21).

To establish a violation of substantive due process, the plaintiffs must show Minerly engaged in conduct that is "brutal' and 'offensive to human dignity' as to shock the conscience." *Smith* v. *Half Hollow Hills Cent. Sch. Dist.*, 298 F. 3d 168, 173 (2d. Cir. 2002). The undisputed facts do not connect Minerly to any alleged substantive or procedural due process violation. To prevail on their claims of intentional infliction of emotional distress, the plaintiffs must show Minerly engaged in conduct that exceeded "all bounds usually tolerated by decent society . . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Perez-Dickson* v. *City of Bridgeport*, 304 Conn.

2

483, 527 (2012). The undisputed facts show that Minerly did not engage in any misconduct at all, much less conduct amounting to a due process violation or intentional infliction of emotional distress. Because the claims against Minerly are specious, the Court should grant summary judgment in her favor.

**FRANK ROTOVNIK:**

On February 6, 2019, Frank Rotovnik replaced Minerly as the assigned social worker to investigate reported child neglect concerning the Pileggi family. (SUMF, 2).

**The plaintiffs have failed to establish that Rotovnik conducted a constitutionally Inadequate Investigation:**

"The qualified immunity doctrine protects government officials from suits seeking to impose personal liability for money damages based on unsettled rights or on conduct that was not objectively unreasonable…. Such officials enjoy qualified immunity when they perform discretionary functions if either: '(1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that their acts did not violate these clearly established rights.'… Thus, qualified immunity provides 'ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *P.C.* v. *Department of Children and Families*, 662 F. Supp. 2d 218, 225-226 (D. Conn. 2009) (citations omitted).

"It is not enough for the plaintiff to show that [a] state investigator… could have done more or could have disclosed more. . . . Instead, the plaintiffs must demonstrate that the defendants deviated egregiously from accepted practices of investigation or otherwise engaged in conduct that 'shocks the conscience.'" *DeRosa* v. *Bell*, 24 F. Supp. 2d 252, 259 (D. Conn. 1998).

The plaintiffs' central claim is that the investigation conducted by Frank Rotovnik was constitutionally inadequate. The Second Circuit has adopted a standard governing social workers which "reflects the recognized need for unusual deference in the abuse investigation context. An investigation passes constitutional muster provided case workers have a 'reasonable basis' for their findings of abuse. . . . In applying a reasonableness standard in the abuse context, courts must be especially sensitive to the pressurized circumstances routinely confronting case workers, circumstances in which decisions between 'difficult alternatives' often need to be made on the basis of limited or conflicting information." *Wilkinson ex rel.* v. *Russell*, 182 F.3d 89, 99 (2d. Cir. 1999).[1]

The plaintiffs do not dispute that Dr. Zemel was head of the Pediatric Rheumatology Department at CCMC, that he is a medical doctor with advanced training in pediatric rheumatology and extensive experience treating both arthritis and Lyme disease, that he was board certified in pediatrics and pediatric rheumatology, and that he had extensive clinical experience. (SUMF, 6).  Nor do the plaintiffs dispute that on March 20, 2019, Dr. Zemel found that EP was "completely disabled," was "deteriorating and is showing muscle wasting in her legs as a result of lack of proper treatment for her arthritis," and "need[ed] medical intervention in order to prevent further damage and have a chance of recovery." (SUMF, 9).

---

[1] The plaintiffs state that qualified immunity does not protect social workers who fabricate evidence or ignore overwhelming exculpatory information. (Pls' Obj., 8). They have not, however, provided any evidence or even made allegations in their complaint that Minerly or Rotovnik engaged in such misconduct.

The plaintiffs contend that DCF's investigation was improperly driven by the opinions "of this single, emotionally engaged physician, without independent investigation or balancing of other medical perspectives."[2] (SUMF, 9).  Contrary to the plaintiffs' view, DCF may indeed rely upon a single medical professional, particularly one such as Dr. Zemel, who is a highly credentialed and experienced specialist. *See V.S.* v. *Muhammad*, 595 F. 3d 426, 431 (2nd Cir. 2010) (reliance by social worker upon medical doctor's opinion was objectively reasonable even when supposedly the doctor had a reputation for over diagnosing child abuse); *Ward* v. *Murphy*, 330 F. Supp. 2d 83 (D. Conn. 2004) (DCF social worker appropriately relied on opinion of medical professional).

Furthermore, it was not just Dr. Zemel who determined that EP needed treatment. Pamela Santapaola, N.D, a naturopathic physician whom the plaintiff parents consulted, opined: "Based upon my medical opinion this child may suffer from irreversible damage or injury if left untreated by conventional means." (SUMF, 12). The DCF medical director, Dr. Nicole Taylor, also had "grave concern" for EP's medical safety. (SUMF, 11).

The plaintiffs seem to suggest DCF should have solicited other opinions from alternative medical practitioners. Notably, it took the plaintiffs from 2022 (when they filed this action) until April 20, 2026, to secure a medical specialist to counter Dr. Zemel's opinion to try to provide a basis for their medical malpractice claim. (Entry No. 110). The

---

[2] It should not be surprising that a caring physician whose pediatric patient is not getting medically necessary treatment might reasonably become, as the plaintiffs say, "emotionally engaged."

child's condition required immediate medical intervention years before April of 2026 to avoid long-term disability. It would not have been reasonable to require the social worker to solicit medical opinions from alternative providers. Given the high level of expertise and experience of Dr. Zemel, it was very reasonable of DCF to rely on his medical opinion.[3]

**The plaintiffs have failed to establish that Rotovnik provided inadequate procedural due process:**

The plaintiffs, both parents and the children, had legal counsel, and could have requested a hearing to provide evidence that Dr. Zemel and other physicians who recommended that EP receive treatment were incorrect. The plaintiffs did not seek such a hearing and did not otherwise attempt to present such medical evidence—if any ever existed.

Despite the plaintiffs' contention that they entered agreements in court for DCF to have custody or guardianship of EP under duress, the April 5, 2019, transcript of proceedings before the Honorable Auden Grogins reflects that the father, mother and EP all had legal representation. See defendants' Exhibit E (transcript and pleadings from the juvenile court proceedings). Following a canvass of the parents, the court found that "the parents' decision to sustain the order of temporary custody has been freely and voluntarily made with the assistance of competent counsel, there's a factual basis to sustain the order of temporary custody…" (Ex. E, 4/5/2019 Transcript). The

---

[3] The plaintiffs assert that Rotovnik failed to inform himself adequately about EP's full course of medical care. (SUMF, p. 14, ₱23) This seems to be more in the nature of the plaintiffs' opinion rather than a fact. Nonetheless, the undisputed evidence shows that Rotovnik conducted a robust and deliberate investigation. *See* defendant's Exhibit B-1. His affidavit filed in state court shows that he gathered information from many sources, including medical providers and the plaintiff parents themselves. *See id*.

court went on to advise the parents of their rights with respect to the underlying neglect petition.  (*See id.*) Likewise, in other proceedings before the Honorable William T. Cremins on September 19, 2019, the court canvassed the parents, both of whom had legal representation, and found that their pleas to the neglect petition were "knowingly and voluntarily made with the assistance of counsel. There's a factual basis for the pleas. The pleas are accepted."  (Ex. E, 9/19/2019 Transcript).

Although the plaintiffs now appear to claim, many years after the court proceedings concluded, that they acted under duress, the state court expressly found that that the agreements were voluntary.[4] Regardless of whether the plaintiff parents now feel that they were under duress during the juvenile court case, the plaintiff has failed to either allege or prove facts that Frank Rotovink engaged in egregious conduct to cause the alleged duress.[5]

**The Plaintiffs Have Failed To Establish That Rotovnik Lacked Credibility:**

The plaintiffs unconvincingly argue that because there were numerous questions which Frank Rotovnik could not answer during his deposition, his testimony and sworn

---

[4] The plaintiffs assert that DCF had a plan to "adopt EP out to another family." (Pls' Obj, 23) Although there is a general obligation on the part of DCF to engage in "concurrent planning"; Conn. Gen. Stat. § 17a-110a; the summary judgment record does not support the plaintiffs' assertion. Obviously, filing a termination of parental rights petition would be a prerequisite to the alleged plan to "adopt EP out."  The record does not reveal that such a petition was ever filed or that this was ever the Department's plan.

[5] In the plaintiffs' Statement of Undisputed and Material Facts (SUMF), p. 15, ¶32, the plaintiffs refer to a threshold requirement that the mother needed to obtain a follow-up psychological evaluation if she wished to modify the custody agreement.  The plaintiffs' Exhibit G, however, reflects this provision is crossed out. *See* Defs' Ex. E, Court Action Memos dated 10/9/2019 (reflecting the substance of the agreement reached by the parties). The plaintiffs' SUMF further suggests that DCF does not have the authority to force a parent to move out of his or her home, but omits the fact that the state court has such broad authority. See Conn. Gen. Stat. § 46b-121 (b) (1).

affidavit is suspect and creates credibility issues that would require the denial of the motion for summary judgment.

Rotovnik was deposed in September 2025—some five years after his involvement with the Pileggi family from 2019 to 2020, and over ten years after he was hired by DCF in 2014. (Defs' Ex. B). He is a master's degree level social worker. (Id.) It is not surprising that he did not recall the details of any training he received relative to medical issues seeing as the training would have dated to his hiring in 2014—some eleven years prior to the deposition. (Ex. E, p. 3).

The fact that the witness responded that he did not know or did not recall answers to particular questions does not call into question the witness's credibility or create material issues in dispute. In fact, plaintiffs' counsel made no attempt to use documents to try to refresh the witness's recollection.[6] (Ex. E). Moreover, the plaintiffs do not identify any representation in Rotovnik's affidavit in support of summary judgment that conflicts with his deposition testimony.

**NO CLEARLY ESTABLISHED LAW:**

In the defendants' memorandum of law in support of summary judgment they maintained that they are protected by qualified immunity because the rights in question were not clearly established. *Vega* v. *Semple*, 963 F. 3d 259, 275 (2d Cir. 2020); *Jermosen* v. *Smith*, 945 F. 2d 547, 550 (2d. Cir. 1991), *cert. denied*, 503 U.S. 962 (1992).  The plaintiffs cite no authority that DCF personnel were under a constitutional

---

[6] Although Plaintiffs' counsel represents that the witness said "I don't recall" on 245 occasions during his deposition (Pls' Obj., p. 1), Plaintiffs' Exhibit E, an excerpt from the deposition transcript, does not support this representation. Furthermore, plaintiffs' counsel's repetitive, confusing and argumentative questioning made it difficult for the witness to provide responsive answers.  *See*, e.g.,  Pls' Ex. E, pp. 15, 27.

8

obligation to seek out alternative medical viewpoints where a highly credentialed and experienced specialist physician had opined that a child would be in danger of permanent disability if standard of care treatment was not administered.  Such a requirement, in addition to being inconsistent with the child's safety and welfare, is not clearly established. (*See* Defs' main memo of law, p. 21.)

In a similar vein, plaintiffs have no response to the defendants' argument that there is no clearly established law prohibiting a child welfare social worker from advocating for parents to divorce.[7] (*See* Defs' main memo of law, p. 23.) Although the summary judgment record does not show that either defendant in fact ever advocated for the plaintiff parents to divorce, even if they had the defendants would enjoy qualified immunity.  For these reasons and those articulated in the defendants' main memorandum of law, the defendants have qualified immunity.

**PLAINTIFFS' CLAIMS ARE BARRED BY RES JUDICATA/COLLATERAL ESTOPPEL:**

The plaintiffs allege that defendant Minerly and Rotovnik conducted a constitutionally deficient child welfare investigation, which led to the conclusion that the child EP was medically neglected by her parents. In the defendants' main motion to dismiss, they contended that this claim is barred by res judicata/collateral estoppel in

---

[7] One can imagine that if one parent engages in behavior inconsistent with a child's welfare and safety and shows no sign of reform, it may be necessary for the agency to advocate for the nondangerous parent to separate or divorce from the dangerous parent in order to attempt to ensure the safety of the child. The plaintiffs have not identified any authority to prohibits the agency from advocating for the safety of a child in this way. Indeed, separation from the other parent, on a short term or long-term basis, may be a necessary condition to keep a child safe that Connecticut courts have endorsed. *See In re Albert M.,* 124 Conn. App. 561, *cert. denied*, 299 Conn. 920 (2010)*; In re Alison M.*, 127 Conn. App. 197, 202 (2011).

light of the hearing officer's administrative decision holding that the child was indeed medically neglected. (Defs' Memo of Law, pp. 19-21). As the plaintiffs did not respond to that claim, they have conceded that the claim is barred.

### PLAINTIFF'S COMPLAINTS ABOUT DCF ARE NOT TIED TO MINERLY OR ROTOVINIK:

Despite the plaintiffs' complaints against DCF, including the plaintiffs' enigmatic claim that "a lady from DCF" whispered to Mr. Pileggi that he would get EP back sooner if he divorced from Mrs. Pileggi (Pls' SUMF, 33), and that EP was vaccinated against the parents' wishes, they have failed to tie these complaints to any misconduct by Rotovnik or Minerly.[8]

For the reasons discussed herein and in the defendants' main memorandum of law, the defendants respectfully move for summary judgment.

---

[8] The plaintiffs have appended what appears to be a selected portion of a text message exchange between the father and his attorney. (Pls' Ex. I) The plaintiff has not offered any authentication of this document. Rule 56 of the Fed. R. Civ Proc. contemplates that the court in addressing a motion for summary judgment and the objection thereto would only consider admissible evidence. Here, in addition to lack of authentication, the document would be inadmissible hearsay.

DEFENDANTS

KAELA MINERLY, SOCIAL WORKER,
DEPARTMENT OF CHILDREN AND
FAMILIES

FRANK ROTOVNIK, SOCIAL
WORKER, DEPARTMENT OF
CHILDREN AND FAMILIES

WILLIAM TONG
ATTORNEY GENERAL

BY:    /S/ *John E. Tucker*
John E. Tucker
Assistant Attorney General
Federal Bar No. ct 04576
Samuel Shapiro
Assistant Attorney General
Federal Bar No. ct 31373
165 Capitol Avenue
Hartford, CT  06106
Tel: (860) 808-5020
Fax: (860) 808-5084
Email: John.Tucker@ct.gov

## CERTIFICATION

I hereby certify that on MAY 29, 2026, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/S/ John E. Tucker
John E. Tucker
Assistant Attorney General
Federal Bar No. ct 04576