**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KATHARINE PILLEGI and ANTHONY PILEGGI, Plaintiffs, | : | |
| v. | : | |
| KIM MATHIAS, JOETTE KATZ, KAELA MINERLY, FRANK ROTOVNIK, CONNECTICUT CHILDREN'S MEDICAL CENTER, DR. ROMAN ALDER, DR. LAWRENCE ZEMMEL, DR. LINDSEY LAUGHINGHOUSE, DR. ANDREW BAZOS, KEVIN FITZSIMMONS, P.A., HEATHER PERRAULT, CONNECTICUT DEPARTMENT OF CHILDREN AND FAMILIES, and LAWRENCE ZEMEL, M.D, Defendants. | : | Civil No. 3:22-CV-1315 (AWT) |

**RULING ON MOTION FOR LEAVE TO SERVE EXPERT DISCLOSURE**

The plaintiffs filed Revised Rule 56(d) Motion for Leave to Serve Rebuttal Expert Disclosures, seeking to serve the expert disclosure and report of an expert, Harry F. Hall, M.D.[1] (See ECF No. 111.) For the reasons set forth below, the plaintiffs' motion is being denied.

## I. BACKGROUND

The remaining defendants in this case are Connecticut Children's Medical Center ("CT Children's"), Lawrence Zemel,

[1] This motion replaces Plaintiffs' Rule 56(d) Motion for Leave to Serve Rebuttal Expert Disclosure filed the day before. See ECF No. 110.

M.D., and Kevin Fitzsimmons, P.A. (collectively, the "CT Children's Defendants"); and Kaela Minerly and Frank Rotovnik. The instant motion relates only to the CT Children's Defendants.

The claims in this case relate to medical care and treatment that the CT Children's Defendants provided to the plaintiffs' minor child, EP. The plaintiffs allege that EP was bitten by a tick and began experiencing symptoms including a low-grade fever, vomiting, joint pain, fatigue, and swollen lymph nodes. The plaintiffs took EP to Dr. Zemel, a pediatric rheumatologist at CT Children's. Dr. Zemel evaluated EP and diagnosed her with juvenile idiopathic arthritis. The plaintiffs claim that the CT Children's Defendants misdiagnosed EP with juvenile idiopathic arthritis when in fact she had Lyme Disease. The plaintiffs allege that, since EP started being treated for Lyme Disease and was weaned off medications intended to treat juvenile idiopathic arthritis, her condition has improved.

The plaintiffs filed the Complaint (ECF No. 1) on October 19, 2022. The Complaint had twelve counts, five of which were brought at least in part against the CT Children's Defendants. Specifically, Count Six was a claim for negligence against the CT Children's Defendants for allegedly filing a false report with the Connecticut Department of Children and Families ("DCF") against the plaintiffs. Count Six stated: "**Said claims are not**

**medical malpractice claims.**" (Compl. ¶ 97) (emphasis in original). Count Seven was a claim against the CT Children's Defendants for negligent infliction of emotional distress. Count Eight was a claim against the CT Children's Defendants for intentional infliction of emotional distress. Count Ten was a claim for civil battery against all the defendants. Count Eleven was a claim against all the defendants pursuant to Conn. Gen. Stat. § 52-568 for wrongfully initiating a DCF complaint. Thus, none of the claims in the Complaint was a claim for medical malpractice.

On January 31, 2023, the CT Children's Defendants filed a motion to dismiss pursuant to Rule 12(b)(6).

On March 3, 2023, the parties filed their Rule 26(f) Report on Parties' Planning Meeting. It provided, as relevant to the instant motion:

> 5. Parties who bear the burden of proof will designate retained trial experts and provide reports within 10 months of the Court's decisions on all of the Defendant's Motions to Dismiss. Depositions of experts will be completed within 12 months of the Court's decision on the Defendants' Motion to Dismiss.
>
> 6. Parties will designate trial experts and provide reports from retained experts on any issues on which they do not bear the burden of proof within 13 months of the Court's decision on the Defendants' Motions to Dismiss, and depositions completed within 15 months of the Court's decision on the Defendants' Motion to Dismiss.

(Rule 26(f) Report on Parties' Planning Meeting at 11, ECF No.

33.)

On April 27, 2023, in response to the motion to dismiss filed by the CT Children's Defendants, the plaintiffs filed a Motion for Leave to Amend Complaint. On May 12, 2023, the court granted the motion. On May 15, 2023, the plaintiffs filed the Amended Complaint (ECF No. 47). The Amended Complaint is the operative complaint.

There are twelve counts in the Amended Complaint, seven of which were brought at least in part against the CT Children's Defendants: Count One, Count Six, Count Seven, Count Eight, Count Nine, Count Ten, and Count Twelve. Count Twelve is a claim that was brought for the first time in the case, a medical malpractice claim against the CT Children's Defendants, asserting that they incorrectly diagnosed EP with juvenile idiopathic arthritis.

On March 31, 2025, the court entered the last scheduling order with respect to experts and dispositive motions. The court ordered: "The parties shall complete depositions on or before July 31, 2025. The parties shall complete expert reports on or before July 31, 2025 and expert depositions on or before September 30, 2025. The parties shall designate rebuttal experts, if any, on or before October 31, 2025 and complete depositions of such experts on or before December 31, 2025. Dispositive motion shall be filed on or before January 31,

2026." (ECF No. 95.)

On June 5, 2023, the CT Children's Defendants moved to dismiss each of the claims in the Amended Complaint against them. The court granted their motion to dismiss with respect to all of the counts against them except Count Twelve, the medical malpractice claim.

Despite the fact that the plaintiffs bear the burden of proof with respect to their medical malpractice claim, they did not file an expert report by July 31, 2025, and they had not filed one as of the time the court held a hearing on the instant motion. Despite the fact that they do not bear the burden of proof on Count Twelve, the CT Children's Defendants made expert disclosures on December 31, 2025, not having received an expert disclosure from the plaintiffs. On January 30, 2026, the CT Children's Defendants filed a motion for summary judgment, arguing, inter alia, that "the plaintiffs have failed to disclose any expert reports in support of their claims. Medical malpractice claims must be supported by expert opinion testimony as to standard of care, causation, and damages, and, in the absence of any such supporting opinion testimony, the plaintiffs' claims fail as a matter of law." (Mot. Summ. J. at 1, ECF No. 98.)

## II. LEGAL STANDARD

"A party must make expert witness disclosures at the times

and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made ... if the evidence is intended solely to contradict or rebut evidence from an opponent's expert disclosed pursuant to Rule 26(a), within 30 days after the other party's disclosure." Barack v. Am. Honda Motor Co., No. 09-CV-565, 2013 WL 12291437, at *1 (D. Conn. Apr. 10, 2013) (citing Fed. R. Civ. P. 26(a)(2)(D)(ii)) (cleaned up).

Rule 37(c) provides, in relevant part: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence." Ebewo v. Martinez, 309 F.Supp.2d 600, 607 (S.D.N.Y. 2004).

The denial of the plaintiffs' motion would amount to a sanction of preclusion. Consequently, the court should apply the four-factor test set forth Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955 (2d Cir. 1997). Thus, the court should consider: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare

to meet the new testimony; and (4) the possibility of a continuance." Softel, 118 F.3d at 961.

"The balancing of these factors is entrusted to the Court's discretion, and no one factor is dispositive." Kalra v. Adler Pollock & Sheehan, P.C., No. 3:18-CV-00260 (KAD), 2022 WL 280180, at *5 (D. Conn. Jan. 31, 2022).

## III. DISCUSSION

### A. The Party's Explanation for Failure to Comply with the Discovery Order

The plaintiffs have not provided a credible explanation for their failure to comply with the scheduling order.

They state: "This motion is necessary to allow Plaintiffs to present facts essential to their opposition to the Medical Defendants' pending Motion for Summary Judgment . . . ." (Pls.' Revised Rule 56(d) Mot. Leave to Serve Rebuttal Expert Disclosures at 1, ECF No. 111.) They state further: "The Medical Defendants' Motion for Summary Judgment . . . rests almost entirely on expert opinions concerning the standard of care and causation in this medical malpractice action." Id. at 2 (emphasis omitted).

These statements are simply untrue. As stated above, the relevant ground for the CT Children's Defendants' motion for summary judgment is that "the plaintiffs have failed to disclose any expert reports in support of their claims."

Also, the plaintiffs characterize their motion as one for leave to serve a rebuttal expert disclosure. The plaintiffs state:

> [T]he Medical Defendants served their expert disclosures on December 31, 2025, two (2) full months after the Court-ordered deadline of October 31, 2025. This late disclosure occurred on the very day expert depositions were scheduled to be completed, severely compressing the time Plaintiffs had to identify the specific opinions requiring rebuttal and secure a responsive expert. A party should not be penalized for delays created by its opponent's tardiness.

(Pls.' Revised Rule 56(d) Mot. Leave to Serve Rebuttal Expert Disclosures at 5—6.) They repeat this misleading assertion:

> Defendants served their expert disclosures on December 31, 2025, two (2) months after the October 31, 2025 deadline and on the very day that expert depositions were to be completed. This tardiness severely compressed the time Plaintiffs had to identify the specific opinions needing rebuttal and secure a responsive expert.

Id. at 6—7.

As the CT Children's Defendants state, "the plaintiffs' first indication that they would be seeking to disclose . . . an expert report was the present Motion for Leave to Serve Rebuttal Expert Disclosures, which was filed April 20, 2026 before being resubmitted in a revised format the next day." (Obj. Pls.' Mot. Leave to Serve Rebuttal Expert Disclosures at 3, ECF No. 117.) Having received no expert disclosure from the plaintiffs, the CT Children's Defendants made their own expert disclosures on December 31, 2025, which protected their position. The

plaintiffs appear to recognize that the CT Children's Defendants' expert disclosures were made with respect to "issues on which they do not bear the burden of proof." (See Rule 26(f) Report on Parties' Planning Meeting at 11.) The plaintiffs state: "The Medical Defendants, however, served their expert disclosures on December 31, 2025, approximately two (2) months late . . . ." (Pls.' Revised Rule 56(d) Mot. Leave to Serve Rebuttal Expert Disclosures at 3.) "Two months late" is a reference to the October 31, 2025 deadline in the last scheduling order for designating experts and providing reports on issues on which a party does not bear the burden of proof. Thus, the plaintiffs' argument that they should not be penalized for a delay created by tardiness on the part of the CT Children's Defendants is duplicitous.

In addition, the plaintiffs state that they "began an exhaustive search for a rebuttal expert in the summer of 2025 . . . ." Id. at 5. They also state that they made a "sustained, nationwide effort" to find an expert, which "negates any suggestion of dilatory conduct". Id. But the plaintiffs' Amended Complaint, in which they brought for the first time a medical malpractice claim, was filed on May 3, 2023. Waiting for more than two years to start looking for an expert can only be described as dilatory conduct.

**B. Importance of the Testimony of the Precluded Witness**

Dr. Hull's testimony is essential to the plaintiffs' case because in the absence of supporting expert testimony, the CT Children's Defendants are entitled to prevail on their motion for summary judgment. However, the plaintiffs refer to him as a rebuttal expert. The court agrees with the CT Children's Defendants' position that "if Dr. Hull's testimony is necessary in the action, this undermines the plaintiffs' position that he is merely being disclosed to rebut the opinions of the CT Children's defendants' experts." (Obj. Pls.' Mot. Leave to Serve Rebuttal Expert Disclosures at 10.)

**C. Prejudice Suffered by the Opposing Party**

The CT Children's Defendants contend that this factor weighs in favor of precluding an untimely disclosed plaintiffs' expert when the defendant "would be required to expend resources to depose Plaintiff's expert, consider the impact of the expert on the defense strategy, and potentially find a rebuttal expert." (Obj. Pls.' Mot. Leave to Serve Rebuttal Expert Disclosures at 10) (quoting Reyes v. Receivables Performance Mgmt, LLC, No. 3:19-CV-01207 (KAD), 2021 WL 930000, at *3 (D. Conn. Mar. 11, 2021)).

The court agrees with each of the points made by the CT Children's Defendants with respect to this factor.

First, "[w]ere the plaintiffs permitted to proceed with

disclosing a report authored by Dr. Hull, the CT Children's defendants would incur significant costs in preparing to rebut his testimony, including taking his deposition and conferring with their own experts as to how to address his testimony. The disclosure of Dr. Hull also would add to the costs of preparing for trial, due to the need to spend additional time with their own experts preparing for his expected testimony as well as preparing a cross-examination." (Obj. Pls.' Mot. Leave to Serve Rebuttal Expert Disclosures at 10—11.)

Second, "[d]epending on the Court's resolution of the other grounds advanced in the CT Children's defendants' Motion for Summary Judgment, Dr. Hull's disclosure and report also potentially would require further briefing on the Motion for Summary Judgment. . . . [T]he CT Children's defendants devoted considerable briefing to the fact that, to that point in time, the plaintiffs had not properly disclosed an expert to support their medical malpractice claim[]." (Obj. Pls.' Mot. Leave to Serve Rebuttal Expert Disclosures at 11.) Because the plaintiffs did not submit a report from Dr. Hull in support of the instant motion, the CT Children's Defendants can only state that "[a]lthough it is impossible to say in the absence of Dr. Hull's report and deposition, it appears likely that Dr. Hull's disclosure would affect some of these arguments to the point of requiring further briefing." Id. The court also agrees with

the CT Children's Defendants that "[s]ubstantial discovery and motion practice already have occurred in this case, and the further expense of additional briefing in support of their Motion for Summary Judgment would be an undue expense at this time." Id.

Finally, the court agrees with the CT Children's Defendants that they would likely be forced to incur the expense of filing a motion to preclude any report by Dr. Hull. As they point out:

> Conn. Gen. Stat. § 52-184c provides that "the claimant shall have the burden of proving by the preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider." The statute defines the professional "standard of care" as "that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." Conn. Gen. Stat. § 52-184c(a). "In order to establish [the prevailing standard of care, breach of the standard of care and causation of the injury] the plaintiff is required to present the testimony of an expert." Gold v. Greenwich Hosp. Ass'n, 262 Conn. 248, 256, 811 A.2d 1266 (2002).
>
> When the defendant healthcare provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds itself out as a specialist, the statute defines a "similar health care provider" as "one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty." General Statutes § 52-184c(c).

(Obj. Pls.' Mot. Leave to Serve Rebuttal Expert Disclosures at 12.)

As the CT Children's Defendants point out, Dr. Hull is not

board-certified in pediatric rheumatology. Also, with respect to his experience, Dr. Hull's curriculum vitae reflects that his certification is from the American Board of Pediatrics, and that he had a pediatric residency from 1973 to 1975 and from 1978 to 1979. Since then, his experience and training have been as a "[p]hysician epidemiologist with 40+ years of experience in infectious disease control. Expert in the epidemiology of infectious diseases, food borne disease, vaccine preventable diseases and disease outbreak control." (ECF No. 111-2 at 2.)

**D. The Possibility of A Continuance**

The motion for summary judgement filed by the CT Children's Defendants is currently pending, and no trial date has been set. Nonetheless, after an extended period, the last discovery deadline passed more than four months before the plaintiffs filed the instant motion, and two sets of defendants had filed motions for summary judgment. The disclosure of Dr. Hull would require reopening discovery and set back the case in terms of trial readiness. Following the initial planning conference, the court set a discovery deadline of January 1, 2024, and in light of the extended period over which the parties were allowed to conduct discovery, reopening discovery would be unwarranted in terms of the orderly progress of this case to trial.

**E. Balancing of the Softel Factors**

Here, the fact that the plaintiffs have failed to provide a

credible explanation for failure to comply with the scheduling order, but instead improperly attribute their delay to conduct on the part of the CT Children's Defendants, standing alone, makes this a case where a sanction of preclusion is appropriate. Such a sanction is even more appropriate in light of the prejudice the CT Children's Defendants would suffer and the fact that a continuance would disrupt the orderly progress of this case, if the court grants the plaintiffs' motion. These factors decisively outweigh the fact that Dr. Hull's testimony is essential to the plaintiffs' meeting their initial burden of supporting the medical malpractice claim by expert testimony as to the standard of care, causation, and damages.

**IV. CONCLUSION**

For the reasons set forth above, the plaintiff's Revised Rule 56(d) Motion for Leave to Serve Rebuttal Expert Disclosures (ECF No. 111) is hereby DENIED.

It is so ordered.

Dated this 14th day of September 2026, at Hartford, Connecticut.

/s/AWT

Alvin W. Thompson
United States District Judge