**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| KATHARINE PILEGGI and ANTHONY PILEGGI,<br><br>Plaintiffs,<br><br>v.<br><br>KIM MATHIAS, JOETTE KATZ, KAELA MINERLY, FRANK ROTOVNIK, CONNECTICUT CHILDREN'S MEDICAL CENTER, DR. ROMAN ALDER, DR. LINDSEY LAUGHINGHOUSE, DR. ANDREW BAZOS, KEVIN FITZSIMMONS, P.A., HEATHER PERRAULT, CONNECTICUT DEPARTMENT OF CHILDREN AND FAMILIES, and LAWRENCE ZEMEL, M.D.,<br><br>Defendants. | Civil No. 3:22-CV-1315 (AWT) |

**RULING ON THE CT CHILDREN'S DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

The remaining defendants in this case are Connecticut Children's Medical Center ("CT Children's"), Lawrence Zemel, M.D., and Kevin Fitzsimmons, P.A. (collectively, the "CT Children's Defendants"); and Kaela Minerly and Frank Rotovnik. The CT Children's Defendants have moved for summary judgment on the sole remaining claim against them, the medical malpractice claim in Count Twelve; Minerly and Rotovnik have separately moved for summary judgment on the remaining claims against them.

For the reasons set forth below, the motion for summary

judgment filed by the CT Children's Defendants is being granted.

## I. FACTUAL BACKGROUND

The claims in this case relate to medical care and treatment that the CT Children's Defendants provided to the plaintiffs' minor child, EP. The facts material to the issues discussed in this ruling are set forth below.

"On May 29, 2018, Ms. Pileggi brought EP . . . to her pediatrician, Dr. Roman Alder." (ECF No. 114-1, Plaintiff's Local Rule 56(a)(2) Statement of Facts Opp'n the Medical Defs.' Mot. Summ. J. ("56(a)(2) Statement") at ¶ 2.) "Dr. Alder diagnosed arthritis and ordered an x-ray and testing to rule out Lyme disease." (56(a)(2) Statement at ¶ 3.) "The x-ray was negative for fracture or dislocation but demonstrated prominent soft tissue swelling." Id. "The laboratory testing for Lyme disease was negative." Id. "Dr. Alder referred EP to . . . Dr. Zemel, a pediatric rheumatologist, for follow up." Id. EP was seen by Dr. Zemel on June 1, 2018. Dr. Zemel evaluated EP and diagnosed her with juvenile idiopathic arthritis (JIA). The plaintiffs claim that the CT Children's Defendants misdiagnosed EP with juvenile idiopathic arthritis when in fact she had Lyme disease.

In August 2018, EP started going to the practice of Dr. Diane Lopusny, MD, a pediatrician. On October 24, 2022, Dr. Lopusny wrote a letter stating that:

> E[P] has been fighting with Lyme disease for several years . . . . She has never tested positive for Rheumatoid [Arthritis] and in my medical opinion, was misdiagnosed. Despite positive bloodwork results showing Lyme, and not Rheumatoid Arthritis, a plan of action was still given on the wrong diagnosis. E[P] was given multiple Rheumatoid Arthritis medications with no success. . . . Once E[P] stopped all her Rheumatoid Arthritis medications, she began her journey towards healing.
>
> This year I have seen tremendous results in E[P], she is doing amazing. Once we were able to [address] her Lyme and her coinfections, her health began to improve. Her Naturopath specializes in Lyme, changed her diet to an Auto Immune Paleo diet, and started an herbal regimen for Lyme. I recommended acupuncture, epsom salt baths, and eating organic food. Katherine fought to get her daughter treated correctly and because of this E[P] is thriving.

(ECF No. 98-16, Oct. 24, 2022 Dr. Lopusny Letter at 1.)[1] Dr. Lopusny concluded that "E[P] was misdiagnosed with Idiopathic Rheumatoid Arthritis. Her true medical diagnosis was Lyme disease, Babesia, Anapla[s]mosis, and Mycoplasma." Id.

Dr. Lopusny wrote a second letter on April 13, 2026, which the plaintiffs submitted in support of their opposition to the CT Children's Defendants' motion for summary judgment. Dr. Lopusny stated that she is "board certified in Pediatric Primary Care." (ECF No. 115-2, April 13, 2026 Dr. Lopusny Letter at 2.) She stated that she had "reviewed the available medical history, clinical course, laboratory data, and treatment response

[1] The page numbers cited to in this ruling for documents that have been electronically filed refer to the page numbers in the header of the documents and not to the page numbers in the original documents, if any.

pertaining to [EP].” Id.

Dr. Lopusny stated that she “contacted Mr. Zemel at CCMC to express concern that [EP] had Lyme disease and required antibiotic treatment.” (April 13, 2026 Dr. Lopusny Letter at 5.) She stated that “Dr. Zemel did not agree to initiate antibiotic therapy. He expressed his opinion to me on the phone, which is reflected in his record, stating that [EP] does not have Lyme disease and should not be placed on antibiotics.” (April 13, 2026 Dr. Lopusny Letter at 6.)

Dr. Lopusny gave the following opinions:

> Based on the documented history of tick exposure in highly endemic area, the presence of erythema migrans lesions, progression of symptoms consistent with early disseminated Lyme disease, progression to late disseminated Lyme disease, confirmatory serologic findings, and a clear and measurable response to antibiotic therapy, it is my medical opinion, to a reasonable degree of medical probability, that:
>
> 1) [EP] developed Lyme disease as a direct result of the tick exposure around May 25, 2018.
>
> 2) The disease progressed to disseminated Lyme disease due to the absence of timely antibiotic treatment.
>
> 3) The symptoms experienced between 2018 and 2026 are consistent with Lyme disease.
>
> 4) The significant clinical improvement following antibiotic therapy further confirms both the diagnosis and the causal relationship between Lyme infection and her symptoms.

(April 13, 2026 Dr. Lopusny Letter at 6-7.)

Dr. Tara Tranguch, who is not a medical doctor but has a

degree in naturopathy, began seeing EP on October 28, 2021. Dr. Tranguch wrote a letter dated December 7, 2022. She stated that EP's parents "provided lab work from 2020 significant for Borrelia burgdorferi, Bartonella and Babesia infections. [EP] also had a previous diagnosis of Juvenile Rheumatoid Arthritis (JRA)." (ECF No. 98-17, Dec. 7, 2022 Dr. Tranguch Letter.) She also stated that she "ran labwork in 2021 for Lyme and tick-borne infections, mycotoxins and JRA[,]" and "[t]reatment focused on reducing knee swelling as a result of vector borne diseases, and [EP] improved." Id.

Dr. Zemel testified that he was trained and experienced in pediatric rheumatology; that he completed a fellowship at the State University of New York at Buffalo Medical School in rheumatology, which was focused on arthritic or rheumatic diseases of children; and that he was the Chief of Pediatric Rheumatology at Newington Children's Hospital from 1978 to 1996 and then the Chief of Pediatric Rheumatology at Connecticut Children's Medical Center from 1996 to 2021. (See ECF No. 98-5, Dr. Zemel Dep. at 2:10-18, 3:2-12, 3:17-21, 5:9-10:12.) Dr. Zemel last saw EP on April 7, 2021. (See 56(a)(2) Statement at ¶ 56.)

PA Fitzsimmons testified that he was a physician assistant who specializes in orthopedics. (See ECF No. 98-18, Fitzsimmons Dep. at 3:15-4:3.) He stated that he treated EP's leg fracture

during two visits, and that orthopedics physician assistants do not treat JIA. See id. at 9:13-18, 10:4–8, 11:2-17. Katherine Pileggi testified that Fitzsimmons had no involvement in diagnosing EP with arthritis, and that he only provided treatment for EP's leg fracture, not her Lyme disease or juvenile idiopathic arthritis. (See ECF No. 98-3, Katherine Pileggi Dep. Vol. I at 12:12-21; ECF No. 98-7, Katherine Pileggi Dep. Vol. II at 6:8-13.) Both Katherine Pileggi and Anthony Pileggi testified that the nature of their claim against Fitzsimmons is that he made a false report to DCF. (Katherine Pileggi Dep. Vol. I at 13:21-15:17; ECF No. 98-9, Anthony Pileggi Dep. Vol. II at 8:2-6.)

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at

322.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce of Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge . . . ." Anderson, 477 U.S. at 255. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is

one that would "affect the outcome of the suit under the governing law." Id. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. See Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 486 (2d Cir. 2014) ("'[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" (quoting Celotex, 477 U.S. at 323)). Immaterial factual disputes will not prevent summary judgment.

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant . . . and draw all reasonable inferences in [the non-movant's] favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990) (alteration in original)).

**III. DISCUSSION**

The CT Children's Defendants argue that they are entitled to summary judgment because "[m]edical malpractice claims must be supported by expert opinion testimony as to the standard of care, causation, and damages," and the plaintiffs have failed to disclose any expert report that supports their claim. (ECF No. 98-1, Mem. Law Supp. Mot. Summ. J. at 1.) The court agrees and does not reach the additional argument made by the CT Children's Defendants that the plaintiffs' claim is barred by the applicable statute of limitations.

"Professional negligence or malpractice ... is defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services." Gold v. Greenwich Hosp. Ass'n, 262 Conn. 248, 254 (2002) (cleaned up). "[M]alpractice presupposes some improper conduct in the treatment or operative skill or . . . the failure to exercise requisite medical skill." Id. "To prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury." Id. at 255.

"Generally, the plaintiff must present expert testimony in support of a medical malpractice claim because the requirements for proper medical diagnosis and treatment are not within the common knowledge of laypersons." Boone v. William W. Backus Hosp., 272 Conn. 551, 567 (2005). See also Ardoline v. Keegan, 140 Conn. 552, 556 (1954) ("To recover in a malpractice action against a physician the plaintiff must prove that the defendant failed to exercise that degree of care, skill or diligence ordinarily had and exercised by physicians engaged in the same line of practice . . . . Ordinarily this proof must rest upon the testimony of an expert witness who is qualified to express an opinion as to the standard of care . . . ."); Poulin v. Yasner, 64 Conn. App. 730, 738 (2001) ("Expert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person.").

Connecticut General Statutes § 52-184c governs the standard of care in a negligence action against a health care provider and the qualifications of an expert witness in such an action. With respect to the standard of care, subsection (a) provides:

> (a) In any civil action to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, in which it is alleged that such injury or death resulted from the negligence of a health care provider, as defined in

> section 52-184b, the claimant shall have the burden of proving by the preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

Conn. Gen. Stat. § 52-184c(a).

Dr. Zemel is board-certified,[2] trained, and experienced in the medical specialty of pediatric rheumatology. Therefore, subsection (b) of § 52-184c does not apply. Subsections (c) and (d) provide:

> (c) If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a "similar health care provider" is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a "similar health care provider".
>
> (d) Any health care provider may testify as an expert in any action if he: (1) Is a "similar health care provider" pursuant to subsection (b) or (c) of this section; or (2) is not a similar health care provider pursuant to subsection (b) or (c) of this section but, to the satisfaction of the court, possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide

[2] See ECF No. 109-1, Plaintiffs' Local Rule 56(a)(2) Statement of Facts in Opp'n the DCF Defs.' Mot. Summ. J. at ¶ 6.

> such expert testimony as to the prevailing professional standard of care in a given field of medicine. Such training, experience or knowledge shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim.

Conn. Gen. Stat. §§ 52-184c(c), (d).

After the CT Children's Defendants filed their motion for summary judgment, the plaintiffs sought permission to serve the expert disclosure and report of Harry F. Hull, M.D. For reasons set forth in the Ruling on Motion for Leave to Serve Expert Disclosure (ECF No. 125), the court denied that motion notwithstanding the fact that the court views Dr. Hull's testimony as essential to the plaintiffs' case.

The CT Children's Defendants state that they received "through discovery certain letters from two of the minor child's treating providers, Dr. Lopusny and Dr. Tranguch, a pediatrician and a naturopath, respectively." (Mem. Law Supp. Mot. Summ. J. at 1.) This is a reference to Dr. Lopusny's October 24, 2022 letter and Dr. Tranguch's December 7, 2022 letter. The plaintiffs do not appear to rely on either of these letters in opposing the motion for summary judgment. (See ECF No. 114, Pls.' Mem. Law Opp'n Medical Defs.' Mot. Summ. J. at 18–19, 21–23, 25–27.) Rather, the plaintiffs rely on Dr. Lopusny's April 13, 2026 letter. (See id. at 25–27.)

The April 13, 2026 letter was prepared after the CT

Children's Defendants filed their motion for summary judgment, and the parties disagree about whether Dr. Lopusny has been disclosed as an expert in this case. (See ECF No. 123, Reply Pls.' Obj. the CT Children's Defs.' Mot. Summ. J. at 5.) ("Dr. Lopusny still has not been disclosed as an expert in the case."). However, whether Dr. Lopusny has been disclosed as an expert is not a material fact for purposes of the court's analysis.

Dr. Lopusny's proffered testimony is not admissible for two reasons. First, Dr. Lopusny is not a "similar health care provider" as required by § 52-184c(c), nor is she qualified to testify pursuant to § 52-184c(d). Dr. Zemel is board-certified and trained and experienced in pediatric rheumatology. He completed a fellowship at the State University of New York at Buffalo Medical School in rheumatology, which was focused on arthritic or rheumatic diseases of children. During the period from 1978 to 2021, he was the Chief of Pediatric Rheumatology at Newington Children's Hospital and then the Chief of Pediatric Rheumatology at Connecticut Children's Medical Center. There is no genuine issue as to the fact that Dr. Zemel was, at all relevant times, a specialist in pediatric rheumatology. Dr. Lopusny is board-certified in pediatric primary care. Her summary of her qualifications does not identify any fellowship training or any other training or experience in the field of

rheumatology or the study of arthritic conditions. The plaintiffs identify no qualifications other than those set forth in her letter, nor do they furnish any information that suggests that she has any familiarity with the standard of care that would apply to a pediatric rheumatologist. Thus there is no genuine issue as to the fact that Dr. Lopusny is not a similar health care provider. In addition, the plaintiffs have not proffered evidence that could support a conclusion that she should be allowed to testify pursuant to § 52-184c(d).

The plaintiffs contend that these facts are immaterial. They argue:

> The central act of negligence alleged is not the improper treatment of JIA, but the failure to diagnose Lyme disease in the first place. The evaluation and diagnosis of a child presenting with a tick bite and symptoms of an infectious disease is squarely within the core competency of a board-certified pediatrician. Dr. Lopusny is a board-certified pediatrician who routinely diagnoses and treats Lyme disease in her practice. Under Connecticut law, the question is whether the expert is a "similar health care provider," which focuses on the specific medical issue at hand. See Conn. Gen. Stat. § 52-184c. Because the primary medical issue is pediatric infectious disease, not rheumatology, Dr. Lopusny is more than qualified to opine on the standard of care for diagnosing EP.

(Pls.' Mem. Law Opp'n Medical Defs.' Mot. Summ. J. at 18) (emphasis omitted).

However, for purposes of determining whether Dr. Lopusny is a similar health care provider under § 52-184c(c), what is material is the condition for which Dr. Zemel was providing

treatment or diagnosis. He was providing treatment or diagnosis for juvenile idiopathic arthritis. He was not providing treatment or diagnosis for Lyme disease. Thus, the proviso at the end of subsection (c) is not applicable. See Conn. Gen. Stat. § 52-184c(c).

The plaintiffs in Farrell v. Bass, 90 Conn. App. 804 (2005) made an argument similar to that being made by the plaintiffs here. In that case, the defendant was a plastic surgeon who ordered the plaintiffs' decedent to discontinue taking Coumadin prior to the surgery. See Farrell v. Bass, 90 Conn. App. at 807. Among the expert witnesses offered by the plaintiffs were Dr. Stanley Bernstein, a board-certified internist and cardiologist, and Dr. John Miller, a board-certified cardiologist and electrophysiologist. See id. at 807-08.

Part of the court's analysis was as follows:

> We conclude that the court was correct that § 52-184c(c) did not require [the defendant Dr. Bass] to be treated as an internist or cardiologist for the purpose of allowing Bernstein and Miller to testify as to the standard of care.
>
> . . .
>
> The court concluded that any direction by [the defendant Dr. Bass] to [the decedent] to discontinue the taking of Coumadin was given in his role as a plastic surgeon and, therefore, that expert testimony about the standard of care was limited to that of a plastic surgeon. Neither Bernstein nor Miller was a plastic surgeon and, therefore, the court correctly precluded their testimony as to the applicable standard of care.

Farrell v. Bass, 90 Conn. App. 804, 814 (2005). Likewise, any actions taken by Dr. Zemel with respect to EP were taken in his role as a pediatric rheumatologist.

Second, even if Dr. Lopusny could satisfy the requirements for being a similar health care provider under § 52-184c(c) or testifying pursuant to § 52-184c(d), her proffered opinions do not address either the requisite standard of care or whether there was a deviation from the standard of care. The CT Children's Defendants contend that:

> Dr. Lopusny's letter conspicuously omits any opinion as to . . . the standard of care required of CT Children's defendants, any breach by the CT Children's defendants, or any causal connection between the CT Children's defendants' conduct and EP's alleged damages. For the most part, her new letter is a factual recounting of her own treatment history of EP. . . . To the extent that it expresses any opinions at all, they amount to nothing more than an apparent disagreement with Dr. Zemel's assessment that EP did not have Lyme Disease.

(Reply Pls.' Obj. the CT Children's Defs.' Mot. Summ. J. at 5.) The court agrees.

Dr. Lopusny's opinions, to a reasonable degree of medical probability, address only that EP developed Lyme disease as a result of the tick exposure; that the disease progressed to disseminated Lyme disease due to the absence of antibiotic treatment; that the symptoms experienced were consistent with Lyme disease; and that EP's improvement following antibiotic

therapy confirms both the diagnosis and the causal relationship between Lyme infection and her symptoms. As the CT Children's Defendants state, "[i]t is one thing to express disagreement with another healthcare provider's diagnosis of a patient, and another to opine, to a reasonable degree of medical probability, that that other healthcare provider's treatment deviated from the applicable standard of care." Id.

With respect to defendant Fitzsimmons, the CT Children's Defendants state, "[t]he plaintiffs do not dispute that they have failed to disclose any expert testimony critical of PA Fitzsimmons' care. Rather, they argue in conclusory fashion that '[a] plaintiff is not required to have a separate expert for every single provider in a chain of negligent care.'" Id. at 8. However, "[i]n a medical malpractice action, expert testimony is required to establish the standard of professional care to which the defendant is held . . . and that the defendant failed to conform to that standard of care." Mather v. Griffin Hosp., 207 Conn. 125, 130-31 (1988). As the CT Children's Defendants also state, "[n]o expert has criticized PA Fitzsimmons' care of EP, much less alleged that he was part of a 'chain of negligent care.'" (Reply Pls.' Obj. the CT Children's Defs.' Mot. Summ. J. at 8.)

Moreover, it is undisposed that defendant Fitzsimmons provided care for EP only during two visits where he was

treating her leg fracture and that he was not involved in treating EP for anything else. Also, the Pileggis testified that the nature of claim against him was that he made a false report to DCF.

## IV. CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment by the CT Children's Defendants (ECF No. 98) is hereby GRANTED.

It is so ordered.

Dated this 29th day of September 2026, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge